# U.S. Bankruptcy Court
## Northern District of Mississippi (Aberdeen)
## Adversary Proceeding #: 24−01024−SDM

*Assigned to:* Judge Selene D. Maddox                      *Date Filed:* 07/18/24
*Lead BK Case:* 23−10069
*Lead BK Title:* LITTCO Metals, LLC
*Lead BK Chapter:* 7
*Demand:*
  *Nature[s] of Suit:*   02 Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)

**Plaintiff**
————————————————
**Jason Richard Littrell**                      represented by **Brian Clark**
1382 Battlefield Road                                         Hickman, Goza & Spragins
Collinsville, MS 39325                                        P.O. Drawer 668
SSN / ITIN: xxx−xx−3287                                       Oxford, MS 38655
                                                              662−234−4000
                                                              Email: bclark@hickmanlaw.com

                                                              **Goodloe Lewis**
                                                              Hickman, Goza & Spragins, PLLC
                                                              1305 Madison Avenue
                                                              P.O. Box 668
                                                              Oxford, MS 38655
                                                              662−234−4000
                                                              Fax : 662−234−2000
                                                              Email: glewis@hickmanlaw.com

                                                              **Lawrence J. Tucker, Jr**
                                                              Hickman, Goza & Spragins, PLLC
                                                              P.O. Drawer 668
                                                              Oxford, MS 38655
                                                              662−234−4000
                                                              Email: ltucker@hickmanlaw.com

**Plaintiff**
————————————————
**William L Fava, , *Trustee for LITTCO***      represented by **Brian Clark**
***Metals, LLC d/b/a LITTCO, LLC, LITTCO***                   (See above for address)
***Metals Equipment Leasing, Inc., and***
***LITTCO Metals Management Co.***                            **Goodloe Lewis**
Fava Firm                                                     (See above for address)
P.O. Box 783
Southaven, MS 38671                                           **Lawrence J. Tucker, Jr**
                                                              (See above for address)

V.

**Defendant**
————————————————
**Tyler Burgess**, IL                           represented by **Cory Daniel Anderson**
                                                              Rock Fusco & Connelly, LLC
                                                              321 North Clark Street

1

Ste 2200
Chicago, IL 60654
312−494−1000
Fax : 312−494−1001
Email: canderson@rfclaw.com

**Michael P. Connelly**
Rock Fusco & Connelly, LLC
321 N. Clark Street
Suite 2200
Chicago, IL 60654
312−494−1000
Fax : 312−494−1001
Email: mconnelly@rfclaw.com

**Michael P. Connelly**
Rock Fusco & Connelly, LLC
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
Email: mconnelly@rfclaw.com

**Edward F Kuester, IV**
Rock Fusco & Connelly, LLC
321 North Clark Street
Suite 2200
Chicago, IL 60654
312−494−1000
Fax : 312−494−1001
Email: ekuester@rfclaw.com

**William Frederick Ray**
Watkins & Eager PLLC
P.O. Box 650
Jackson, MS 39205
601−965−1900
Fax : 601−965−1901
Email: wray@watkinseager.com

**Stephanie M. Rippee**
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205
601−965−1900
Fax : 601−965−1901
Email: srippee@watkinseager.com

**Jim F. Spencer, Jr.**
Post Office Box 650
Jackson, MS 39205
601−965−1976
Email: jspencer@watkinseager.com

**Sagar Thakkar**
Rock Fusco & Connelly, LLC
333 West Wacker Drive
Ste 19th Floor
Chicago, IL 60606
312−494−1000
Fax : 312−494−1001
Email: sthakkar@rfclaw.com

*Defendant*
————————————————————

**Tonia Etoh**, IL

represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
————————————————————

**International Development Services**, IL

represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
————————————————————

**International Services, Inc.**, IL

represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

3

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
––––––––––––––––––––––––––

**TAVAS, LLC**, IL

represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
––––––––––––––––––––––––––

**Penhurst Capital, Inc.**, NV

represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**

(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
————————————————————

**Tim Willits**                                    represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
————————————————————

**Nathan Free**, IL                                represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
——————————————————

**Jerold Weissberg**                    represented by **Cory Daniel Anderson**
                                        (See above for address)

                                        **Michael P. Connelly**
                                        (See above for address)

                                        **Michael P. Connelly**
                                        (See above for address)

                                        **Edward F Kuester, IV**
                                        (See above for address)

                                        **William Frederick Ray**
                                        (See above for address)

                                        **Stephanie M. Rippee**
                                        (See above for address)

                                        **Jim F. Spencer, Jr.**
                                        (See above for address)

                                        **Sagar Thakkar**
                                        (See above for address)

*Defendant*
——————————————————

**Robert Legon**                        represented by **Cory Daniel Anderson**
                                        (See above for address)

                                        **Michael P. Connelly**
                                        (See above for address)

                                        **Michael P. Connelly**
                                        (See above for address)

                                        **Edward F Kuester, IV**
                                        (See above for address)

                                        **William Frederick Ray**
                                        (See above for address)

                                        **Stephanie M. Rippee**
                                        (See above for address)

                                        **Jim F. Spencer, Jr.**
                                        (See above for address)

                                        **Sagar Thakkar**
                                        (See above for address)

*Defendant*
——————————————————

**Bruce Bush**, AZ                      represented by **Cory Daniel Anderson**
                                        (See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
———————————————

**Dale Johnston**, IL        represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**
(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
———————————————

**James Peters**, IL        represented by **Cory Daniel Anderson**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Michael P. Connelly**
(See above for address)

**Edward F Kuester, IV**

(See above for address)

**William Frederick Ray**
(See above for address)

**Stephanie M. Rippee**
(See above for address)

**Jim F. Spencer, Jr.**
(See above for address)

**Sagar Thakkar**
(See above for address)

*Defendant*
————————————————

**Byzfunder NY, LLC**                     represented by **Tristan Manthey**
80 Broad Street, Suite 3303               Fishman Haygood, LLP
New York, NY 1004−1000                    201 St. Charles Avenue, 46th Floor
                                          New Orleans, LA 70170
                                          504−566−5561
                                          Fax : 504−586−5250
                                          Email: tmanthey@fishmanhaygood.com

*Defendant*
————————————————

**NewCo Capital Group IV, LLC**, NY        represented by **Tristan Manthey**
                                          (See above for address)

*Defendant*
————————————————

**Mehandi Vakil**, CA                      represented by **Mehandi Vakil**
                                          PRO SE

*Defendant*
————————————————

**Wise Venture, LLC**, CA                  represented by **Wise Venture, LLC**
                                          PRO SE

*Defendant*
————————————————

**Samson MCA, LLC**, NY                    represented by **Tristan Manthey**
                                          (See above for address)

*Defendant*
————————————————

**Cloudfund, LLC**, NY                     represented by **Tristan Manthey**
*dba* **Samson Group**                     (See above for address)

*Defendant*

—————————————————————

**Yaakov Winograd**, NY        represented by **Alan L. Smith**
                                          P.O. Box 14167
                                          Jackson, MS 39236
                                          601−351−2400
                                          Fax : 601−351−2424
                                          Email: asmith@bakerdonelson.com

*Defendant*

—————————————————————

**Unique Funding Solutions, LLC**, NY       represented by **Alan L. Smith**
                                          (See above for address)

*Defendant*

—————————————————————

**Prosperum Capital Partners, LLC**, NY     represented by **Tristan Manthey**
*dba* **Arsenal Funding**                                     (See above for address)

*Defendant*

—————————————————————

**John and Jane Doe Defendants 1 − 10**     represented by **John and Jane Doe Defendants 1 − 10**
                                          PRO SE

*Defendant*

—————————————————————

**Entity Doe Defendants 1 − 5**           represented by **Entity Doe Defendants 1 − 5**
                                          PRO SE

*Defendant*

—————————————————————

**Steven Markowitz, Jr.**              represented by **Tristan Manthey**
                                          (See above for address)

*Trustee*

—————————————————————

**William Fava**
Chapter 7 Trustee
Post Office Box 783
Southaven, MS 38671
662−536−1116

*U.S. Trustee*

—————————————————————

**U. S. Trustee**
501 East Court Street, Suite 6−430
Jackson, MS 39201
601−965−5241

| Filing Date | # | Docket Text |
|---|---|---|
| 07/18/2024 | 1 | Adversary case 24−01024. (02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy))) : Complaint by Jason Richard Littrell, William L Fava against Tyler Burgess, Tonia Etoh, International Development Services, International Services, Inc., TAVAS, LLC, Penhurst Capital, Inc., Tim Willits, Nathan Free, Jerold Weissberg, Robert Legon, Bruce Bush, Dale Johnston, James Peters, Byzfunder NY, LLC, NewCo Capital Group IV, LLC, Mehandi Vakil, Wise Venture, LLC, Steven Berkovitch, Samson MCA, LLC, Cloudfund, LLC, Yaakov Winograd, Unique Funding Solutions, LLC, Prosperum Capital Partners, LLC, John and Jane Doe Defendants 1 − 10, Entity Doe Defendants 1 − 5. Filing fee is exempt. (Tucker, Lawrence) (Entered: 07/18/2024) |
| 07/18/2024 | 2 | Order and Notice as to Complaint Filing Fee. Complaint Filing Fee or Objection to AP Dismissal due by 7/24/2024. Entered on Docket by: (MRH) (Entered: 07/18/2024) |
| 07/18/2024 | 3 | Summons Issued on Steven Berkovitch, Tyler Burgess, Bruce Bush, Byzfunder NY, LLC, Cloudfund, LLC, Entity Doe Defendants 1 − 5, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., John and Jane Doe Defendants 1 − 10, Dale Johnston, Robert Legon, NewCo Capital Group IV, LLC, Penhurst Capital, Inc., James Peters, Prosperum Capital Partners, LLC, Samson MCA, LLC, TAVAS, LLC, Unique Funding Solutions, LLC, Mehandi Vakil, Jerold Weissberg, Tim Willits, Yaakov Winograd, and Wise Venture, LLC . Entered on Docket by: (MRH) (Entered: 07/18/2024) |
| 07/19/2024 | | 1:24−ap−1024 Complaint Filing Fee, Receipt Number 10000960, Fee Amount $350. Entered on Docket by: (WAC) (Entered: 07/22/2024) |
| 07/23/2024 | 4 | Notice of Appearance and Request for Notice by Goodloe Lewis Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell. (Lewis, Goodloe) (Entered: 07/23/2024) |
| 07/23/2024 | 5 | Notice of Appearance and Request for Notice by Brian Clark Filed by Brian Clark on behalf of William L Fava, Jason Richard Littrell. (Clark, Brian) (Entered: 07/23/2024) |
| 08/20/2024 | | Request for Alias Summons by William L Fava, Jason Richard Littrell Filed by Lawrence J. Tucker Jr on behalf of William L Fava, Jason Richard Littrell. (Tucker, Lawrence) (Entered: 08/20/2024) |
| 08/21/2024 | 6 | Alias Summons Issued on Steven Berkovitch , Tyler Burgess , Bruce Bush , Byzfunder NY, LLC , Cloudfund, LLC , Entity Doe Defendants 1 − 5 , Tonia Etoh , Nathan Free , International Development Services , International Services, Inc. , John and Jane Doe Defendants 1 − 10 , Dale Johnston , Robert Legon , NewCo Capital Group IV, LLC , Penhurst Capital, Inc. , James Peters , Prosperum Capital Partners, LLC , Samson MCA, LLC , TAVAS, LLC , Unique Funding Solutions, LLC , Mehandi Vakil , Jerold Weissberg , Tim Willits , Yaakov Winograd , Wise Venture, LLC . Entered on Docket by: (MRH) (Entered: 08/21/2024) |
| 08/29/2024 | 7 | Alias Summons Service Executed on Dale Johnston 8/24/2024 .. (Tucker, Lawrence) (Entered: 08/29/2024) |
| 08/29/2024 | | Request for Alias Summons by William L Fava, Jason Richard Littrell Filed by Lawrence J. Tucker Jr on behalf of William L Fava, Jason Richard Littrell. (Tucker, Lawrence) (Entered: 08/29/2024) |

| | | | |
|---|---|---|---|
| 08/29/2024 | | 8 | Alias Summons Issued on Steven Berkovitch , Tyler Burgess , Bruce Bush , Byzfunder NY, LLC , Cloudfund, LLC , Entity Doe Defendants 1 − 5 , Tonia Etoh , Nathan Free , International Development Services , International Services, Inc. , John and Jane Doe Defendants 1 − 10 , Dale Johnston , Robert Legon , NewCo Capital Group IV, LLC , Penhurst Capital, Inc. , James Peters , Prosperum Capital Partners, LLC , Samson MCA, LLC , TAVAS, LLC , Unique Funding Solutions, LLC , Mehandi Vakil , Jerold Weissberg , Tim Willits , Yaakov Winograd , Wise Venture, LLC . Entered on Docket by: (MRH) (Entered: 08/29/2024) |
| 09/09/2024 | | 9 | Amended Complaint *to correct identity of Defendant* by William L Fava, Jason Richard Littrell against Steven Markowitz, Jr., Tyler Burgess, Bruce Bush, Byzfunder NY, LLC, Cloudfund, LLC, Entity Doe Defendants 1 − 5, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., John and Jane Doe Defendants 1 − 10, Dale Johnston, Robert Legon, NewCo Capital Group IV, LLC, Penhurst Capital, Inc., James Peters, Prosperum Capital Partners, LLC, Samson MCA, LLC, TAVAS, LLC, Unique Funding Solutions, LLC, Mehandi Vakil, Jerold Weissberg, Tim Willits, Yaakov Winograd, Wise Venture, LLC.RE: (related document(s)1 Complaint filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). (Tucker, Lawrence) (Entered: 09/09/2024) |
| 09/09/2024 | | 10 | Summons Issued on Tyler Burgess, Bruce Bush, Byzfunder NY, LLC, Cloudfund, LLC, Entity Doe Defendants 1 − 5, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., John and Jane Doe Defendants 1 − 10, Dale Johnston, Robert Legon, Steven Markowitz, Jr., NewCo Capital Group IV, LLC, Penhurst Capital, Inc., James Peters, Prosperum Capital Partners, LLC, Samson MCA, LLC, TAVAS, LLC, Unique Funding Solutions, LLC, Mehandi Vakil, Jerold Weissberg, Tim Willits, Yaakov Winograd, and Wise Venture, LLC. Entered on Docket by: (MRH) (Entered: 09/09/2024) |
| 09/09/2024 | | 11 | Alias Summons Service Executed on Tim Willits 8/30/2024 .. (Tucker, Lawrence) (Entered: 09/09/2024) |
| 09/09/2024 | | 12 | Alias Summons Service Executed on International Services, Inc. 8/26/2024 .. (Tucker, Lawrence) (Entered: 09/09/2024) |
| 09/09/2024 | | 13 | Alias Summons Service Executed on International Development Services 8/29/2024 .. (Tucker, Lawrence) (Entered: 09/09/2024) |
| 09/09/2024 | | 14 | Alias Summons Service Executed on James Peters 8/29/2024 .. (Tucker, Lawrence) (Entered: 09/09/2024) |
| 09/18/2024 | | 15 | Alias Summons Service Executed on Cloudfund, LLC 9/3/2024 .. (Tucker, Lawrence) (Entered: 09/18/2024) |
| 09/18/2024 | | 16 | Alias Summons Service Executed on Samson MCA, LLC 8/28/2024 .. (Tucker, Lawrence) (Entered: 09/18/2024) |
| 09/19/2024 | | 17 | Alias Summons Service Executed on Jerold Weissberg 9/6/2024 .. (Tucker, Lawrence) (Entered: 09/19/2024) |
| 09/19/2024 | | 18 | Alias Summons Service Executed on Tyler Burgess 9/8/2024 .. (Tucker, Lawrence) (Entered: 09/19/2024) |
| 09/20/2024 | | 19 | |

| | | | |
|---|---|---|---|
| | | | Alias Summons Service Executed on Yaakov Winograd 9/13/2024 .. (Tucker, Lawrence) (Entered: 09/20/2024) |
| 10/09/2024 | | 20 | Alias Summons Service Executed on Nathan Free 9/11/2024 *or before (returned marked "refused")*.. (Tucker, Lawrence) (Entered: 10/09/2024) |
| 10/16/2024 | | 21 | Motion To Extend Time *to Serve Process* Filed by Lawrence J. Tucker Jr on behalf of William L Fava, Jason Richard Littrell. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit h # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit N # 15 Exhibit O # 16 Exhibit P # 17 Exhibit Q # 18 Exhibit R # 19 Exhibit S) (Tucker, Lawrence) (Entered: 10/16/2024) |
| 10/17/2024 | | 22 | The court hereby orders and directs Lawrence J. Tucker Jr to submit a proposed order (Re: 21 Motion to Extend/Shorten Time filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). Order Due by 10/31/2024 Entered on Docket by: (MRH) (Entered: 10/17/2024) |
| 10/28/2024 | | 23 | Order Granting Plaintiffs' Motion to Extend Time for Service of Process. Extended for 90 Days. (Related Doc # 21) Entered on Docket by: (MRH) (Entered: 10/28/2024) |
| 10/30/2024 | | 24 | Notice of Appearance and Request for Notice by Jim F. Spencer Jr. Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Spencer, Jim) (Entered: 10/30/2024) |
| 10/30/2024 | | 25 | Notice of Appearance and Request for Notice by William Frederick Ray Filed by William Frederick Ray on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Ray, William) (Entered: 10/30/2024) |
| 10/30/2024 | | 26 | Notice of Appearance and Request for Notice by Stephanie M. Rippee Filed by Stephanie M. Rippee on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Rippee, Stephanie) (Entered: 10/30/2024) |
| 10/30/2024 | | 27 | Motion to Appear pro hac vice *of Edward F. Kuester, IV* Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Attachments: # 1 Exhibit Affidavit with Certificate of Good Standing # 2 Proposed Order) (Spencer, Jim) (Entered: 10/30/2024) |
| 10/30/2024 | | 28 | Motion To Extend Time *in Which to Plead or Otherwise Defend* Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Attachments: # 1 Proposed Order) (Spencer, Jim) (Entered: 10/30/2024) |

| | | | |
|---|---|---|---|
| 10/30/2024 | | 29 | BNC Certificate of Service No. of Notices: 1. Notice Date 10/30/2024. (Related Doc # 23) (Admin.) (Entered: 10/30/2024) |
| 11/01/2024 | | | Undeliverable Mail Addressed to Tyler Burgess, Tonia Etoh, International Development Services, International Services, Inc., TAVAS, LLC, Penhurst Captial, Inc., Tim Willits, Nathan Free, Jerold Weissberg, Robert Legon, Bruce Bush, Dale Johnson, and James Peters: Represented by William Frederick Ray, Stephanie M. Rippee, and Jim F. Spencer, Jr. (RE: related document(s) 23 Order on Motion to Extend/Shorten Time). Entered on Docket by: (WC) (Entered: 11/01/2024) |
| 11/01/2024 | | | Undeliverable Mail Addressed to NewCo Capital Group IV, LLC, Mehandi Vakil, Wise Venture, LLC, Samson MCA, LLC, Cloudfund, LLC, Yaakov Winograd, Unique Funding Solutions, LLC, Prosperum Capital Partners, LLC, John and Jane Doe Defendants 1−10, Entitiy Doe Defendants 1−5, and Steven Markowitz, Jr.: Pro Se (RE: related document(s) 23 Order on Motion to Extend/Shorten Time). Entered on Docket by: (WC) (Entered: 11/01/2024) |
| 11/01/2024 | | 30 | Order Granting Motion To Appear pro hac vice of Edward F. Kuester, IV (Related Doc # 27) Entered on Docket by: (MRH) (Entered: 11/01/2024) |
| 11/01/2024 | | 31 | Order Granting Motion to Extend Time in Which to Plead or Otherwise Defend. Deadline for Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits extended to 12/13/2024. (Related Doc # 28) Entered on Docket by: (MRH) (Entered: 11/01/2024) |
| 11/03/2024 | | 32 | BNC Certificate of Service No. of Notices: 1. Notice Date 11/03/2024. (Related Doc # 30) (Admin.) (Entered: 11/03/2024) |
| 11/03/2024 | | 33 | BNC Certificate of Service No. of Notices: 1. Notice Date 11/03/2024. (Related Doc # 31) (Admin.) (Entered: 11/03/2024) |
| 12/05/2024 | | | Request for Alias Summons by William L Fava, Jason Richard Littrell Filed by Lawrence J. Tucker Jr on behalf of William L Fava, Jason Richard Littrell. (Tucker, Lawrence) (Entered: 12/05/2024) |
| 12/06/2024 | | 34 | Alias Summons Issued on Tyler Burgess, Bruce Bush, Byzfunder NY, LLC, Cloudfund, LLC, Entity Doe Defendants 1 − 5, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., John and Jane Doe Defendants 1 − 10, Dale Johnston, Robert Legon, Steven Markowitz, Jr., NewCo Capital Group IV, LLC, Penhurst Capital, Inc., James Peters, Prosperum Capital Partners, LLC, Samson MCA, LLC, TAVAS, LLC, Unique Funding Solutions, LLC, Mehandi Vakil, Jerold Weissberg, Tim Willits , Yaakov Winograd, Wise Venture, LLC. Entered on Docket by: (MRH) (Entered: 12/06/2024) |
| 12/09/2024 | | 35 | Motion To Extend Time Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Attachments: # 1 Proposed Order) (Spencer, Jim) (Entered: 12/09/2024) |
| 12/11/2024 | | 36 | Motion to Appear pro hac vice Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert |

| | | | |
|---|---|---|---|
| | | | Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg. (Attachments: # 1 Exhibit Affidavit # 2 Proposed Order) (Spencer, Jim) (Entered: 12/11/2024) |
| 12/11/2024 | | 37 | Motion to Appear pro hac vice Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg. (Attachments: # 1 Exhibit Affidavit # 2 Proposed Order) (Spencer, Jim) (Entered: 12/11/2024) |
| 12/11/2024 | | 38 | Motion to Appear pro hac vice Filed by Jim F. Spencer Jr. on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg. (Attachments: # 1 Exhibit Affidavit # 2 Proposed Order) (Spencer, Jim) (Entered: 12/11/2024) |
| 12/16/2024 | | 39 | Order Granting Motion to Extend Time in Which to Plead or Otherwise Defend. (Related Doc # 35) Entered on Docket by: (MRH) (Entered: 12/16/2024) |
| 12/16/2024 | | | Tyler Burgess Answer Deadline Reset for 1/10/2025; Bruce Bush Answer Deadline Reset for 1/10/2025; Tonia Etoh Answer Deadline Reset for 1/10/2025; Nathan Free Answer Deadline Reset for 1/10/2025; International Development Services Answer Deadline Reset for 1/10/2025; International Services, Inc. Answer Deadline Reset for 1/10/2025; Dale Johnston Answer Deadline Reset for 1/10/2025; Robert Legon Answer Deadline Reset for 1/10/2025; Penhurst Capital, Inc. Answer Deadline Reset for 1/10/2025; James Peters Answer Deadline Reset for 1/10/2025; TAVAS, LLC Answer Deadline Reset for 1/10/2025; Jerold Weissberg Answer Deadline Reset for 1/10/2025; Tim Willits Answer Deadline Reset for 1/10/2025 . Entered on Docket by: (MRH) (Entered: 12/16/2024) |
| 12/16/2024 | | 40 | Order Granting Motion for Cory D. Anderson To Appear pro hac vice (Related Doc # 36) Entered on Docket by: (MRH) (Entered: 12/16/2024) |
| 12/16/2024 | | 41 | Order Granting Motion for Michael P. Connelly To Appear pro hac vice (Related Doc # 37) Entered on Docket by: (MRH) (Entered: 12/16/2024) |
| 12/16/2024 | | 42 | Order Granting Motion for Sagar P. Thakkar To Appear pro hac vice (Related Doc # 38) Entered on Docket by: (MRH) (Entered: 12/16/2024) |
| 12/18/2024 | | 43 | BNC Certificate of Service No. of Notices: 1. Notice Date 12/18/2024. (Related Doc # 39) (Admin.) (Entered: 12/18/2024) |
| 12/18/2024 | | 44 | BNC Certificate of Service No. of Notices: 2. Notice Date 12/18/2024. (Related Doc # 40) (Admin.) (Entered: 12/18/2024) |
| 12/18/2024 | | 45 | BNC Certificate of Service No. of Notices: 3. Notice Date 12/18/2024. (Related Doc # 41) (Admin.) (Entered: 12/18/2024) |
| 12/18/2024 | | 46 | BNC Certificate of Service No. of Notices: 4. Notice Date 12/18/2024. (Related Doc # 42) (Admin.) (Entered: 12/18/2024) |
| 01/10/2025 | | 47 | Motion for Withdrawal of Reference . Filed by Stephanie M. Rippee on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, |

| | | | |
|---|---|---|---|
| | | | International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg (RE: related document(s)1 Complaint filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). (Attachments: # 1 Exhibit 1 − Littco, LLC Secretary of State Information # 2 Exhibit 2 − Littco Metals Management Co. Secretary of State Information # 3 Exhibit 3 − Littco Metals Equipment Leasing, Inc. Secretary of State Information) (Rippee, Stephanie) (Entered: 01/10/2025) |
| 01/10/2025 | | 48 | Brief *in Support of Motion to Withdraw Reference* Filed by Stephanie M. Rippee on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg (RE: related document(s)47 Motion for Withdrawal of Reference filed by Defendant Tyler Burgess, Defendant Tonia Etoh, Defendant International Development Services, Defendant International Services, Inc., Defendant TAVAS, LLC, Defendant Penhurst Capital, Inc., Defendant Nathan Free, Defendant Jerold Weissberg, Defendant Robert Legon, Defendant Bruce Bush, Defendant Dale Johnston, Defendant James Peters). (Rippee, Stephanie) (Entered: 01/10/2025) |
| 01/10/2025 | | | Receipt of filing fee for Motion for Withdrawal of Reference( 24−01024−SDM) [motion,mwdref] ( 199.00). Receipt number A11421360, amount $ 199.00. (U.S. Treasury) (Entered: 01/10/2025) |
| 01/10/2025 | | 49 | Motion to Dismiss Adversary Proceeding Filed by Michael P. Connelly on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits. (Connelly, Michael) (Entered: 01/10/2025) |
| 01/10/2025 | | 50 | Brief *in Support of IDS Defendants' Motion to Dismiss* Filed by Michael P. Connelly on behalf of Tyler Burgess, Bruce Bush, Tonia Etoh, Nathan Free, International Development Services, International Services, Inc., Dale Johnston, Robert Legon, Penhurst Capital, Inc., James Peters, TAVAS, LLC, Jerold Weissberg, Tim Willits (RE: related document(s)49 Motion to Dismiss Adversary Proceeding filed by Defendant Tyler Burgess, Defendant Tonia Etoh, Defendant International Development Services, Defendant International Services, Inc., Defendant TAVAS, LLC, Defendant Penhurst Capital, Inc., Defendant Tim Willits, Defendant Nathan Free, Defendant Jerold Weissberg, Defendant Robert Legon, Defendant Bruce Bush, Defendant Dale Johnston, Defendant James Peters). (Connelly, Michael) (Entered: 01/10/2025) |
| 01/10/2025 | | 51 | Hearing Set On (RE: related document(s) 49 Motion to Dismiss Adversary Proceeding filed by Defendant Tyler Burgess, Defendant Tonia Etoh, Defendant International Development Services, Defendant International Services, Inc., Defendant TAVAS, LLC, Defendant Penhurst Capital, Inc., Defendant Tim Willits, Defendant Nathan Free, Defendant Jerold Weissberg, Defendant Robert Legon, Defendant Bruce Bush, Defendant Dale Johnston, Defendant James Peters). The Hearing date is scheduled for 2/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 1/31/2025. Reply due by 2/14/2025. Entered on Docket by: (MRH) (Entered: 01/10/2025) |
| 01/12/2025 | | 52 | BNC Certificate of Service No. of Notices: 2. Notice Date 01/12/2025. (Related Doc # 51) (Admin.) (Entered: 01/12/2025) |

| | | | |
|---|---|---|---|
| 01/15/2025 | | 53 | Notice of Appearance and Request for Notice by Tristan Manthey Filed by Tristan Manthey on behalf of Byzfunder NY, LLC, Cloudfund, LLC, Steven Markowitz, Jr., NewCo Capital Group IV, LLC, Prosperum Capital Partners, LLC, Samson MCA, LLC. (Manthey, Tristan) (Entered: 01/15/2025) |
| 01/16/2025 | | 54 | Motion To Extend Time *to Plead or Otherwise Defend* Filed by Tristan Manthey on behalf of Byzfunder NY, LLC, Cloudfund, LLC, Steven Markowitz, Jr., NewCo Capital Group IV, LLC, Prosperum Capital Partners, LLC, Samson MCA, LLC. (Manthey, Tristan) (Entered: 01/16/2025) |
| 01/16/2025 | | 55 | Motion To Extend Time Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell. (Lewis, Goodloe) (Entered: 01/16/2025) |
| 01/17/2025 | | 56 | The court hereby orders and directs Goodloe Lewis to submit a proposed order (Re: 55 Motion to Extend/Shorten Time filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). Order Due by 1/31/2025 Entered on Docket by: (AOH) (Entered: 01/17/2025) |
| 01/17/2025 | | 57 | Order Granting Motion to Extend Time to plead or otherwise defend in response to the Plaintiffs' Amended Complaint. New ddl: 1/31/25 (Related Doc # 54) Entered on Docket by: (AOH) (Entered: 01/17/2025) |
| 01/17/2025 | | | Per order 57 Byzfunder NY, LLC Answer Deadline Reset for 1/31/2025; Cloudfund, LLC Answer Deadline Reset for 1/31/2025; Steven Markowitz, Jr. Answer Deadline Reset for 1/31/2025; NewCo Capital Group IV, LLC Answer Deadline Reset for 1/31/2025; Prosperum Capital Partners, LLC Answer Deadline Reset for 1/31/2025; Samson MCA, LLC Answer Deadline Reset for 1/31/2025 . Entered on Docket by: (AOH) (Entered: 01/17/2025) |
| 01/19/2025 | | 58 | BNC Certificate of Service No. of Notices: 1. Notice Date 01/19/2025. (Related Doc # 57) (Admin.) (Entered: 01/19/2025) |
| 01/22/2025 | | 59 | Order Granting Plaintiffs' Motion for Extension of Time to Respond to Motion to Dismiss Adversary Proceeding (Dkt. #49) and Motion to Withdraw Reference (Dkt. #47) and to Continue Hearing (Dkt. #55). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/24/2025. Entered on Docket by: (MRH) (Entered: 01/22/2025) |
| 01/24/2025 | | | Undeliverable Mail Addressed to Tyler Burgess, Tonia Etoh, International Development Services, International Services, Inc., TAVAS, LLC, Penhurst Capital, Inc., Tim Willits, Nathan Free, Jerold Weissberg, Robert Legon, Bruce Bush, Dale Johnston, and James Peters: Represented by Cory Daniel Anderson, Michael P. Connelly, Edward F Kuester, IV, William Frederick Ray, Stephanie M. Rippee, Jim F. Spencer, Jr., and Sagar Thakkar (RE: related document(s) 59 Order to Set/Reset Hearing, Order (Generic)). Entered on Docket by: (WC) (Entered: 01/24/2025) |
| 01/24/2025 | | | Undeliverable Mail Addressed to NewCo Capital Group IV, LLC, Wise Venture, LLC, Samson MCA, LLC, Cloudfund, LLC, Prosperum Capital Partners, LLC, and Steven Markowitz, Jr.: Represented by Tristan Manthey (RE: related document(s) 59 Order to Set/Reset Hearing, Order (Generic)). Entered on Docket by: (WC) (Entered: 01/24/2025) |
| 01/24/2025 | | | Undeliverable Mail Addressed to Mehandi Vakil, Yaakov Winograd, Unique Funding Solutions, LLC, John and Jane Doe Defendants 1 − 10, |

| | | | |
|---|---|---|---|
| | | | and Entity Doe Defendants 1 − 5: Pro Se (RE: related document(s) 59 Order to Set/Reset Hearing, Order (Generic)). Entered on Docket by: (WC) (Entered: 01/24/2025) |
| 01/24/2025 | | 60 | BNC Certificate of Service No. of Notices: 2. Notice Date 01/24/2025. (Related Doc # 59) (Admin.) (Entered: 01/24/2025) |
| 01/31/2025 | | 61 | Motion to Dismiss Adversary Proceeding Filed by Tristan Manthey on behalf of Byzfunder NY, LLC. (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 62 | Brief *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of Byzfunder NY, LLC (RE: related document(s)1 Complaint filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell, 9 Amended Complaint filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C) (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 63 | Motion to Dismiss Adversary Proceeding Filed by Tristan Manthey on behalf of Cloudfund, LLC. (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 64 | Brief *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of Cloudfund, LLC (RE: related document(s)63 Motion to Dismiss Adversary Proceeding filed by Defendant Cloudfund, LLC). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 65 | Motion to Dismiss Adversary Proceeding Filed by Tristan Manthey on behalf of NewCo Capital Group IV, LLC. (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 66 | Brief *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of NewCo Capital Group IV, LLC (RE: related document(s)65 Motion to Dismiss Adversary Proceeding filed by Defendant NewCo Capital Group IV, LLC). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 67 | Motion to Dismiss Adversary Proceeding Filed by Tristan Manthey on behalf of Prosperum Capital Partners, LLC. (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 68 | Brief *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of Prosperum Capital Partners, LLC (RE: related document(s)67 Motion to Dismiss Adversary Proceeding filed by Defendant Prosperum Capital Partners, LLC). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 69 | Motion to Dismiss Adversary Proceeding Filed by Tristan Manthey on behalf of Steven Markowitz, Jr., Samson MCA, LLC. (Manthey, Tristan) (Entered: 01/31/2025) |
| 01/31/2025 | | 70 | Brief *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of Steven Markowitz, Jr., Samson MCA, LLC (RE: related document(s)69 Motion to Dismiss Adversary Proceeding filed by Defendant Samson MCA, LLC, Defendant Steven Markowitz, Jr.). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Manthey, Tristan) (Entered: 01/31/2025) |
| 02/05/2025 | | 71 | |

| | | | |
|---|---|---|---|
| | | | Hearing Set On (RE: related document(s) 61 Motion to Dismiss Adversary Proceeding filed by Defendant Byzfunder NY, LLC). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/26/2025. Reply due by 3/12/2025. Entered on Docket by: (MRH) (Entered: 02/05/2025) |
| 02/05/2025 | | 72 | Hearing Set On (RE: related document(s) 63 Motion to Dismiss Adversary Proceeding filed by Defendant Cloudfund, LLC). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/26/2025. Reply due by 3/12/2025. Entered on Docket by: (MRH) (Entered: 02/05/2025) |
| 02/05/2025 | | 73 | Hearing Set On (RE: related document(s) 65 Motion to Dismiss Adversary Proceeding filed by Defendant NewCo Capital Group IV, LLC). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/26/2025. Reply due by 3/12/2025. Entered on Docket by: (MRH) (Entered: 02/05/2025) |
| 02/05/2025 | | 74 | Hearing Set On (RE: related document(s) 67 Motion to Dismiss Adversary Proceeding filed by Defendant Prosperum Capital Partners, LLC). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/26/2025. Reply due by 3/12/2025. Entered on Docket by: (MRH) (Entered: 02/05/2025) |
| 02/05/2025 | | 75 | Hearing Set On (RE: related document(s) 69 Motion to Dismiss Adversary Proceeding filed by Defendant Samson MCA, LLC, Defendant Steven Markowitz, Jr.). The Hearing date is scheduled for 3/25/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 2/26/2025. Reply due by 3/12/2025. Entered on Docket by: (MRH) (Entered: 02/05/2025) |
| 02/07/2025 | | 76 | BNC Certificate of Service No. of Notices: 2. Notice Date 02/07/2025. (Related Doc # 71) (Admin.) (Entered: 02/07/2025) |
| 02/07/2025 | | 77 | BNC Certificate of Service No. of Notices: 2. Notice Date 02/07/2025. (Related Doc # 72) (Admin.) (Entered: 02/07/2025) |
| 02/07/2025 | | 78 | BNC Certificate of Service No. of Notices: 2. Notice Date 02/07/2025. (Related Doc # 73) (Admin.) (Entered: 02/07/2025) |
| 02/07/2025 | | 79 | BNC Certificate of Service No. of Notices: 1. Notice Date 02/07/2025. (Related Doc # 74) (Admin.) (Entered: 02/07/2025) |
| 02/07/2025 | | 80 | BNC Certificate of Service No. of Notices: 2. Notice Date 02/07/2025. (Related Doc # 75) (Admin.) (Entered: 02/07/2025) |
| 02/18/2025 | | 81 | Notice of Appearance and Request for Notice by Alan L. Smith Filed by Alan L. Smith on behalf of Yaakov Winograd. (Smith, Alan) (Entered: 02/18/2025) |
| 02/18/2025 | | 82 | Notice of Appearance and Request for Notice by Alan L. Smith Filed by Alan L. Smith on behalf of Unique Funding Solutions, LLC. (Smith, Alan) (Entered: 02/18/2025) |
| 02/20/2025 | | 83 | Motion To Extend Time *for Defendants, Unique Funding Solutions, LLC and Yaakov Winograd, to Answer or Otherwise Respond to First Amended Complaint* Filed by Alan L. Smith on behalf of Unique Funding Solutions, LLC, Yaakov Winograd. (Attachments: # 1 Exhibit A − (proposed) Order) |

| | | | |
|---|---|---|---|
| | | | (Smith, Alan) (Entered: 02/20/2025) |
| 02/21/2025 | | 84 | Order Granting Motion to Extend Deadline for Defendants, Unique Funding Solutions, LLC and Yaakov Winograd to Answer or Otherwise Respond to the First Amended Complaint. Unique Funding Solutions, LLC and Yaakov Winograd shall each be allowed up to and including, Friday, March 7, 2025, to answer or otherwise respond to the First Amended Complaint (Related Doc # 83) Entered on Docket by: (MRH) (Entered: 02/21/2025) |
| 02/21/2025 | | | Unique Funding Solutions, LLC Answer Deadline Reset for 3/7/2025; Yaakov Winograd Answer Deadline Reset for 3/7/2025. Entered on Docket by: (MRH) (Entered: 02/21/2025) |
| 02/21/2025 | | 85 | Amended Document *Memorandum of Law in Support of Motion to Dismiss* Filed by Tristan Manthey on behalf of NewCo Capital Group IV, LLC (RE: related document(s)66 Brief filed by Defendant NewCo Capital Group IV, LLC). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Manthey, Tristan) (Entered: 02/21/2025) |
| 02/23/2025 | | 86 | BNC Certificate of Service No. of Notices: 2. Notice Date 02/23/2025. (Related Doc # 84) (Admin.) (Entered: 02/23/2025) |
| 02/24/2025 | | 87 | Motion *for Leave to File Second Amended Complaint* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell. (Attachments: # 1 Exhibit A − Proposed Second Amended Complaint # 2 Exhibit B − Byzfunder Proof of Claim # 3 Exhibit C − Samson MCA Proof of Claim # 4 Exhibit D − Proposed Order Granting Motion) (Lewis, Goodloe) (Entered: 02/24/2025) |
| 02/24/2025 | | 88 | Brief *in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell (RE: related document(s)87 Generic Motion filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). (Lewis, Goodloe) (Entered: 02/24/2025) |
| 02/24/2025 | | 89 | Motion *Response in Opposition to Motion to Withdraw Reference* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell. (Attachments: # 1 Exhibit A − Bankruptcy Petition by LITTCO Metals # 2 Exhibit B − Byzfunder Proof of Claim # 3 Exhibit C− Samson MCA Proof of Claim # 4 Exhibit D − International Services, Inc. Proof of Claim) (Lewis, Goodloe) (Entered: 02/24/2025) |
| 02/24/2025 | | 90 | Brief *in Support of Response to Motion to Withdraw Reference* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell (RE: related document(s)47 Motion for Withdrawal of Reference filed by Defendant Tyler Burgess, Defendant Tonia Etoh, Defendant International Development Services, Defendant International Services, Inc., Defendant TAVAS, LLC, Defendant Penhurst Capital, Inc., Defendant Nathan Free, Defendant Jerold Weissberg, Defendant Robert Legon, Defendant Bruce Bush, Defendant Dale Johnston, Defendant James Peters). (Lewis, Goodloe) (Entered: 02/24/2025) |
| 02/24/2025 | | 91 | Motion *Response to International Development Services' Motion to Dismiss* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell. (Attachments: # 1 Exhibit A − Bankruptcy Petition by LITTCO Metals # 2 Exhibit B − Byzfunder Proof of Claim # 3 Exhibit C − Samson MCA Proof of Claim # 4 Exhibit D − International Services, Inc. Proof of Claim) (Lewis, Goodloe) (Entered: 02/24/2025) |

| | | | |
|---|---|---|---|
| 02/24/2025 | | 92 | Brief *in Support of Response to International Development Services' Motion to Dismiss* Filed by Goodloe Lewis on behalf of William L Fava, Jason Richard Littrell (RE: related document(s)49 Motion to Dismiss Adversary Proceeding filed by Defendant Tyler Burgess, Defendant Tonia Etoh, Defendant International Development Services, Defendant International Services, Inc., Defendant TAVAS, LLC, Defendant Penhurst Capital, Inc., Defendant Tim Willits, Defendant Nathan Free, Defendant Jerold Weissberg, Defendant Robert Legon, Defendant Bruce Bush, Defendant Dale Johnston, Defendant James Peters). (Lewis, Goodloe) (Entered: 02/24/2025) |
| 02/25/2025 | | 93 | Hearing Set On (RE: related document(s) 87 Generic Motion filed by Plaintiff William L Fava, Plaintiff Jason Richard Littrell). The Hearing date is scheduled for 4/22/2025 at 10:00 AM at Cochran U.S. Bankruptcy Courthouse. Responses due by 3/24/2025. Entered on Docket by: (MRH) (Entered: 02/25/2025) |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:                                              CHAPTER 7
LITTCO METALS, LLC                                  CASE NO. 23-10069-SDM


JASON RICHARD LITTRELL AND WILLIAM L FAVA,                    PLAINTIFFS
TRUSTEE FOR LITTCO METALS, LLC D/B/A
LITTCO, LLC, LITTCO METALS EQUIPMENT
LEASING, INC., AND LITTCO METALS MANAGEMENT CO.

VS.                                                 ADV. PROCEEDING NO: 24-01024-SDM

TYLER BURGESS; TONIA ETOH; INTERNATIONAL                     DEFENDANTS
DEVELOPMENT SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC; PENHURST CAPITAL,
INC.; TIM WILLITS; NATHAN FREE; JEROLD
WEISSBERG; ROBERT LEGON; BRUCE BUSH;
DALE JOHNSTON; JAMES PETERS; BYZFUNDER NY,
LLC; NEWCO CAPITAL GROUP IV, LLC; MEHANDI VAKIL;
WISE VENTURE, LLC; STEVEN MARKOWITZ, JR.;
SAMSON, MCA, LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS, LLC; YAAKOV
WINOGRAD; PROSPERUM CAPITAL PARTNERS, LLC
D/B/A ARSENAL FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITY DOES 1-5

## ***RELIEF IS SOUGHT FROM A
UNITED STATES DISTRICT JUDGE***

---

### MOTION TO WITHDRAW REFERENCE

---

Defendants, Tyler Burgess, Tonia Etoh, International Development Services, Inc.,

International Services, Inc., Tavas, LLC, Penhurst Capital, Inc., Nathan Free, Jerold Weissberg,

Robert Legon, Bruce Bush, Dale Johnston and James Peters (collectively "IDS Defendants"), by

and through counsel, submit this Motion to Withdraw Reference.

1.      Seemingly in an attempt to avoid stringent RICO pleadings requirements set forth in rule 83.8 of the Local Uniform Civil Rules of the Northern and Southern Districts of Mississippi ("L.U.Civ.R."), plaintiffs have filed a ten count adversary proceeding in Bankruptcy Court, consisting solely of non-core claims, that should be adjudicated by the District Court.

2.      As set forth in detail in the memorandum contemporaneously filed with this motion, the IDS Defendants seek withdrawal of the reference of the adversary proceeding so that the District Court can fully adjudicate this proceeding.  Because plaintiffs have asserted federal RICO claims which will present substantial and material issues regarding the interpretation of the federal RICO statute, withdrawal is mandatory.

3.      Alternatively, the District Court should, in its discretion, withdraw the reference of the adversary proceeding for cause.

4.      In support of this motion, the IDS Defendants attach the following exhibits:

**Exhibit 1**: Printout from Mississippi Secretary of State's website for Littco, LLC

**Exhibit 2**: Printout from Mississippi Secretary of State's website for Littco Metals Management Co.

**Exhibit 3**: Printout from Mississippi Secretary of State's website for Littco Metals Equipment Leasing, Inc.

WHEREFORE, PREMISES CONSIDERED, the IDS Defendants ask the District Court to withdraw the reference of this adversary proceeding from the Bankruptcy Court.

Respectfully submitted this 10th day of January 2025.

Tyler Burgess, Tonia Etoh, International
Development Services, Inc., International Services,
Inc., Tavas LLC, Penhurst Capital, Inc., Tim Willits,
Nathan Free, Jerold Weissberg, Robert Legon, Bruce
Bush, Dale Johnston and James Peters

By:      /s/ Stephanie M. Rippee
         Jim F. Spencer, Jr. (MSB #7736)
         William F. Ray (MSB #4654)
         Stephanie M. Rippee (MSB #8998)
         Watkins & Eager PLLC
         P.O. Box 650
         Jackson, Mississippi 39205
         (601) 965-1900
         jspencer@watkinseager.com
         wray@watkinseager.com
         srippee@watkinseager.com

         Michel P. Connelly (admitted pro hac vice)
         Sagar P. Thakkar (admitted pro hac vice)
         Cory D. Anderson (admitted pro hac vice)
         ROCK FUSCO & CONNELLY, LLC
         333 W. Wacker, Floor 19
         Chicago, Illinois 60606
         Telephone: (312) 494-1000
         Facsimile: (312) 494-1001
         mconnelly@rfclaw.com
         sthakkar@rfclaw.com
         canderson@rfclaw.com

OF COUNSEL:
**WATKINS & EAGER PLLC**
P.O. BOX 650
JACKSON, MISSISSIPPI 39205
(601) 965-1900

**ROCK FUSCO & CONNELLY, LLC**
333 W. Wacker, Floor 19
Chicago, Illinois 60606
Telephone: (312) 494-1000
Facsimile: (312) 494-1001

## CERTIFICATE OF SERVICE

I, Stephanie M. Rippee, do hereby certify that I have caused to be served the above and

foregoing pleading on all parties requesting notice by using the ECF filing system of the court.

This 10th day of January 2025.

*/s/ Stephanie M. Rippee*
Stephanie M. Rippee

4

**F0100**                                  **2019280741**



**Fee:** $ 50

Business ID: 1190567
Filed: 10/04/2019 09:26 PM
C. Delbert Hosemann, Jr.
Secretary of State

**D E L B E R T   H O S E M A N N**
*Secretary of State*

**P.O. BOX 136
JACKSON, MS 39205-0136**

**TELEPHONE: (601) 359-1633**

## Mississippi Limited Liability Company Certificate of Formation

### Business Information

*Business Type:*  Limited Liability Company
*Business Name:*  Littco, LLC
*Business Email:*  jlitt77@gmail.com
*Future Effective Date:*  10/04/2019

### NAICS Code/Nature of Business

238190 - Other Foundation, Structure, and Building Exterior Contractors
236210 - Industrial Building Construction
238390 - Other Building Finishing Contractors

### Registered Agent

*Name:*     Jason Richard  Littrell

*Address:*   179 Yellow Creek Rd.
Louisville, MS 39339

### Signature

The undersigned certifies that:
1) he/she has notified the above-named registered agent of this appointment;
2) he/she has provided the agent an address for the company, and;
3) the agent has agreed to serve as registered agent for this company

By entering my name in the space provided, I certify that I am authorized to file this document on behalf of this entity, have examined the document and, to the best of my knowledge and belief, it is true, correct and complete as of this day *10/04/2019*.

*Name:*                                    *Address:*

Jason Richard  Littrell                   179 Yellow Creek Rd.
*Manager*                                  Louisville, MS 39339

EXHIBIT
1

**F0001**
**Fee: $ 50**



**2022078660**

Business ID: 1325224
Filed: 02/17/2022 02:04 PM
Michael Watson
Secretary of State

P.O. BOX 136
JACKSON, MS 39205-0136
TELEPHONE: (601) 359-1633

## Articles of Incorporation

### Business Information

*Business Type:* Profit Corporation
*Business Name:* LITTCO Metals Management Co.
*Business Email:* jason@littcometalbuildings.com
*Period of Duration:* Perpetual

### NAICS Code/Nature of Business

541611 - Administrative Management and General Management Consulting Services

### Registered Agent

*Name:* Jason Littrell

*Address:* 6593 Hwy 45 Alternate South
West Point, MS 39773

### Stock Information

| *Classes:* | *No. of Shares:* |
|---|---|
| Common | 1000 |

### Signature

The undersigned certifies that:
1) he/she has notified the above-named registered agent of this appointment;
2) he/she has provided the agent an address for the company, and;
3) the agent has agreed to serve as registered agent for this company

By entering my name in the space provided, I certify that I am authorized to file this document on behalf of this entity, have examined the document and, to the best of my knowledge and belief, it is true, correct and complete as of this day  *02/17/2022*.

| *Name:* | *Address:* |
|---|---|
| Christopher D Ryan | 3850 N Wilke Road |
| *Incorporator* | Arlington Heights, IL 60004 |

EXHIBIT
**2**

**F0001**

**Fee: $ 50**



**Michael Watson**
SECRETARY OF STATE

**20220786B0**

Business ID: 1325223
Filed: 02/17/2022 02:01 PM
Michael Watson
Secretary of State

. CXCuX3 1B6
JCS KdXA, Md B9205-01B6
TELE. HXAE: (601) B59-16BB

## Articles of Incorporation

### usinleii fIorma tNrI

**Business Type:** Profit Corporation
**Business Name:** LITTCO Metals Equipment Leasing, Inc.
**Business Email:** jason@littcometalbuildings.com
**Period of Duration:** Perpetual

### ACfS d Sr/ eRAt Nme rousinleii

532490 - Other Commercial and Industrial Machinery and Equipment Rental and Leasing

### g ecriNme/ CceIN

| | |
|---|---|
| **Name:** | Jason Littrell |
| **Address:** | 6593 Hwy 45 Alternate South West Point, MS 39773 |

### dNrkP fIorma tNrI

| Classes: | No. of Shares: |
|---|---|
| Common Non Voting | 900 |
| Common | 100 |

### dncI t Nme

The undersigned certifies that:
1) he/she has notified the above-named registered agent of this appointment;
2) he/she has provided the agent an address for the company, and;
3) the agent has agreed to serve as registered agent for this company

By entering my name in the space provided, I certify that I am authorized to file this document on behalf of this entity, have examined the document and, to the best of my knowledge and belief, it is true, correct and complete as of this day *02/17/2022*.

| Name: | Address: |
|---|---|
| Christopher D Ryan | 3850 N Wilke Road |
| *Incorporator* | Arlington Heights, IL 60004 |

EXHIBIT
3

27

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:                                    CHAPTER 7
LITTCO METALS, LLC                        CASE NO. 23-10069-SDM

JASON RICHARD LITTRELL AND WILLIAM L FAVA,          PLAINTIFFS
TRUSTEE FOR LITTCO METALS, LLC D/B/A
LITTCO, LLC, LITTCO METALS EQUIPMENT
LEASING, INC., AND LITTCO METALS MANAGEMENT CO.

VS.                                 ADV. PROCEEDING NO: 24-01024-SDM

TYLER BURGESS; TONIA ETOH; INTERNATIONAL          DEFENDANTS
DEVELOPMENT SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC; PENHURST CAPITAL,
INC.; TIM WILLITS; NATHAN FREE; JEROLD
WEISSBERG; ROBERT LEGON; BRUCE BUSH;
DALE JOHNSTON; JAMES PETERS; BYZFUNDER NY,
LLC; NEWCO CAPITAL GROUP IV, LLC; MEHANDI VAKIL;
WISE VENTURE, LLC; STEVEN MARKOWITZ, JR.;
SAMSON, MCA, LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS, LLC; YAAKOV
WINOGRAD; PROSPERUM CAPITAL PARTNERS, LLC
D/B/A ARSENAL FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITY DOES 1-5

# ***RELIEF IS SOUGHT FROM A
UNITED STATES DISTRICT JUDGE***

_____

## MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW REFERENCE

_____

Defendants, Tyler Burgess, Tonia Etoh, International Development Services, Inc.,

International Services, Inc., Tavas, LLC, Penhurst Capital, Inc., Nathan Free, Jerold Weissberg,

Case 1:25-cv-00025-GHD-DAS Doc #: 10-1 Filed: 02/25/25 1 of 12 PageID #: 29
Case 1:25-cv-00025-GHD-DAS Doc #: 10-1 Filed: 02/25/25 Page 2 of 13
Document    Page 2 of 13

Robert Legon, Bruce Bush, Dale Johnston and James Peters (collectively "IDS Defendants"), by and through counsel,  submit this memorandum in support of their Motion to Withdraw Reference ("IDS Defendants' Motion to Withdraw").

## Introduction

Seemingly in an attempt to avoid stringent RICO pleadings requirements set forth in rule 83.8 of the Local Uniform Civil Rules of the Northern and Southern Districts of Mississippi ("L.U.Civ.R."), plaintiffs have filed a ten count adversary proceeding in Bankruptcy Court, consisting solely of non-core claims, that should be adjudicated by the District Court.  The IDS Defendants seek withdrawal of the reference of the adversary proceeding so that the District Court can fully adjudicate this proceeding.  Because Plaintiffs have asserted federal RICO claims which will present substantial and material issues regarding the interpretation of the federal RICO statute, withdrawal is mandatory.  Alternatively, the District Court should, in its discretion, withdraw the reference of the adversary proceeding for cause.

## Factual and Procedural History

On January 10, 2023, debtor Littco Metals, LLC ("Littco Metals" or "Debtor") filed a voluntary petition for chapter 11 bankruptcy protection which was assigned case no. 23-10069-SDM (hereinafter referred to as "*In Re Littco Metals*"). *In Re Littco Metals*, Doc. 1. Pursuant to 28 U.S.C. § 157, L.U.Civ.R. 83.6,  and the August 6, 1984 Standing Order of Reference signed by the then Chief United States District Judge ("Standing Order"), this bankruptcy case, which was later converted to a chapter 7 case,[1] was automatically referred <u>from</u> the United States District Court for the Northern District of Mississippi ("District Court") <u>to</u> the United States Bankruptcy

---

[1] See *In Re Littco Metals*, Docs. 70, 75.

Court for the Northern District of Mississippi ("Bankruptcy Court") where it is proceeding along the usual and customary path of a bankruptcy case.

On July 18, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7001 *et seq*., Littco Metals, by and through the chapter 7 bankruptcy trustee William L. Fava ("Fava"),[2] and non-debtor Jason Littrell[3] ("Littrell") (collectively "Plaintiffs") filed adversary proceeding No. 24-01024-SDM ("AP 24-1024") against numerous defendants, including the IDS Defendants. *In Re Littco Metals*, Doc. 158; AP 24-1024, Doc. 1. Plaintiffs seek to recover damages from the defendants resulting from failed business arrangements/agreements between Littco Metals and various defendants. *In Re Littco Metals*, Doc. 158; AP 24-1024, Doc. 1. This adversary proceeding was also automatically referred to the Bankruptcy Court pursuant to the same authority cited above. Plaintiffs amended the complaint on September 9, 2024 (*In Re Littco Metals*, Doc. 159; AP 24-1024, Doc. 9.) and then served process on any remaining unserved defendants.

Littco Metals is a general contractor that, among other things, designs and fabricates metal buildings. FAC ¶ 48. Plaintiffs assert that various defendants targeted Littco Metals as a

---

[2] Fava purports to be asserting claims not as the Trustee of the debtor Littco Metals, LLC, but rather as the Trustee of as Trustee of "Littco Metals, LLC d/b/a Littco, LLC, Littco Metals Equipment Leasing, Inc., and Littco Metals Management Co." At some point, the debtor, Littco Metals, LLC, amended its bankruptcy petition purportedly to add certain "d/b/a" names for the debtor. *In Re Littco Metals*, Doc. 39. Per the Mississippi Secretary of State's Office, however, the three companies added (Littco, LLC, Littco Metals Equipment Leasing, Inc., and Littco Metals Management Co.) are separate companies - not "d/b/a"s for the debtor. The first is a Mississippi limited liability company, and the other two are Mississippi business corporations. See Exhibits 1-3 to the IDS Defendants' Motion to Withdraw. To be clear, Fava is not the trustee for these three separate, non-debtor entities, and he has no authority or standing to pursue any claims for these three separate non-debtor entities. 11 U.S.C. § 704(a)(1); 11 U.S.C. § 541(a)(1). There is only one debtor: Littco Metals, LLC ("Littco"). The Trustee cannot turn three additional, separate legal entities into debtors simply by calling them "d/b/a"s for the debtor in an amended bankruptcy petition. The IDS Defendants have asked the Court to dismiss these three entities as plaintiffs and/or dismiss any and all claims purportedly filed by Fava on behalf of these three non-debtor entities.
[3] As the representative of the estate, Fava has standing to assert the ten causes of action in AP 24-1024 that belong to the Debtor, Littco Metals, LLC. 28 U.S.C. § 323. Jason Littrell is not a debtor. The First Amended Complaint ("FAC") says that Littrell separately filed for bankruptcy protection personally, as well, but admits that petition has been dismissed. FAC ¶¶ 47, 136, 137. Littrell has been identified as an owner of Littco Metals, and a personal guarantor of certain financing contracts the Debtor entered FAC ¶¶ 48, 64, 69, 82, 91, 98, 104, 110, 114, 118, 122, 129, 132, 134, 167. But he did not attach any ownership or guarantee documents to the FAC, and neither role gives him standing to file claims that belong only to Littco Metals. That standing belongs to Fava.

financially distressed business and engaged the company in a business consulting scheme wherein defendants claimed they would provide services to improve business operations. Per Plaintiffs, defendants instead conned the company and left it entrapped by insurmountable debt from related, or at least familiar, predatory lenders which debt was incurred, in large part, to pay for the purported business consulting services that did not aid the business.  FAC ¶¶ 32-135.

Defendants' actions, say Plaintiffs, resulted in Littco Metals having to file for bankruptcy protection.    FAC ¶¶ 47, 136-137.  Plaintiffs assert the following claims against defendants, all of which are based on non-bankruptcy common law and/or non-bankruptcy federal statutes:

Count One: Declaratory Judgment (that certain of the business agreements between Littco Metals and various defendants are unconscionable).  FAC ¶¶ 144-146

Count Two: Usury Violations FAC ¶¶ 147-151

Count Three: RICO Violations FAC ¶¶ 138-143, 152- 159

Count Four: Fraud in the Inducement FAC ¶¶ 160-168

Count Five: Negligent/Fraudulent Misrepresentation FAC ¶¶ 169-174

Count Six: Negligence and Gross Negligence FAC ¶¶ 175-180

Count Seven: Breach of Contract and UCC Violations FAC ¶¶ 181-183

Count Eight: Tortious/Intentional Interference (with the performance of contracts between Littco Metals and its customers) FAC ¶¶ 184-187

Count Nine: Conversion FAC ¶¶ 188-191

Count Ten: Civil Conspiracy FAC ¶¶192-195

Plaintiffs claim a variety of damages including "all damages recoverable under 18 U.S.C. § 1864(c)" [sic][4] – i.e., RICO damages.   FAC ¶ 197(c).

---

[4] Plaintiffs clearly intend to refer to 18 U.S.C. 19<u>6</u>4 (c) - RICO damages.

**Argument and Authorities**

**I.      The District Court has jurisdiction over and the power to withdraw AP 24-1024 from the Bankruptcy Court.**

Bankruptcy jurisdiction is vested in the District Court, an Article III court. 28 U.S.C. § 1334(a).  But the code permits the District Court to refer certain bankruptcy cases and proceedings to the Bankruptcy Court, an Article I court, which is considered a "unit" of the District Court.  28 U.S.C. § 157(a); *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  As cited above, in this district, pursuant to a local rule and the Standing Order, the District Court automatically refers bankruptcy cases and proceedings to the Bankruptcy Court. L.U.Civ.R. 83.6; Standing Order. Thus, under the procedures followed in this district, Plaintiffs filed AP 24-1024 directly in the Bankruptcy Court.

In this motion, the IDS Defendants are asking the District Court to withdraw the reference of AP 24-1024 (as opposed to the entire *In re Littco Metals* case), from the Bankruptcy Court and to instead preside over this adversary proceeding itself.  The United States Code expressly permits the District Court to do so.  28 U.S.C. § 157(d).  The federal bankruptcy rules govern the procedure for withdrawing the reference of an adversary proceeding such as AP 24-1024.  Fed. R. Bankr. P. 5011; Miss. Bankr. L.R. 5011-1.

**II.      AP 24-1024 is a non-core proceeding.**

With regard to bankruptcy proceedings (as opposed to bankruptcy cases), the Bankruptcy Court's "referred" jurisdiction consists of three categories: 1) "proceedings arising under" title 11; 2) proceedings "arising in" a case under title 11; and 3) proceedings "related to" a case under title 11.  *In re Wood*, 825 F.2d at 92; 28 U.S.C. § 157(b).  A matter, such as AP 24-1024, the outcome of which could have a conceivable effect on the bankruptcy estate, is at least a "related to" proceeding that falls within the Bankruptcy Court's "referred" jurisdiction.  *Id.* at 93.

5

Even though AP 24-1024 falls within the Bankruptcy Court's jurisdiction, the nature of the proceeding affects the Bankruptcy Court's power in considering the issues presented. *Id.* at 94-95. If AP 24-1024 is a "core proceeding," the Bankruptcy Court has the power to fully adjudicate the matter and enter appropriate orders and judgments. *In re Wood*, 825 F.2d at 95; 28 U.S.C. § 157(b)(1). If it is a "non-core proceeding," however, the Bankruptcy Court has only limited power to hear the matter and issue recommended findings of fact and conclusions of law to the District Court which, after de novo review, shall enter the appropriate order and judgments. *In re Wood*, 825 F.2d at 95; 28 U.S.C. § 157(c)(1).

AP 24-1024 is plainly a non-core proceeding. All of the ten claims involve the adjudication of pre-petition disputes regarding state or federally created private rights that do not depend on the bankruptcy laws for their existence. *In re Wood*, 825 F.2d at 96. Thus, by statute, without the IDS Defendants' consent, the Bankruptcy Court cannot fully adjudicate AP 24-1024. 28 U.S.C. §157(c)(2). The Bankruptcy Court can only make recommendations to the District Court. Pursuant to Federal Rule of Bankruptcy Procedure 7008, the IDS Defendants do not consent to the entry of final orders or judgments by the Bankruptcy Court.

### III.    Withdrawal of AP 24-1024 from the Bankruptcy Court is mandatory due to the presence of RICO claims.

Plaintiffs have asserted federal RICO claims as count three of the FAC. FAC ¶¶ 152-159. RICO claims are more commonly adjudicated by the District Court which has put in place significant pleadings requirements when a party wishes to assert a RICO claim in this district. Per Local Uniform Civil Rule 83.8, in District Court, Plaintiffs would have been required to accompany the filing of their complaint with a detailed RICO Statement. L.U.Civ.R. 83.8(a). That RICO statement would have been required to include seventeen specific categories of information (a couple of which have no less than six subparts) that set forth "in detail and with specificity" "the

6

facts that the Plaintiff is relying upon to initiate [the] RICO complaint." L.U.Civ.R. 83.8(b). Plaintiffs would have been required to prepare the statement "in a form which uses both the numbers and letters" set forth in the rule. *Id.* These stringent, specific pleadings requirements are designed to provide any party charged with a RICO violation – a very serious charge - the specific factual basis for such charges. Plaintiffs did not file such a RICO statement. Instead, they included within the FAC six scant paragraphs they labeled "RICO Case Statement" which in no way complies with the District Court's rule. FAC ¶¶ 138-143. It is not implausible to suggest that Plaintiffs filed AP 24-1024 in the Bankruptcy Court, which has no similar pleadings rule, in an attempt to try to evade the District Court's stringent RICO pleadings requirements.

The District Court is required to withdraw the reference of AP 24-1024 from the Bankruptcy Court if resolution of the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The FAC is comprised of <u>only</u> non-bankruptcy law-based claims, and it cannot be disputed that RICO is a non-bankruptcy federal law that regulates activities affecting interstate commerce. *Astro Tel, Inc. v. Verizon Florida, LLC,* No. 8:11–mc–00059–T–33*,* 2011 WL 4551571, at *2 (M.D. Fla. Sept. 30, 2011).

To mandate withdrawal, the non-bankruptcy federal law claims (here, the RICO claims) must present substantial and material consideration of federal law rather than mere application of well-settled law. *Holbrook v. J.P. Morgan Chase Bank*, No. 3:18-CV-109-DPJ-FKB, 2018 WL 3213155, at *2 (S.D. Miss June 25, 2018). It is difficult to imagine how anyone could characterize the analysis of the federal RICO statute that will be necessary in AP 24-1024 as a "mere application of well-settled law." The application of the statute will be rendered infinitely more difficult by Plaintiffs' attempted evasion of the District Court's pleading requirements. It also bears emphasis

7

that RICO is, at its core, a criminal statute. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641, 647-48, (2008) (RICO provides private right of action for violation of "Act's criminal prohibitions"). The District Court has experience and expertise in handling criminal matters. The Bankruptcy Court does not.

Further, the RICO statute sets forth three categories of prohibited acts:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

28 U.S.C. § 1962. With nominal differentiation of the alleged predicate acts, Plaintiffs summarily assert that different combinations of defendants have violated different subsections, resulting in subsections (a), (b) and (c) *all* being violated by different groups of defendants. FAC ¶¶ 153-157.

8

This multi-faceted web of alleged RICO violations will result in a complex analysis of whether Plaintiffs have satisfied the various requirements of the federal RICO statute.

Finally, Plaintiffs have alleged an intricate "business consulting scheme" with what they call a "debt trap" component that they refer to as "long con." FAC ¶¶ 32-33. It takes Plaintiffs 105 paragraphs just to lay out the facts of a complex, multi-faceted conspiracy they say constitutes the multiple RICO violations by varying combinations of seven of the named defendants. FAC ¶¶ 32-147. Plaintiffs allege that defendant providers of business consulting services (and their individual owners) allegedly negotiated Revenue Purchase Agreements with defendant funders which plaintiffs say were really "Merchant Cash Advances" which are "disguised (usurious) loans." FAC ¶¶ 32-35, 39-47. The RICO allegations, in turn, appear to be premised upon defendants having taken actions to payoff, refinance and/or collect "unlawful debt." FAC ¶¶ 153-157.

The IDS Defendants have not found a single case in this Circuit interpreting whether such Revenue Purchase Agreements, which purport to purchase certain future receivables of Littco Metals, can be legally characterized as "loans" or whether payments under such agreements can be a predicate act that supports a RICO claim based on the collection of unlawful debt. It appears that these issues, even if properly pled, will be issues of first impression in this District and in the Fifth Circuit. They will not involve the application of "well-settled" non-bankruptcy federal law. As such, the District Court is required to withdraw the reference of AP 24-1024.

### IV.   Alternatively, AP 24-1024 should, in the District Court's discretion, be permissively withdrawn from the Bankruptcy Court for cause.

Alternatively, if the District Court does not believe withdrawal of the reference is mandated for AP 24-1024, the District Court may, in its discretion, withdraw the reference of AP 24-1204 "for cause." The District Court should do so here.

9

A determination of whether cause exists requires consideration of the following factors:

1) whether the claim/proceeding is core or non-core;

2) the most efficient use of judicial resources;

3) the length of potential delay and the cost to the parties of that delay;

4) whether withdrawal will promote uniformity of bankruptcy administration;

5) whether the party seeking withdrawal is engaging in forum shopping; and

6) other related factors.

*Green Tree Servicing v. Haynes*, No. 3:16-cv-551-WHB-JCG, 2016 WL 10935359, at *2 (S.D. Miss. Oct. 19, 2016). All of Plaintiffs' claims in AP 24-1024 are non-core. None of them invoke a substantive right provided under Title 11 or arise only in the context of bankruptcy. *Id.* Factor one weighs in favor of withdrawal.

Judicial economy would be served by withdrawing the reference of AP 24-1024 to allow the District Court, with its experience and expertise in criminal matters and RICO claims, address those claims. The same is true of the handling of the remaining Mississippi common law-based claims that "are of the type conventionally urged in the district court – where they would have been brought in the absence of the bankruptcy petitions...." *In re White*, 172 B.R. 841, 844 (S.D. Miss. 1994). The Bankruptcy Court has no special expertise in any of the legal bases of Plaintiffs' ten counts. And because the bankruptcy case was converted pretty quickly from a Chapter 11 proceeding (reorganization) to a Chapter 7 proceeding (liquidation), the Bankruptcy Court has not spent time, much less significant time, addressing the legal issues that AP 24-1024 presents. Those issues will be addressed for the first time in AP 24-1024. Moreover, with its limited jurisdiction, the Bankruptcy Court will only be able to make recommendations on these claims/issues to the

District Court which will have to consider them all again, de novo.  *In re Wood*, 825 F.2d at 95;
28 U.S.C. § 157(c)(1). Factor two weighs in favor of withdrawal.

There is no indication that allowing the District Court, rather than the Bankruptcy Court,
to adjudicate AP 24-1024 will result in any delay or additional cost to the parties. The adversary
proceeding is newly filed.  There is no issue regarding the uniformity of bankruptcy administration
because the claims asserted do not raise any core issues that pertain to bankruptcy administration.
Nor is there any indication that the IDS Defendants are forum shopping.  Factors three, four and
five either favor withdrawal or are, at worst, neutral in this instance.

Finally, in the category of "other" factors, the IDS Defendants have a right to a jury trial
on the legal claims asserted by Plaintiffs, if they so choose. With the exception of Count One (the
request for declaratory judgment, all of Plaintiffs' claims are legal claims which entitle defendants
to seek a trial by jury if they determine they want to do so.  U.S. Const. Amendment VII;  *In re
White*, 172 B.R. at 844. This "other" factor weighs in favor of withdrawal to the District Court so
that a jury trial remains a possibility.

Because factors 1, 2 and 6 weigh in favor of withdrawal, and factors 3, 4 and 5 either weigh
in favor of withdrawal or are neutral, the District Court should, in its discretion, withdraw the
reference of AP 24-1024 from the Bankruptcy Court

<u>Conclusion</u>

Plaintiffs seem to seek to thwart stringent RICO pleadings requirements by filing AP 24-
1024 in Bankruptcy Court.  The District Court should not allow Plaintiffs to do so.  This adversary
proceeding consists of only non-core matters and presents complex, novel issues regarding the
application and interpretation of the federal RICO statute, a non-bankruptcy, federal law.  As such
withdrawal of the reference of AP 24-1024 to the District Court is mandatory.  Alternatively, the

District Court should, in its discretion, withdraw the reference for cause, to promote judicial efficiency.

Respectfully submitted this 10th day of January 2025.

> Tyler Burgess, Tonia Etoh, International Development Services, Inc., International Services, Inc., Tavas LLC, Penhurst Capital, Inc., Tim Willits, Nathan Free, Jerold Weissberg, Robert Legon, Bruce Bush, Dale Johnston and James Peters
>
> By:    */s/ Stephanie M. Rippee*
> Jim F. Spencer, Jr. (MSB #7736)
> William F. Ray (MSB #4654)
> Stephanie M. Rippee (MSB #8998)
> Watkins & Eager PLLC
> P.O. Box 650
> Jackson, Mississippi 39205
> (601) 965-1900
> jspencer@watkinseager.com
> wray@watkinseager.com
> srippee@watkinseager.com
>
> Michel P. Connelly (*admitted pro hac vice*)
> Sagar P. Thakkar (*admitted pro hac vice*)
> Cory D. Anderson (*admitted pro hac vice*)
> ROCK FUSCO & CONNELLY, LLC
> 333 W. Wacker, Floor 19
> Chicago, Illinois 60606
> Telephone: (312) 494-1000
> Facsimile: (312) 494-1001
> mconnelly@rfclaw.com
> sthakkar@rfclaw.com
> canderson@rfclaw.com

OF COUNSEL:

**WATKINS & EAGER PLLC**
P.O. BOX 650
JACKSON, MISSISSIPPI 39205
(601) 965-1900

**ROCK FUSCO & CONNELLY, LLC**
333 W. Wacker, Floor 19
Chicago, Illinois 60606
Telephone: (312) 494-1000
Facsimile: (312) 494-1001

## CERTIFICATE OF SERVICE

I, Stephanie M. Rippee, do hereby certify that I have caused to be served the above and

foregoing pleading on all parties requesting notice by using the ECF filing system of the court.

This 10th day of January 2025.

*/s/ Stephanie M. Rippee*
Stephanie M. Rippee

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

In Re:  LITTCO Metals, LLC      Case No.:  23-10069-SDM
    Debtor(s)        Chapter 7
               Adversary Proceeding No.: 24-01024-SDM

---

JASON LITTRELL AND WILLIAM L.
FAVA, TRUSTEE FOR LITTCO METALS,
LLC d/b/a LITTCO, LLC, LITTCO METALS
EQUIPMENT LEASING, INC., AND
LITTCO METALS MANAGEMENT CO.       PLAINTIFFS

V.

TYLER BURGESS; TONIA ETOH;
INTERNATIONAL DEVELOPMENT
SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC;
PENHURST CAPITAL, INC.; TIM WILLITS;
NATHAN FREE; JEROLD WEISSBERG;
ROBERT LEGON; BRUCE BUSH; DALE
JOHNSTON; JAMES PETERS; BYZFUNDER
NY, LLC; NEWCO CAPITAL GROUP IV, LLC;
MEHANDI VAKIL; WISE VENTURE, LLC;
STEVEN MARKOWITZ, JR.; SAMSON, MCA,
LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS,
LLC; YAAKOV WINOGRAD; PROSPERUM
CAPITAL PARTNERS, LLC D/B/A ARSENAL
FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITIY DOES 1-5         DEFENDANTS

---

**MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION TO DISMISS
ADVERSARY PROCEEDING [49] AND MOTION TO WITHDRAW REFERENCE [47]
and TO CONTINUE HEARING**

   COME NOW, Plaintiffs, by and through counsel and file this Motion for Extension of

Time to Respond to the Motion to Dismiss Adversary Proceeding [49] and Motion to Withdraw

Reference [47], and to Continue the Hearing thereon and would state unto the Court as follows:

I.

On January 10, 2025, several defendants referring to themselves as the "IDS Defendants" filed two motions: Motion to Dismiss Adversary Proceeding [49] and Motion to Withdraw Reference [47].

II.

On January 10, 2025, the Court set a hearing on the instant motion for February 25, 2025, with a response date of January 31, 2025 and a reply date of February 14, 2025.

III.

Due to the complexity and significance of the motions filed, the plaintiffs respectfully request that the Court grant an extension of time until February 24, 2025 to respond to the motion. Counsel for the plaintiffs have conflicts over the next few weeks which would do not allow adequate time to respond to the motions.

IV.

In light of the extension of time, the plaintiffs further request that the Court continue the hearing on the above motions to a date after February 25, 2024.

V.

Counsel for the plaintiffs has consulted with counsel for the IDS Defendants and been advised that there is no objection to this extension of time and continuance.

WHEREFORE, PREMISES CONSIDERED, the plaintiffs respectfully request that the Court extend the plaintiffs' time to respond to the Motion to Dismiss Adversary Proceeding [49] and Motion to Withdraw Reference [47] to February 24, 2025 and continue the hearing on said motions currently set for February 25, 2025 to a later date. The plaintiffs request any further relief that the Court may find warranted in the premises.

2

DATED: January 16, 2025

Respectfully submitted,

JASON LITTRELL AND WILLIAM L. FAVA,
TRUSTEE FOR LITTCO METALS, LLC d/b/a LITTCO,
LLC, LITTCO METALS EQUIPMENT LEASING, INC.,
AND LITTCO METALS MANAGEMENT CO.

*/s/ Goodloe T. Lewis*
GOODLOE T. LEWIS, MSB #9889
LAWRENCE J. TUCKER, JR., MSB #100869
BRIAN A. CLARK, MSB #100736
Hickman, Goza & Spragins, PLLC
P.O. Drawer 668
Oxford, MS 38655
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
glewis@hickmanlaw.com
ltucker@hickmanlaw.com
bclark@hickmanlaw.com

3

**<u>CERTIFICATE OF SERVICE</u>**

I, Goodloe T. Lewis of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do hereby certify that I have, this date, filed the above with the Court and delivered a copy to all parties requesting notice by using the ECF filing system.

DATE: January 16, 2025

*/s/ Goodloe T. Lewis*
Goodloe T. Lewis

4



**SO ORDERED,**

Judge Selene D. Maddox

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

In Re:  LITTCO Metals, LLC
        Debtor(s)

Case No.:  23-10069-SDM
Chapter 7
Adversary Proceeding No.: 24-01024-SDM

---

JASON LITTRELL AND WILLIAM L.
FAVA, TRUSTEE FOR LITTCO METALS,
LLC d/b/a LITTCO, LLC, LITTCO METALS
EQUIPMENT LEASING, INC., AND
LITTCO METALS MANAGEMENT CO.

        PLAINTIFFS

V.

TYLER BURGESS; TONIA ETOH;
INTERNATIONAL DEVELOPMENT
SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC;
PENHURST CAPITAL, INC.; TIM WILLITS;
NATHAN FREE; JEROLD WEISSBERG;
ROBERT LEGON; BRUCE BUSH; DALE
JOHNSTON; JAMES PETERS; BYZFUNDER
NY, LLC; NEWCO CAPITAL GROUP IV, LLC;
MEHANDI VAKIL; WISE VENTURE, LLC;
STEVEN MARKOWITZ, JR.; SAMSON, MCA,
LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS,
LLC; YAAKOV WINOGRAD; PROSPERUM
CAPITAL PARTNERS, LLC D/B/A ARSENAL
FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITIY DOES 1-5

        DEFENDANTS

## ORDER GRANTING
## PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO RESPOND TO MOTION TO DISMISS ADVERSARY PROCEEDING [49] AND MOTION TO WITHDRAW REFERENCE [47] and TO CONTINUE HEARING

Before the Court is the Plaintiffs' Motion for Extension of Time to Respond to the Motion to Dismiss Adversary Proceeding [49] and Motion to Withdraw Reference [47], and to Continue the Hearing. After considering the motion and being advised that there is no objection to this extension of time and continuance, the Court is of the opinion that the motion is well taken and should be granted.

**IT IS THEREFORE ORDERED** that Plaintiffs are granted an extension of time until February 24, 2025 to respond to the subject motions, and that the Court will continue the hearing on the motions to a March 25, 2025 at 10:00 a.m. in Aberdeen. **(SDM)**

## ## End of Order ##

Submitted by,

*/s/ Goodloe T. Lewis*
GOODLOE T. LEWIS, MSB #9889
LAWRENCE J. TUCKER, JR., MSB #100869
BRIAN A. CLARK, MSB #100736
Hickman, Goza & Spragins, PLLC
P.O. Drawer 668
Oxford, MS 38655
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
glewis@hickmanlaw.com
ltucker@hickmanlaw.com
bclark@hickmanlaw.com

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

In Re:  LITTCO Metals, LLC                     Case No.:  23-10069-SDM
     Debtor(s)                              Chapter 7
                                          Adversary Proceeding No.: 24-01024-SDM

---

JASON LITTRELL AND WILLIAM L.
FAVA, TRUSTEE FOR LITTCO METALS,
LLC d/b/a LITTCO, LLC, LITTCO METALS
EQUIPMENT LEASING, INC., AND
LITTCO METALS MANAGEMENT CO.                                    PLAINTIFFS

V.

TYLER BURGESS; TONIA ETOH;
INTERNATIONAL DEVELOPMENT
SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC;
PENHURST CAPITAL, INC.; TIM WILLITS;
NATHAN FREE; JEROLD WEISSBERG;
ROBERT LEGON; BRUCE BUSH; DALE
JOHNSTON; JAMES PETERS; BYZFUNDER
NY, LLC; NEWCO CAPITAL GROUP IV, LLC;
MEHANDI VAKIL; WISE VENTURE, LLC;
STEVEN MARKOWITZ, JR.; SAMSON, MCA,
LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS,
LLC; YAAKOV WINOGRAD; PROSPERUM
CAPITAL PARTNERS, LLC D/B/A ARSENAL
FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITIY DOES 1-5                                            DEFENDANTS

## **PLAINTIFFS' RESPONSE TO MOTION TO WITHDRAW REFERENCE**

COME NOW, Plaintiffs, by and through counsel, and file this Response to Motion to

Withdraw Reference, stating unto the Court as follows:

1.     The debtor, Littco Metals, LLC ("Littco Metals"), and the non-debtor plaintiffs have filed

a First Amended Complaint ("FAC") in this adversary proceeding which alleges the defendants,

including the self-styled "IDS Defendants" that filed the instant Motion to Withdraw Reference,[1]

have engaged in egregious acts which directly and proximately bankrupted Littco Metals and

caused the non-debtor plaintiffs, including Jason Littrell, to suffer significant damages as well.

2.      In what may be one of the more remarkable omissions of fact yet seen in a legal pleading,

one of the movants herein, International Services, Inc. ("ISI"), failed to mention it filed a proof

of claim in the underlying bankruptcy proceeding seeking in excess of $1,000,000 from Littco

Metals—a debt central to the claims asserted by Littco Metals in this adversary proceeding, and

which is indicative of the conduct that drove Littco Metals into bankruptcy in the first place.

3.      In addition, two other defendants named in this adversary proceeding, Samson MCA,

LLC ("Samson"), and Byzfunder NY, LLC ("Byzfunder"), each filed proofs of claim which,

together, total more than $1,500,000. As with the proof of claim filed by ISI, these alleged debts

are central to the claims asserted by Littco Metals in this adversary proceeding, and are

indicative of the conduct that drove Littco Metals into bankruptcy in the first place.

4.      Littco Metals contends the alleged debts reflected in the proofs of claim filed by ISI,

Samson, and Byzfunder are not owed, were procured through fraud, and are usurious, illegal,

and/or void as a matter of law—which should suffice to defeat any contention to the effect that

this adversary proceeding does not consist of core claims and/or invoke a substantive right

provided under title 11 or which arises only in the context of a bankruptcy proceeding.

5.      Adversary proceedings centered on proofs of claim by creditors are characterized as "in

the nature of" counterclaims and form part of the bankruptcy court's core jurisdiction. Here, one

of the IDS Defendants filed a substantial proof of claim against the debtor. Should the district

court withdraw the reference to the bankruptcy court even though this is a core proceeding? The

---

[1] The IDS Defendants are Tyler Burgess, Tonya Etoh, International Development Services, Inc. ("IDS"), International Services, Inc. ("ISI"), TAVAS, LLC, Penhurst Capital, Inc., Tim Willits, Nathan Free, Jerrold Weissburg, Robert Legon, Bruce Bush, Dale Johnson, and James Peters.

answer, for all of the reasons set forth in the plaintiffs' supporting memorandum, is no. This

matter is properly before the bankruptcy court and should remain there until concluded.

6.      In further support of this response, the plaintiffs incorporate their memorandum and the

following exhibits:

a)  Bankruptcy Petition;

b)  Byzfunder NY, LLC Proof of Claim;

c)  Samson MCA, LLC Proof of Claim; and

d)  ISI Proof of Claim.

WHEREFORE, PREMISES CONSIDERED, the plaintiffs respectfully request that the

Court deny the IDS Defendants' Motion to Withdraw Reference, and grant the plaintiffs any

further relief the Court may find warranted in the premises, whether general or specific.

Respectfully submitted,

JASON LITTRELL AND WILLIAM L. FAVA,
TRUSTEE FOR LITTCO METALS, LLC d/b/a LITTCO,
LLC, LITTCO METALS EQUIPMENT LEASING, INC.,
AND LITTCO METALS MANAGEMENT CO.

*/s/ Goodloe T. Lewis*
GOODLOE T. LEWIS, MSB #9889
LAWRENCE J. TUCKER, JR., MSB #100869
BRIAN A. CLARK, MSB #100736
Hickman, Goza & Spragins, PLLC
P.O. Drawer 668
Oxford, MS 38655
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
glewis@hickmanlaw.com
ltucker@hickmanlaw.com
bclark@hickmanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Goodloe T. Lewis of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do

hereby certify that I have, this date, filed the above with the Court and delivered a copy to all

parties requesting notice by using the ECF filing system.

DATE: February 24, 2025

*/s/ Goodloe T. Lewis*
GOODLOE T. LEWIS

| Fill in this information to identify your case: |
| --- |

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF MISSISSIPPI

Case number *(if known)* _____    Chapter    **11**

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
| --- | --- | --- |
| 1. | Debtor's name | **LITTCO Metals, LLC** |
| 2. | All other names debtor used in the last 8 years<br>Include any assumed names, trade names and *doing business as* names | **DBA  LITTCO Metals**<br>**DBA  LITTCO Metals Equipment Leasing, Inc.**<br>**DBA  LITTCO Metals Management Co.** |
| 3. | Debtor's federal Employer Identification Number (EIN) | **83-2022399** |

4. Debtor's address

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| **6593 HWY 45 Alt. South**<br>**West Point, MS 39773**<br>Number, Street, City, State & ZIP Code | **P. O. Box 696**<br>**West Point, MS 39773**<br>P.O. Box, Number, Street, City, State & ZIP Code |
| **Clay**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |

| | | |
| --- | --- | --- |
| 5. | Debtor's website (URL) | **www.littcometals.com** |
| 6. | Type of debtor | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ |

Ex. A

Debtor    **LITTCO Metals, LLC**                                        Case number (*if known*) _____
      Name

---

**7.** **Describe debtor's business**

  A. *Check one:*

  ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

  ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

  ☐ Railroad (as defined in 11 U.S.C. § 101(44))

  ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

  ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

  ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

  ■ None of the above

  B. *Check all that apply*

  ☐ Tax-exempt entity (as described in 26 U.S.C. §501)

  ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

  ☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

  C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
     http://www.uscourts.gov/four-digit-national-association-naics-codes.
       **4233**

---

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply*:

  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ■ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

  ☐ A plan is being filed with this petition.

  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ | |
| District | _____ | When | _____ | Case number | _____ | |

---

Debtor    **LITTCO Metals, LLC**                                    Case number (*if known*)
_____
Name

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**    ☐ No

☑ Yes.

| List all cases. If more than 1, attach a separate list | Debtor | **Jason R. Littrell** | Relationship | **President of Company** |
|---|---|---|---|---|
| | District | When | Case number, if known | |

**11.** **Why is the case filed in *this district*?**    *Check all that apply:*

☑    Debtor has its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐    A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes.    Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

☐ What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency _____

Contact name _____

Phone _____

███ **Statistical and administrative information**

**13.** **Debtor's estimation of available funds**    .    *Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14.** **Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☑ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15.** **Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☑ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor    **LITTCO Metals, LLC**                                    Case number (*if known*) _____
      Name

**16.  Estimated liabilities**

☐ $0 - $50,000
☐  $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

■ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**Voluntary Petition for Non-Individuals Filing for Bankruptcy**

| Debtor | **LITTCO Metals, LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **January 10, 2023**
MM / DD / YYYY

**X** **/s/ Jason R. Littrell**                                 **Jason R. Littrell**
Signature of authorized representative of debtor            Printed name

Title   **President**

**18. Signature of attorney**

**X** **/s/ J. Walter Newman IV**                    Date **January 10, 2023**
Signature of attorney for debtor                          MM / DD / YYYY

**J. Walter Newman IV 3832**
Printed name

**Newman & Newman**
Firm name

**587 Highland Colony Parkway**
**Ridgeland, MS 39157**
Number, Street, City, State & ZIP Code

Contact phone   **601-948-0586**        Email address   **wnewman95@msn.com**

**3832 MS**
Bar number and State

# United States Bankruptcy Court
### Northern District of Mississippi

In re   **LITTCO Metals, LLC**

Case No.

Debtor(s)

Chapter   **11**

# VERIFICATION OF CREDITOR MATRIX

I, the President of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   **January 10, 2023**

**/s/ Jason R. Littrell**

**Jason R. Littrell/President**
Signer/Title

J. Walter Newman IV
Newman & Newman
587 Highland Colony Parkway
Ridgeland, MS 39157


LITTCO Metals, LLC
P. O. Box 696
West Point, MS 39773


Ace Bolt & Screw Co.
506 Daybrite Drive
Tupelo, MS 38801


Aflac
1932 Wynnton Road
Columbus, GA 31999-0797


Airgas
P. O. Box 734672
Dallas, TX 75373


Alabama Department of Revenue
50 North Ripley Street
Montgomery, AL 36130


Ariel Bouskila
Berkovitch & Bouskala, PLLC
1545 U.S. 202
Suite 101
Pomona, NY 10970


Arsenal Funding
8 West 36th Street
7th Floor
New York, NY 10018


Bank of Commerce
315 University Drive
Starkville, MS 39759


Bank of Commerce
P. O. Box 546
Greenwood, MS 38935

Bay Insulation of Georgia
6675 Corners Industrial Court
Suite C
Norcross, GA 30092


Bay Insulation of Tennessee Inc.
5445 E. Raines Road
Memphis, TN 38115


BBC Holdings LTD.
3813 Weymouth Woods Drive
Medina, OH 44256


Blue Cross Blue Shield
of Mississippi
3545 Lakeland Drive
Flowood, MS 39232


Bolt Company, LLC
5321 1st Street
Meridian, MS 39307


Build It Steel
105 Mildred Street
Gadsden, AL 35904


Builders Mutual Insurance
P. O. Box 900027
Raleigh, NC 27675


Byzfunder NY LLC
Berkovitch & Bouskila, PLLC
80 Broad Street,
Suite 3303
New York, NY 10004


C Spire Wireless
P. O. Box 519
Meadville, MS 39653-0519


Cannonball HNP
P. O. Box 532
Greensburg, IN 47240

City of West Point Tax Collector
P. O. Box 1117
West Point, MS 39773


City of West Point Water & Light Dept.
P. O. Box 1117
West Point, MS 39773-1117


Clay County Tax Assessor/Collector
P. O. Box 795
West Point, MS 39773


Compressed Air Technologies, Inc.
P. O. Box 180459
Richland, MS 39218


Credit One Bank
P. O. Box 60500
City of Industry, CA 91716-0500


Cumberland Sales Company
2804 Foster Avenue
Nashville, TN 37210


Dallas Fasteners
1825 Westpark Drive
Suite 200
Grand Prairie, TX 75050


Delta Bridge Fund
Samson Group
400 Rella Blvd.
Suite 165-101
Suffern, NY 10901


Delta Materials Handling Inc.
4676 Clark Road
Memphis, TN 38141-6719


Dodge Data & Analytics
300 American Metro Blvd.
Suite 185
Hamilton, NJ 08619-2371

Elite Steel & Supply
8216 North I-35
Temple, TX 76501


Fabricators Supply
P. O. Box 637
West Point, MS 39773


Farrell Calhoun Paint
P. O. Box 1000
Dept. 473
Memphis, TN 38148


FedEx
P. O. Box 660481
Dallas, TX 75266-0481


Florida Department of Revenue
2450 Shumard Oak Blvd.
Tallahassee, FL 32311


Freedom Metals LLC
18504 SW Hwy 19
Cross City, FL 32628


Georgia Department of Revenue
1800 Cebtury Blvd. NE
Atlanta, GA 30345


HiTouch Business Services
P. O. Box 930257
Atlanta, GA 31193-0257


HYG Financial Services Inc.
P. O. Box 77102
Minneapolis, MN 55480-7102


Industrial Fire Protection, Inc.
P. O. Box 8831
Columbus, MS 39705


Internal Revenue Service
P. O. Box 742562
Cincinnati, OH 45280-2562

Internal Revenue Service
P. O. Box 21126
Philadelphia, PA 19114


International Development Services, Inc.
7900 East Union Avenue
Suite 1100
Denver, CO 80237


Janus Iternational
135 Janus International Blvd.
Temple, GA 30179


Jason Littrell
1382 Battlefield Raod
Collinsville, MS 39325


Jason R. Littrell
1382 Battlefield Road
Collinsville, MS 39325


KHCL Logistics, LLC
Strato Pay, LLC
Lockbox #218
P. O. Box 1575
Minneapolis, MN 55480


Klutts Plumbing LLC
68 Brownlee Drive
Columbus, MS 39705


Koyote Trucking
P. O. Box 916
Pampa, TX 79066


Louisiana Department of Revenue
617 N 3rd Street
Baton Rouge, LA 70802


M&N Computers & Office Supply
16322 West Main Street
Louisville, MS 39339

Magnum Metals
P. O. Box 777
Nettleton, MS 38858


MBCI
P. O. Box 840326
Dallas, TX 75284-0326


Metal Building Software
5950 14th street South
Fargo, ND 58104-7619


Missisippi Department of Revenue
P. O. Box 5794
Meridian, MS 39302


Mississippi Department of Revenue
P. O. Box 23338
Jackson, MS 39225-3338


Mississippi Department of Revenue
Kimberly Williams
2631 McIngvale Road
Suite 116
Hernando, MS 38632


Mississippi Metal Mfg.
451 HWY 9 South
Pontotoc, MS 38863


MS Department of Employment Security
P. O. Box 1699
Jackson, MS 39215-1699


Nathan Free
IDS
7900 East Union Avenue
Suite 1100
Denver, CO 80237


Nexgen Crane & Rigging
P. O. Box 299
Hamilton, MS 39746

NFS Leasing, Inc.
900 Cummings Center
Suite 226-U
Beverly, MA 01915


Northeast Exterminating LLC
326 Highway 12
Starkville, MS 39759


Pennar Global Inc.
21 Waterway Avenue
Suite 300
The Woodlands, TX 77380


Phillips Hardware
P. O. Box 152
West Point, MS 39773


Quicken Steel LLC
188 Georgia Pacific Road
Claxton, GA 30417


R&M Tires Pros
117 Highway 12 West
Starkville, MS 39759


RJ Young Compnay
P. O. Box 306412
Nashville, TN 37230-6412


Robert Half
12400 Collections Center Drive
Chicago, IL 60693


Samson MCA LLC
Samson Funding
17 State Street
6th Floor, Suite 630
New York, NY 10004


Shelter Insurance
435 North Court Avenue
Louisville, MS 39339

Southern Automation & Controls, Inc.
P. O. Box 238
Sherman, MS 38869


ST Fastening
6357 Reynolds Road
Tyler, TX 75708


State Termite and Pest Control
P. O. Box 2274
Columbus, MS 39704


Suburban Propane
2413 Hwy 145 N
Columbus, MS 39705


Supertalk MS
6311 Ridgewood Road
Suite 200N
Jackson, MS 39211


Taylor Leasing & Rental
3690 North Church
Louisville, MS 39339


TEKLA
Trimble Solutions
1075 Big Shanty Road NW
Suite 175
Kennesaw, GA 30144


Tennessee Department of Revenue
500 Deaderick Street
Nashville, TN 37242


Texas Department of Revenue
Comptroller of Public Accounts
P. O. Box 149355
Austin, TX 78714-9355


The Lilly Company
P. O. Box 1000
Dept. 184
Memphis, TN 38148

Total Quality Logistics LLC
P. O. Box 634558
Cincinnati, OH 45263-4558


Truist Bank
P. O. Box 1847
Wilson, NC 27894


Uline
12575 Uline Drive
Pleasant Prairie, WI 53158


Unifirst
P. O. Box 650481
Dallas, TX 75265-0481


Unifirst First Aid Corp.
P. O. Box 650481
Dallas, TX 75265-0481


Unique Funding Solutions LLC
71 S. Central Avenue
Suite 200
Valley Stream, NY 11580


United States Attorney
900 Jefferson Avenue
Oxford, MS 38655


Yonatan Klestzick, Esq.
Lieberman and Klestzick, LLP
P. O. Box 356
Cedarhurst, NY 11516

# United States Bankruptcy Court
## Northern District of Mississippi

In re  <u>**LITTCO Metals, LLC**</u>                                                      Case No.
                                    Debtor(s)                              Chapter      <u>**11**</u>

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for  <u>**LITTCO Metals, LLC**</u>  in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

<u>**January 10, 2023**</u>                                    **/s/ J. Walter Newman IV**
Date                                                  **J. Walter Newman IV 3832**
                                                      Signature of Attorney or Litigant
                                                      Counsel for   **LITTCO Metals, LLC**
                                                      **Newman & Newman**
                                                      **587 Highland Colony Parkway**
                                                      **Ridgeland, MS 39157**
                                                      **601-948-0586**
                                                      **wnewman95@msn.com**

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

</td></tr>
</table>

| Debtor 1 | LITTCO Metals, LLC |
|---|---|
| Debtor 2 | |
| (Spouse, if filing) | |

United States Bankruptcy Court    **Northern District of Mississippi**

Case number:  **23−10069**

FILED

**U.S. Bankruptcy Court**
**Northern District of Mississippi**

1/18/2023

**Shallanda J. Clay, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Byzfunder NY LLC <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor    Berkovitch & Bouskila, PLLC |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |
| 3. **Where should notices and payments to the creditor be sent?** <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Byzfunder NY LLC <br> Name <br><br> Berkovitch & Bouskila, PLLC <br> 80 Broad Street, <br> Suite 3303 <br> New York, NY 10004 <br><br> Contact phone _____2127291477_____ <br><br> Contact email ____ari@bblawpllc.com____ <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _____ | **Where should payments to the creditor be sent?** (if different) <br><br> Name <br><br><br><br><br> Contact phone _____ <br><br> Contact email _____ |
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ <br> MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☐ No <br> ☑ Yes. Who made the earlier filing?    samson |

Official Form 410                         Proof of Claim                         page 1

Ex. B

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 214574.37 | **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Purchase of future receivables; judgment

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:    All assets see financinf statement

**Basis for perfection:**    UCC−1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ 214574.37

**Amount of the claim that is secured:**    $ 214574.37

**Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed)    9.00    %

☑ Fixed
☐ Variable

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410    Proof of Claim    page 2

68

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $_____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     1/18/2023
                     MM / DD / YYYY

/s/  ARIEL BOUSKILA

Signature

Print the name of the person who is completing and signing this claim:

Name     ARIEL BOUSKILA
         First name     Middle name     Last name

Title    Partner

Company  Berkovitch & Bouskila, PLLC
         Identify the corporate servicer as the company if the authorized agent is a servicer

Address  80 Broad St, Suite 3303
         Number   Street
         New York, NY 10004
         City   State   ZIP Code

Contact phone   2127291477          Email   ari@bblawpllc.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

In re:


Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals

                                               Case No. 23-10069

                                               Chapter 11

                       Debtors.

_____

## RIDER TO PROOF OF CLAIM

       BYZFUNDER NY LLC ("BYZ") submits this Proof of Claim against Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals (The "Debtor") for a claim in the amount not less than $214,574.37, including interest, fees, and costs and disbursements, for repayment of future receivables purchased by BYZ. On or around July 25, 2022, BYZ and the Debtor entered into a revenue purchase agreement (the "Agreement") pursuant to which BYZ purchased 3% of the total future accounts receivable of Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals and JASON RICHARD LITTRELL (the "Company Defendant" together with the Debtor "Obligated Parties"), up to the sum of $335,000.00 in exchange for an upfront purchase price of $250,000.00. The Debtor guaranteed the performance of the Merchant under the Agreement pursuant to a Guaranty of Performance (the "Guarantee") dated July 25, 2022. On or about January 9, 2023, Obligated Parties defaulted under the terms of the Agreement by failing to deliver receivables to BYZ while still conducting business operations. The Debtor also granted BYZ a security interest in its Accounts and accounts receivable, which security interest was perfected by the filing of a UCC Financing Statement (the "UCC"). Copies of the Agreement and UCC are attached hereto as Exhibit "A" and Exhibit "B".

       This Claim is filed to protect BYZ from forfeiture of any claims it may have. Filing of this Claim is not (a) a waiver or release of BYZ's rights, claims or defenses against any person, entity or property; (b) a waiver or release of BYZ's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Judge; (c) a consent by BYZ to the jurisdiction of this Court for any purpose other than with respect to this Claim; (d) an election of remedy; (e) a waiver or release of any rights which BYZ may have to a jury trial; or (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceedings which may be commenced in these cases against or otherwise involving BYZ, including without limitation, any adversary proceeding that was or may be commenced by any party or committee in this case.

**File Number: 20213699023A**
**Date Filed: 11/4/2021 12:53:52 PM**
**Michael Watson**
**Secretary of State**

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Corporation Service Company          (800)858-5294**

B. EMAIL CONTACT AT FILER (optional)
**FilingDept@CSCinfo.com**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Corporation Service Company**
**801 Adlai Stevenson Drive**
**Springfield, IL 62703**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | |
|---|---|---|---|
| Littco Metals, LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1216 E Industrial Access Rd | West Point | MS | 39773 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | |
|---|---|---|---|
| Littco, LLC | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1216 East Industrial Access Road | West Point | MS | 39773 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | |
|---|---|---|---|
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 2576 UCCSPREP@CSCINFO.COM | Springfield | IL | 62708 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

Type: All Equipment Including Proceeds and Products Type: All Equipment Including Proceeds and Products Type: All Inventory Including Proceeds and Products Type: All Inventory Including Proceeds and Products Type: All General Intangible(s) Including Proceeds and Products Type: All General Intangible(s) Including Proceeds and Products Type: All Chattel Paper Including Proceeds and Products Type: All Chattel Paper Including Proceeds and Products Type: All Account(s) Including Proceeds and Products Type: All Account(s) Including Proceeds and Products Type: Unknown All Assets Including Proceeds and Products Type: Unknown All Assets Including Proceeds and Products

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
**[221300044]**

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

## BYZFUNDER

### REVENUE PURCHASE AGREEMENT

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated  07/25/2022  between Byzfunder NY LLC ("**PURCHASER**") the Merchant(s) listed below ("**Merchant**") the Individual(s) listed below ("Guarantor")

### MERCHANT INFORMATION

| | |
|---|---|
| Merchant's Legal Name: | Littco Metals, LLC / Littco, LLC |
| D/B/A: | Littco Metals |

| | | | |
|---|---|---|---|
| State of Incorporation / Organization: | MS | Type of Entity: | Limited Liability Company |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Physical Address: | 1216 East Industrial Access Road | City: | West Point | State: | MS | Zip: | 39773 | Business Phone: | 662-499-2801 |

| | | | | | |
|---|---|---|---|---|---|
| Guarantor(s) Name: | Jason Richard Littrell | Cellphone Number: | 6623129088 | Email Address: | jason@littcometalbuildings.com |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mailing  Address: | PO Box 696 | City: | West Point | State: | MS | Zip: | 39773 |

| | | | | | |
|---|---|---|---|---|---|
| **Purchase Price:** | $250,000.00 | **Purchased Percent:** | 3% | **Purchased Amount:** | $335,000.00 |

| | | | | |
|---|---|---|---|---|
| **Payment Frequency:** | Weekly | **Remittance:** | $8,815.79 | |

In consideration of payment by PURCHASER to Merchant of the Purchase Price set forth above, Merchant hereby sells, assigns and transfers to PURCHASER (making PURCHASER the absolute owner) the Purchased Percentage of all of Merchant's payments, receipts, settlements and funds paid to or received by or for the account of Merchant from time to time on and after the date hereof in payment or settlement of Merchant's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the Purchased Amount has been delivered by or on behalf of Merchant to PURCHASER.

**Merchant is selling a portion of a future revenue stream to PURCHASER at a discount, and is not borrowing money from PURCHASER, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by PURCHASER. The Remittance is a good faith estimate of PURCHASER's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement.** PURCHASER is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and PURCHASER assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give PURCHASER a reasonable and fair opportunity to receive the benefit of its bargain. PURCHASER acknowledges that it may never receive the Purchased Amount in the event that the Merchant does not generate sufficient revenue. Merchant and Guarantor(s) are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

PURCHASER will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, PURCHASER (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as PURCHASER receives payment in full of the Purchased Amount. Merchant hereby authorizes PURCHASER to ACH debit the agreed Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. Merchant agrees not to make or cause debits to the Account (other than in favor of PURCHASER) at any time that would cause the balance therein on any business day to be insufficient to fund payment in full of the agreed Remittance. The Account may not be used for any personal, family or household purposes.  Merchant will provide PURCHASER with all required access codes and monthly bank statements regarding the Account so that PURCHASER may monitor the Account. PURCHASER payment of the Purchase Price shall be deemed the acceptance and performance by PURCHASER of this Agreement. Merchant understands that it is responsible for ensuring that the agreed Remittance to be debited by PURCHASER remains in the Account and will be held responsible for any fees incurred by PURCHASER resulting from a rejected ACH attempt or an Event of Default. PURCHASER is not responsible for any overdrafts or rejected transactions that may result from PURCHASER's ACH debiting the agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between PURCHASER and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

| | |
|---|---|
| | Jason Richard Littrell, Member |
| **FOR THE MERCHANT (#1)** By: | _Jason R. Littrell_ |
| | (Print Name and Title) (Signature) |
| | |
| **FOR THE MERCHANT (#2)** By: | |
| | (Print Name and Title) (Signature) |
| | Jason Richard Littrell, Member |
| **BY GUARANTOR(S) (#1)** By: | _Jason R. Littrell_ |
| | (Print Name and Title) (Signature) |
| | |
| **BY GUARANTOR(S) (#2)** By: | |
| | (Print Name and Title) (Signature) |

| | | | |
|---|---|---|---|
| Initial(s): | _JRL_ | _JRL_ | |
| | Merchant | Guarantor #1 | Guarantor #2 |

## BYZFUNDER

**MERCHANT AGREEMENT TERMS AND CONDITIONS**

**1    TERMS OF ENROLLMENT IN PROGRAM**

**1.1    Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to PURCHASER with a Bank acceptable to PURCHASER to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to PURCHASER with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide PURCHASER and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes PURCHASER and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to PURCHASER for the receipts as specified herein and to pay such amounts to PURCHASER. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by PURCHASER or not. This additional authorization is not a waiver of PURCHASER's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which PURCHASER did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of PURCHASER.

**1.2    Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by PURCHASER as per the terms of this Agreement.

**1.3    Reconciliation.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a retroactive reconciliation of the total Remittance Amount. All requests hereunder must be in writing to **reconciliations@byzfunder.com**. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. PURCHASER retains the right the request additional reasonable documentation including without limitation bank login or access to view Merchant's accounts using third party software, and Merchant's refusal to provide access shall be a breach of this Agreement and PURCHASER shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by PURCHASER within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by PURCHASER shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with PURCHASER's right and ability to debit Merchant's Account while the request is pending or to unilaterally modify the Remittance Amount, in any method other than the ones listed in this Agreement.

**1.4    Adjustments to the Remittance.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice to PURCHASER to request a decrease in the Remittance, should they experience a decrease in its Future Receipts. All requests hereunder must be in writing to **reconciliations@byzfunder.com** and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. PURCHASER retains the right the request additional reasonable documentation including without limitation bank login or 3rd party software access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and PURCHASER shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Merchant shall provide PURCHASER with viewing access to their bank account as well as all information reasonably requested by PURCHASER to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.5    Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any authorizations, bank or financial statements, tax returns, etc., as PURCHASER requests in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. PURCHASER is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6    Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide PURCHASER with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for continuous purposes. Merchant shall provide PURCHASER with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from PURCHASER.

**1.7    Indemnification.** Merchant and Guarantor(s) hereby jointly and severally indemnify and hold harmless PURCHASER and each Processor, their respective officers, directors, agents and representatives, and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by any such indemnitee as a direct or indirect result of (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by indemnitee in reliance upon any fraudulent, misleading or deceptive information or instructions provided by PURCHASER.

**1.8    No Liability.** In no event will PURCHASER be liable for any claims asserted by Merchant or Guarantor(s) under any legal or equitable theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantor(s) shall be jointly liable for all of PURCHASER's attorney's fees and expenses resulting therefrom.

**1.9    Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10    Sale of Receipts.** Merchant and PURCHASER agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Merchant acknowledges that PURCHASER's share of Receipts collected are being held by Merchant in trust and are the sole property of PURCHASER until they are remitted to PURCHASER. Payments made to PURCHASER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. By this Agreement, Merchant transfers to PURCHASER full and complete ownership of the Purchased Amount and Merchant retains no legal or equitable interest therein.  PURCHASER hereby appoints Merchant, and Merchant accepts appointment, as servicer for and on behalf of PURCHASER for the purpose of collecting and delivering Receipts to PURCHASER as required by this Agreement until PURCHASER has received the Receipts Purchased Amount, and Merchant agrees that all such Receipts shall be received and held in trust for the benefit of PURCHASER for purposes of carrying out the terms of this Agreement.  Merchant agrees that it will treat the amounts received and the Purchased Receipts delivered to PURCHASER under this Agreement in a manner consistent with a sale in its accounting records and tax returns.  Merchant agrees that PURCHASER is entitled to audit Merchant's accounting records upon reasonable notice in order to verify compliance.  Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts.  In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder. It being specifically intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result, thereof, PURCHASER knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11    Power of Attorney.** Merchant irrevocably appoints PURCHASER and its agents and representatives, as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

**1.12    Protections against Default.** The following Protections 1 through 8 may be invoked by PURCHASER immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PURCHASER electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to PURCHASER; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts or ceases the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of PURCHASER,

Initial(s):    _J R L_ _____    _J R L_ _____    _____
                Merchant                Guarantor #1              Guarantor #2

**BYZFUNDER**

2

73

Case 24-11204-SDM Doc 89-2 Filed 02/24/25 Page 5 of 16
Case 1:24-cv-00025-SA-DAS Doc #: 21-5 Filed: 02/25/25 71 of 118 PageID #: 74
Exhibit B - Byzfunder Proof of Claim - Page 5 of 16

and (ii) the written agreement of any PURCHASER relating to the assumption of any of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide PURCHASER with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from PURCHASER, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to PURCHASER at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including attorney's fees and costs of collection in the amount of 30% of the Purchased Amount then outstanding due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** PURCHASER may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** PURCHASER may enforce its security interest in the Collateral including sending demand letters to account debtors and credit card processors.

**Protection 4.** PURCHASER may exercise any and all rights and remedies of a secured party under Uniform Commercial Code Article 9

**Protection 5.** PURCHASER may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if PURCHASER recovers a Judgment against Merchant, Merchant shall be liable for all of PURCHASER's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 6.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to PURCHASER. Upon breach of any provision in this Agreement, PURCHASER may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to PURCHASER.

**Protection 7.** PURCHASER may debit Merchant's depository accounts wherever situated in such amounts as determined by PURCHASER in its sole discretion for purposes of collecting funds for application to the unrealized Purchased Amount and other amounts owed by Merchant to PURCHASER by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to PURCHASER.

**1.13 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor(s), in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's and each Guarantor(s)'s credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor(s) hereby and each waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i)investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.14 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documents (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles PURCHASER to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.15 Publicity.** Merchant and each of Merchant's Owners and all Guarantor(s) hereto all hereby authorizes PURCHASER to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.16 D/B/A's.** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2 REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Merchant's and Guarantor(s)' bank and financial statements, copies of which have been furnished to PURCHASER, and future statements which will be furnished hereafter at the discretion of PURCHASER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantor(s) have a continuing, affirmative obligation to advise PURCHASER of any material adverse change in their financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant and Guarantor(s) shall provide them to PURCHASER within five business days after request from PURCHASER. Merchant's or Guarantor(s)' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER, nor shall Merchant change any of its places of business without prior written consent by PURCHASER.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8 Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection pursuant to the United States Bankruptcy Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts and all collateral in which PURCHASER has been granted a security interest under the Security Agreement, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever other than in favor of PURCHASER or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.11 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12 Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13 Good Faith.** Merchant and Guarantor(s) hereby affirm that Merchant is receiving the Purchase Price and selling PURCHASER the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business

**3 EVENTS OF DEFAULT AND REMEDIES**

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Merchant or Guarantor(s) shall violate any term or covenant in this Agreement;

(b) Any representation or warranty by Merchant or Guarantor(s) in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c) the sending of notice of termination by Merchant or verbally notifying PURCHASER of its intent to breach this Agreement;

Initial(s):  _JRL_  _JRL_  _____

Merchant          Guarantor #1          Guarantor #2

**BYZFUNDER**

3

(d)   the Merchant fails to give PURCHASER written confirmation evidencing the Remittance, and in the event such that the ACH of the Remittance amount will not be honored by Merchant's bank, the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(e)   Merchant fails to provide its bank statements, and/or month to date bank activity, and/or accounts receivable reports, and/or bank login information within two (2) business days of a request by PURCHASER,

(f)   Merchant shall voluntarily transfer or sell all or substantially all of its assets;

(g)   Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)   Merchant shall use multiple depository accounts without the prior written consent of PURCHASER or takes any other action that intentionally interferes with or prevents PURCHASER from receiving the Purchased Amount in accordance with the terms of this Agreement;

(i)   Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)   Merchant shall change its depositing account without the prior written consent of PURCHASER; or

(k)   Merchant shall close its depositing account used for ACH debits without the prior written consent of PURCHASER

(l)   Merchant's bank returns a code other than NSF cutting PURCHASER from its collections

(m)   Merchant or any Owner/Guarantor(s), directly or indirectly, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, which operates a business similar to or competitive with that of Merchant;

(n)   Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

**3.2**   **Limited Personal Guaranty** Upon the occurrence of an Event of Default, PURCHASER will enforce its rights against the Guarantor(s) of this transaction. Said Guarantor(s) will be jointly and severally liable to PURCHASER for all of PURCHASER's losses and damages, in addition to all costs and expenses and legal fees associated with such enforcement.

**3.3**   **Remedies.** Upon the occurrence of an Event of Default occurs and is not waived pursuant to Section 4.4. hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing an action for all amounts due, and enforcing the Security Agreement contained herein. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4**   **Attorney's Fees.** Upon the occurrence of an Event of Default, and Purchaser retains an attorney or law firm to enforce this Agreement, Merchant and Guarantor(s) agree that a fee equal to 30% of the Remaining Balance (purchased amount less amount remitted by Merchant) ("Attorney's Fees") shall be immediately assessed Merchant and Guarantor(s) agree that the calculation for Attorney's Fees is reasonable.

**3.5**   **Costs.** Merchant shall pay to PURCHASER all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of PURCHASER's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.6**   **Required Notifications.** Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4**   **MISCELLANEOUS**
**4.1**   **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

**4.2**   **Assignment.** PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3**   **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to PURCHASER shall become effective only upon receipt by PURCHASER. Notices to Merchant shall become effective three days after mailing.

**4.4**   **Waiver Remedies.** No failure on the part of PURCHASER to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5**   **Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums attachments, exhibits, and other documents relating to this Agreement in any way, shall be binding upon and inure to the benefit of Merchant and Guarantor(s) on the one hand, and PURCHASER and their respective successors and assigns, except that Merchant and Guarantor(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). All Parties and signatories to this Agreement, including but not limited to, the Merchant and Guarantor(s) agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant and Guarantor(s) waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor(s) hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by PURCHASER by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

**4.6**   **Survival of Representation,** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7**   **Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8**   **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9**   **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant, Guarantor(s) and Corporate Guarantor(s) and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10**   **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND   ONLY AFTER EXTENSIVE CONSIDERATION OF THE   RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11**   **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS OR REPRESENTATIVE ACTION WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12**   **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

Initials(s):   *JRL*   *JRL*   _____

Merchant   Guarantor #1   Guarantor #2

BYZFUNDER

4

**SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE**

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PEFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

| Merchant's Legal Name: | Littco Metals, LLC / Littco, LLC | | | | | |
|---|---|---|---|---|---|---|
| D/B/A: | Littco Metals | | | Federal ID#: | 83-0466275 | |
| Physical Address: | 1216 East Industrial Access Road | City: | West Point | State: | MS | Zip: 39773 |

**SECURITY AGREEMENT**

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. To secure Merchant's obligations under the Revenue Purchase Agreement to make available or deliver Purchased Amount to PURCHASER and PURCHASER's right to realize the Purchased Amount, as and to the extent required by the terms of the Revenue Purchase Agreement, and performance of and compliance by Merchant with its other undertakings and agreements herein, Merchant and Guarantor(s) grants to PURCHASER a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to PURCHASER under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to PURCHASER upon request to secure Merchant's obligations under this Agreement. These security interests and liens will secure all of PURCHASER's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, PURCHASER or an affiliate of PURCHASER is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

In the event Merchant, any of its officers or directors or any Owner/Guarantor(s), during the term of the Revenue Purchase Agreement or while Merchant remains liable to PURCHASER for any obligations under the Revenue Purchase Agreement, directly or indirectly, including acting by, through or in conjunction with any other person, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, whether corporate, partnership, limited liability company or otherwise, which operates a business similar to or competitive with that of Merchant, such entity shall be deemed to have expressly assumed the obligations due PURCHASER under the Revenue Purchase Agreement. With respect to any such entity, PURCHASER shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity as debtor, an initial UCC financing Statement and to have it filed with any and all appropriate UCC filing offices. PURCHASER shall be held harmless by Merchant and each Owner/Guarantor(s) and be relieved of any liability as a result of any such authentication and filing of any such Financing Statement or the resulting perfection of its ownership rights or security interests in such entity's assets. PURCHASER shall have the right to notify such entity's payors or account debtor (as defined by the UCC) of PURCHASER's rights, including without limitation, PURCHASER's right to collect all accounts, and to notify any payment card processor or creditor of such entity that PURCHASER has such rights in such entity's assets. Merchant also agrees that, at the PURCHASER's discretion, PURCHASER may choose to amend any existing financing statement to include any such newly formed entity as debtor.

This security interest may be exercised by PURCHASER without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. PURCHASER shall have the right to notify account debtors at any time.  Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, PURCHASER has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, PURCHASER will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from PURCHASER written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor(s) (s) agree(s) that this is a contract of recoupment and PURCHASER is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by PURCHASER. Merchant and Guarantor(s) agree(s) to execute and deliver to PURCHASER such instruments and documents PURCHASER may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. PURCHASER is authorized to execute all such instruments and documents in Merchant's and Guarantor's name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to PURCHASER under any other agreement between Merchant or Guarantor(s) and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's security interest. Merchant and Guarantor(s) shall be liable for, and PURCHASER may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to PURCHASER, whether by acceleration or otherwise.

**GUARANTY OF PERFORMANCE**

As an additional inducement for PURCHASER to enter into the Revenue Purchase Agreement, the undersigned Guarantor(s) hereby provides PURCHASER with this Guaranty. Guarantor(s) will not be personally liable for any amount due under the Revenue Purchase Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of the Revenue Purchase Agreement. Each Guarantor(s) shall be jointly and severally liable for all amounts owed to PURCHASER in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement including the Merchant's full and timely delivery of the Purchased Amount pursuant to (and limited by) the Revenue Purchase Agreement, in each case as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor(s)'s obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor(s) Waivers.** In the event of a breach of the above, PURCHASER may seek recovery from Guarantor(s) for all of PURCHASER's losses and damages by enforcement of PURCHASER's rights under this Agreement without first seeking to obtain payment from Merchant, any other Guarantor(s), or any Collateral or Additional Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty. In addition, Section 4.5, 4.10 and 4.11 are expressly reiterated in the Security Agreement and Guaranty herein. PURCHASER is not required to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any

Initial(s): _J R L_   _J R L_   _____

Merchant   Guarantor #1   Guarantor #2

BYZFUNDER

5

amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) PURCHASER's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to PURCHASER. In addition, PURCHASER may take any of the following actions without releasing Guarantor(s) from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to PURCHASER; (ii) release Merchant from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor(s) to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to PURCHASER under the Merchant Agreement and this Agreement are paid in full, Guarantor(s) shall not seek reimbursement from Merchant or any other Guarantor(s) for any amounts paid by it under this Agreement. Guarantor(s) permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other Guarantor(s), or any collateral provided by Merchant or any other Guarantor(s), for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by Merchant or any other Guarantor(s) of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor(s)'s obligations under this Agreement shall include that amount.

Guarantor(s) Acknowledgement. Guarantor(s) acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

This Security Agreement and Guaranty and Guaranty of Performance shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Purchaser so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant, Guarantor and Corporate Guarantors waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum.

**The Merchant, Guarantor(s) and Corporate Guarantor(s) acknowledge that they have read Paragraph 4.5 of this Agreement in its entirety and understand that they are waiving their right to Service of Process by traditional manners and will accept process of any Summons and Complaint or other legal process by certified mail return receipt requested to the Mailing Address on Page 1 of this Agreement.**

**FOR ALL MERCHANT(S) (#1) By:** _____  _____

Jason Richard Littrell, Member                                              *Jason R. Littrell*

(Print Name and Title)                                     (Signature)

_____

**FOR ALL MERCHANT(S) (#2) By:** _____  _____

(Print Name and Title)                                     (Signature)

SSN# _____

**GUARANTOR(S) (#1) By:** _____  _____

Jason Richard Littrell, Member                                              *Jason R. Littrell*

(Print Name and Title)                                     (Signature)

_____

**GUARANTOR(S) (#2) By:** _____  _____

(Print Name and Title)                                     (Signature)

SSN# _____

Initial(s): ___ *JRL* ___     ___ *JRL* ___     _____

Merchant          Guarantor #1          Guarantor #2

**BYZFUNDER**

6

77

**APPENDIX A - THE FEE STRUCTURE:**

A.  Administrative Fee - $7,500.00 to be deducted from the Purchase Price prior to funding.

B.  Processing Fee - $175.00  for the setup and maintenance of the account to be deducted from the Purchase Price prior to funding.

C.  NSF Fee (Standard) - $50.00 (each)

D.  Rejected ACH / Blocked ACH / Default Fee - $2,500.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E.  Bank Change Fee - $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F.  Wire Fee - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

**FOR THE MERCHANT(S) (#1)** By: _____          _____

Jason Richard Littrell, Member

(Print Name and Title)                                                                (Signature)


**FOR THE MERCHANT(S) (#2)** By: _____          _____

(Print Name and Title)                                                                (Signature)


Initial(s): _____          _____          _____

Merchant                          Guarantor #1                   Guarantor #2

BYZFUNDER

7

AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

| Merchant: | Jason Richard Littrell |
| --- | --- |
| | (Merchant's Legal Name) |

Merchant Agreement: Merchant Agreement between Purchaser and Merchant, dated as of _07/25/2022_

**Designated Checking Account:**

| Bank Name: | BANK OF COMMERCE | Branch: | |
| --- | --- | --- | --- |
| Tax ID: | 83-0466275 | | |
| ABA: Routing: | 084200981 | DDA: Account: | 100008879 |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes Purchaser to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes Purchaser to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $8,815.79

(Or) Percentage of each Banking Deposit: 3%

On the Following Days: weekly

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that Purchaser may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Purchaser to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS.** Purchaser is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until Purchaser has received written notification from Merchant at the address set forth below at least 5 banking days' prior of its termination to afford Purchaser a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

| Merchant: | Jason Richard Littrell | Date: | 25th day of July 2022 |
| --- | --- | --- | --- |
| | (Merchant's Legal Name) | | (Month) (Day) (Year) |

| Title: | Member |
| --- | --- |
| | (Title) |

X: _Jason R. Littrell_
(Signature)

| Name: | Jason Richard Littrell |
| --- | --- |
| | (Print Name) |

BYZFUNDER

Initial(s): _JRL_ _JRL_ _____
Merchant          Guarantor #1      Guarantor #2

8

79

**WAIVER OF PERSONAL SERVICE OF PROCESS**

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between Byzfunder NY LLC("Purchaser") and   Littco Metals, LLC / Littco, LLC ("Merchant") and  Jason Richard Littrell ("Guarantor") (collectively the "Parties") dated 07/25/2022.

1.  **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2.  **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice.  Guarantor further agrees to waive any objection to the absence of formal service of process.

3.  MERCHANT HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT jason@littcometalbuildings.com OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

4.  GUARANTOR HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT jason@littcometalbuildings.com OR BY UNITED STATES POSTAL SERVICE AT THE ADDRESS LISTED ON THE CONTRACT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

5.  Merchant or Guarantor shall notify Seller of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.

6.  This Addendum shall supersede any notice requirements in the Contract with respect to service of process.

FOR THE MERCHANT By: _____ Jason Richard Littrell, Member _____    _Jason R. Littrell_
(Print Name and Title)                    (Signature)
DATE: **07/25/2022**

BY GUARANTOR By: _____ Jason Richard Littrell, Member _____    _Jason R. Littrell_
(Print Name and Title)                    (Signature)
DATE: **07/25/2022**

Initial(s): _JRL_        _JRL_        _____
Merchant        Guarantor #1        Guarantor #2

BYZFUNDER

9

80

**EARLY REPAYMENT OF PURCHASED AMOUNT ADDENDUM**

This is an addendum to the Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated  07/25/2022, by and between Byzfunder NY LLC ("Purchaser") Littco Metals, LLC / Littco, LLC ("Merchant") and Jason Richard Littrell ("Guarantor").

• Purchaser agrees to discount the Purchased Amount indicated on page 1 of the agreement as follows:

| EARLY PAYMENT DATE | TOTAL PURCHASED AMOUNT |
|---|---|
| 0-30 CALENDAR DAYS AFTER FUNDING DATE | $297,500.00 |
| 31-60 CALENDAR DAYS AFTER FUNDING DATE | $310,000.00 |
| 61-90 CALENDAR DAYS AFTER FUNDING DATE | $322,500.00 |

• Payoff must originate from the business checking account on file and cannot be paid via a third party.

• If an "Event of Default" occurs under second 3.1 of the agreement than this discounted purchased amount shall be rendered null and void and the seller shall be responsible for the full purchased amount as shown on page 1 of the "agreement".

**FOR THE MERCHANT** By: _____
Jason Richard Littrell, Member
(Print Name and Title)

_Jason R. Littrell_
(Signature)

**DATE:** 07/25/2022

**BY GUARANTOR** By: _____
Jason Richard Littrell, Member
(Print Name and Title)

_Jason R. Littrell_
(Signature)

**DATE:** 07/25/2022

Initial(s): _JRL_         _JRL_         _____
Merchant        Guarantor #1        Guarantor #2

BYZFUNDER

10

Case 24-01024-CMD Doc 39-2 Filed 02/24/25 Entered 02/24/25 18:46:35 Desc
Case 1:25-cv-00025-CHH-BAS Doc #21-1 Filed: 02/25/25 22 of 118 Page ID #: 62
Exhibit B - Byzfunder Proof of Claim    Page 16 of 16



## Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | ByzFunder - Littco Metals -  07.25.2022 |
| **Document created:** | 07/25/2022 20:45:26 |
| **Document pages:** | 10 |
| **Document ID:** | f960240c0d66489f8def0aeba836557ea55497af |
| **Document Sent:** | 07/25/2022 20:45:28 UTC |
| **Document Status:** | Signed |
| | 07/25/2022 21:04:38UTC |

| | |
|---|---|
| **Sender:** | byzfunder@byzfunder.com |
| **Signers:** | jason@littcometalbuildings.com |
| **CC:** | j.maltz@byzfunder.com |

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| LendSaas ByzFunder App | Uploaded the Document | byzfunder@byzfunder.com | 07/25/2022 20:45:26 pm UTC | | 104.131.86.64 |
| LendSaas ByzFunder App | Document Saved | byzfunder@byzfunder.com | 07/25/2022 20:45:27 pm UTC | | 104.131.86.64 |
| LendSaas ByzFunder App | Invite Sent to: jason@littcometalbuildings.com | byzfunder@byzfunder.com | 07/25/2022 20:45:28 pm UTC | | 104.131.86.64 |
| LendSaas ByzFunder App | Document Downloaded | byzfunder@byzfunder.com | 07/25/2022 20:45:31 pm UTC | | 104.131.86.64 |
| SignNow Web Application | Viewed the Document | jason@littcometalbuildings.com | 07/25/2022 21:03:20 pm UTC | 07/25/2022 21:03:18 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:37 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:37 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:37 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:37 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:37 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Document Saved | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Document Saved | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 07/25/2022 21:04:38 pm UTC | 07/25/2022 21:04:35 pm UTC | 50.86.173.194 |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor 1   LITTCO Metals, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Northern District of Mississippi**

Case number:  **23−10069**

FILED

**U.S. Bankruptcy Court**
**Northern District of Mississippi**

1/18/2023

**Shallanda J. Clay, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1.Who is the current creditor?**

Samson MCA LLC

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor     Berkovitch & Bouskila, PLLC

**2.Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3.Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Samson MCA LLC

Name

Samson Funding
17 State Street
6th Floor, Suite 630
New York, NY 10004

Contact phone          2127291477

Contact email          ari@bblawpllc.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

**4.Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)          Filed on

MM / DD / YYYY

**5.Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Ex. C

| | |
|---|---|
| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6.** **Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** **How much is the claim?**
$ 1312963.60

**Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

Purchase of future receivables; judgment

**9.** **Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.
**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☑ Other. Describe:   All assets see financing statement

**Basis for perfection:**   UCC–1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ 1312963.60

**Amount of the claim that is secured:**   $ 1312963.60

**Amount of the claim that is unsecured:**   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate** (when case was filed)   9.00   %

☑ Fixed
☐ Variable

**10.** **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11.** **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/18/2023

MM / DD / YYYY

/s/  ARIEL BOUSKILA

Signature

Print the name of the person who is completing and signing this claim:

Name    ARIEL BOUSKILA

First name    Middle name    Last name

Title    Partner

Company    Berkovitch & Bouskila, PLLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    80 Broad St, Suite 3303

Number   Street
New York, NY 10004

City   State   ZIP Code

Contact phone    2127291477    Email    ari@bblawpllc.com

Official Form 410 Proof of Claim page 3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

In re:


Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals

                                                Case No. 23-10069

                                                Chapter 11

                          Debtors.

## RIDER TO PROOF OF CLAIM

        SAMSON MCA LLC ("SML") submits this Proof of Claim against Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals (The "Debtor") for a claim in the amount not less than $1,312,963.60, including interest, fees, and costs and disbursements, for repayment of future receivables purchased by SML. On or around June 9, 2022, SML and the Debtor entered into a revenue purchase agreement (the "Agreement") pursuant to which SML purchased 25% of the total future accounts receivable of Littco Metals, LLC ; Littco, LLC D/B/A Littco Metals and JASON RICHARD LITTRELL (the "Company Defendant" together with the Debtor "Obligated Parties"), up to the sum of $1,807,000.00 in exchange for an upfront purchase price of $1,300,000.00.  The Debtor guaranteed the performance of the Merchant under the Agreement pursuant to a Guaranty of Performance (the "Guarantee") dated June 9, 2022.  On or about December 29, 2022, Obligated Parties defaulted under the terms of the Agreement by failing to deliver receivables to SML while still conducting business operations. The Debtor also granted SML a security interest in its Accounts and accounts receivable, which security interest was perfected by the filing of a UCC Financing Statement (the "UCC").  Copies of the Agreement and UCC are attached hereto as Exhibit "A" and Exhibit "B".

        This Claim is filed to protect SML from forfeiture of any claims it may have.  Filing of this Claim is not (a) a waiver or release of SML's rights, claims or defenses against any person, entity or property; (b) a waiver or release of SML's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Judge; (c) a consent by SML to the jurisdiction of this Court for any purpose other than with respect to this Claim; (d) an election of remedy; (e) a waiver or release of any rights which SML may have to a jury trial; or (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceedings which may be commenced in these cases against or otherwise involving SML, including without limitation, any adversary proceeding that was or may be commenced by any party or committee in this case.

220236019

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

File Number: 20223874790A
Date Filed: 6/10/2022 12:15:45 PM
Michael Watson
Secretary of State

| A. NAME & PHONE OF CONTACT AT FILER (optional) | |
|---|---|
| UCC Direct Services | 800-331-3282 |

B. EMAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐
  JOHN JAMES
  2929 ALLEN PKWY STE 3300
  Houston, TX  77019
⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor Name (1a or 1b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR | LITTCO METALS LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1216 E. INDUSTRIAL ACCESS ROAD | West Point | MS | 39773 | USA |

2. DEBTOR'S NAME: Provide only one Debtor Name (2a or 2b)(use exact, full name; do not omit, modify or abbreviate any part of the Debtor's Name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION NAME | | | | |
|---|---|---|---|---|
| OR | Samson Horus | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 90 John Street | New York | NY | 10038 | USA |

4. COLLATERAL:  This financing statement covers the following collateral:

NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY. DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTE A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE. THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEROF RECEIVED BY SUCH ENTITY. Accounts, accounts receivable, contracts, real property leases, notes, bills, acceptances, chooses in action, chattel paper, instruments, documents and other forms of obligations at any time owing to the Grantor arising out of goods sold or leased or for services rendered by Grantor, the proceeds thereof and all of Grantor's rights with respect to any goods represented thereby, whether or not delivered. goods returned by customers and all rights as an unpaid vendor or lienor, including rights of stoppage in transit and of recovering possession by proceedings including replevin and reclamation, together hereafter created, relating thereto (collectively referred to hereinafter as "Receivables"): Inventory, including without limitation, all goods manufactured

| 5. Check only if applicable and check only one box: Collateral is | ☐ held in a Trust (see UCC1Ad item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|---|

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable)  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
MS-0-87043950-64084889

FILING OFFICE COPY - UCC FINANCING STATEMENT (Form UCC1)(Rev 08/23/11)

87

**UCC FINANCING STATEMENT ADDENDUM**
FOLLOW INSTRUCTIONS

| | |
|---|---|
| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement. If line 1b was left blank because individual Debtor name did not fit, check here ☐ | File Number: 20223874790A |
| 9a. ORGANIZATIONS NAME  LITTCO METALS LLC | Date Filed: 6/10/2022 12:15:45 PM |
| OR  9b. INDIVIDUAL'S SURNAME  FIRST PERSONAL NAME  ADDITIONAL NAME(S)/INITIAL(S)   SUFFIX | Michael Watson  Secretary of State |
| | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

10. DEBTOR'S NAME: Provide (10a or 10b only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact full name) do not omit, modify or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATIONS NAME | | | | |
|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME. Provide only one name (11a or 11b)

| 11a. ORGANIZATION NAME | | | |
|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral)

or acquired for sale or lease, and any piece goods, raw materials, work in process and finished merchandise, findings or component materials and all supplies, goods, incidentals, office supplies, packaging materials, and any and all items used or consumed in the operation of the business of Grantor or which may contribute to the finished product or to the sale, promotion and shipment thereof, in which Grantor now or at any time hereafter may have an interest, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of Grantor or is held by Grantor or by others for Grantor's account (collectively referred to hereinafter as "Inventory")

FILING OFFICE COPY - UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad)(Rev 04/20/11)

## REVENUE PURCHASE AGREEMENT

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated 06/09/2022 between Samson MCA LLC ("**FUNDER**") the Merchant(s) listed below (**Merchant**) and the Individual(s) listed below ("Guarantor")

### MERCHANT INFORMATION

Merchant's Legal Name: LITTCO METALS LLC

D/B/A: LITTCO LLC

State of Incorporation / Organization: MS

Type of Entity: LLC

Physical Address: 1216 E. INDUSTRIAL ACCESS ROAD

City: West Point          State: MS          Zip: 39773          Business Phone: (662)499-2801

Guarantor(s) Name: JASON R. LITTRELL          Cellphone Number: (662) 312-9088          Email Address: jason@littcometalbuildings.com

Mailing  Address: 23 WATER OAK LANE          City: Starkville

    State: MS          Zip: 39759

Guarantor(s) Name:          Cellphone Number:          Email Address:

Mailing  Address:          City:

    State:          Zip:

**Purchase Price:** $1,300,000.00          **Purchased Percent:** 25%          **Purchased Amount:** $1,807,000.00

**Payment Frequency:** WEEKLY          **Remittance:** $31,999.00

In consideration of payment by FUNDER to Merchant of the Purchase Price set forth above, Merchant hereby sells, assigns and transfers to FUNDER (making FUNDER the absolute owner) the Purchased Percentage of all of Merchant's payments, receipts, settlements and funds paid to or received by or for the account of Merchant from time to time on and after the date hereof in payment or settlement of Merchant's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the Purchased Amount has been delivered by or on behalf of Merchant to FUNDER.

Merchant is selling a portion of a future revenue stream to FUNDER at a discount, and is not borrowing money from FUNDER, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FUNDER. The Remittance is a good faith estimate of FUNDER's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. FUNDER is entering this Agreement knowing the risks that Merchant's business may not perform as expected or fail, and FUNDER assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give FUNDER a reasonable and fair opportunity to receive the benefit of its bargain. FUNDER acknowledges that it may never receive the Purchased Amount in the event that the Merchant does not generate sufficient revenue. Merchant and Guarantor(s)(s) are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

FUNDER will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, FUNDER (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as FUNDER receives payment in full of the Purchased Amount. Merchant hereby authorizes FUNDER to ACH debit the agreed Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. Merchant agrees not to make or cause debits to the Account (other than in favor of FUNDER) at any time that would cause the balance therein on any business day to be insufficient to fund payment in full of the agreed Remittance. The Account may not be used for any personal, family or household purposes. Merchant will provide FUNDER with all required access codes and monthly bank statements regarding the Account so that FUNDER may monitor the Account. FUNDER payment of the Purchase Price shall be deemed the acceptance and performance by FUNDER of this Agreement. Merchant understands that it is responsible for ensuring that the agreed Remittance to be debited by FUNDER remains in the Account and will be held responsible for any fees incurred by FUNDER resulting from a rejected ACH attempt or an Event of Default. FUNDER is not responsible for any overdrafts or rejected transactions that may result from FUNDER's ACH debiting the agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between FUNDER and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

Jason R. Littrell / President

**FOR THE MERCHANT (#1)** By:_____          _Jason R. Littrell_
                    (Print Name and Title)                    (Signature)

**FOR THE MERCHANT (#2)** By:_____          _____
                    (Print Name and Title)                    (Signature)
Jason R. Littrell / President

**BY GUARANTOR(S) (#1)** By: _____          _Jason R. Littrell_
                    (Print Name and Title)                    (Signature)

**BY GUARANTOR(S) (#2)** By: _____          _____
                    (Print Name and Title)                    (Signature)

**2**                                        Initial: _JRL_

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## TERMS OF ENROLLMENT IN PROGRAM

**1.1** **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to FUNDER with a Bank acceptable to FUNDER to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to FUNDER with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide FUNDER and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes FUNDER and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to FUNDER for the receipts as specified herein and to pay such amounts to FUNDER. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by FUNDER or not. This additional authorization is not a waiver of FUNDER's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which FUNDER did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of FUNDER.

**1.2** **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by FUNDER as per the terms of this Agreement.

**1.3** **Reconciliation.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a retroactive reconciliation of the total Remittance Amount. All requests hereunder must be in writing to **reconciliations@samsonfunding.com** Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. FUNDER retains the right the request additional reasonable documentation including without limitation bank login or access to view Merchant's accounts using third party software, and Merchant's refusal to provide access shall be a breach of this Agreement and FUNDER shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by FUNDER within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by FUNDER shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with FUNDER's right and ability to debit Merchant's Account while the request is pending or to unilaterally modify the Remittance Amount, in any method other than the ones listed in this Agreement.

**1.4** **Adjustments to the Remittance.** As long an Event of Default, or breach of this Agreement, has not occurred, Merchant may give notice to FUNDER to request a decrease in the Remittance, should they experience a decrease in its Future Receipts. All requests hereunder must be in writing to **reconciliations@samsonfunding.com** and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. FUNDER retains the right the request additional reasonable documentation including without limitation bank login or 3rd party software access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FUNDER shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Merchant shall provide FUNDER with viewing access to their bank account as well as all information reasonably requested by FUNDER to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

**1.5** **Financial Condition.** Merchant and Guarantor(s)(s) (as hereinafter defined and limited) authorize FUNDER and its agents to investigate their financial responsibility and history, and will provide to FUNDER any authorizations, bank or financial statements, tax returns, etc., as FUNDER requests in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. FUNDER is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6** **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide FUNDER with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide FUNDER with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from FUNDER.

**1.7** **Indemnification.** Merchant and Guarantor(s)(s) hereby jointly and severally indemnify and hold harmless FUNDER and each Processor, their respective officers, directors, agents and representatives, and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by any such indemnitee as a direct or indirect result of (a) claims asserted by FUNDER for monies owed to FUNDER from Merchant and (b) actions taken by indemnitee in reliance upon any fraudulent, misleading or deceptive information or instructions provided by FUNDER.

**1.8** **No Liability.** In no event will FUNDER be liable for any claims asserted by Merchant or Guarantor(s)s under any legal or equitable theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s)(s). In the event these claims are nonetheless raised, Merchant and Guarantor(s)s will be jointly liable for all of FUNDER's attorney's fees and expenses resulting therefrom.

**1.9** **Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, FUNDER, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10** **Sale of Receipts.** Merchant and FUNDER agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FUNDER to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. FUNDER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Merchant acknowledges that FUNDER's share of Receipts collected are being held by Merchant in trust and are the sole property of FUNDER until they are remitted to FUNDER. Payments made to FUNDER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. By this Agreement, Merchant transfers to FUNDER full and complete ownership of the Purchased Amount and Merchant retains no legal or equitable interest therein. FUNDER hereby appoints Merchant, and Merchant accepts appointment, as servicer for and on behalf of FUNDER for the purpose of collecting and delivering Receipts to FUNDER as required by this Agreement until FUNDER has received the Receipts Purchased Amount, and Merchant agrees that all such Receipts shall be received and held in trust for the benefit of SPFL for purposes of carrying out the terms of this Agreement. Merchant agrees that it will treat the amounts received and the Purchased Receipts delivered to FUNDER under this Agreement in a manner consistent with a sale in its accounting records and tax returns. Merchant agrees that FUNDER is entitled to audit Merchant's accounting records upon reasonable notice in order to verify compliance. Merchant waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Merchant asserts that this transaction is anything other than a sale of future receipts. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event, it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that FUNDER has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and FUNDER shall promptly refund to Merchant any interest received by FUNDER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that FUNDER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law result, result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11** **Power of Attorney.** Merchant irrevocably appoints FUNDER and its agents and representatives, as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to FUNDER from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FUNDER; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s)(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which FUNDER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

**1.12** **Protections against Default.** The following Protections 1 through 8 may be invoked by FUNDER immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the FUNDER electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to FUNDER; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts or ceases the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of FUNDER, and (ii) the written agreement of any FUNDER or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to FUNDER;

3

Initial: _____

(e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide FUNDER with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from FUNDER, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections arein addition to any other remedies available to FUNDER at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including attorney's fees and costs of collection in the amount of 30% of the Purchased Amount then outstanding due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** FUNDER may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes FUNDER to execute in the name of the Merchant a Confession of Judgment in favor of FUNDER pursuant to the terms of the Confession of Judgment. Upon an Event of Default, FUNDER may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** FUNDER may enforce its security interest in the Collateral including sending demand letters to account debtors and credit card processors.

**Protection 5.** FUNDER may exercise any and all rights and remedies of a secured party under Uniform Commercial Code Article 9

**Protection 6.** FUNDER may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if FUNDER recovers a Judgment against Merchant, Merchant shall be liable for all of FUNDER's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to FUNDER. Upon breach of any provision in this Agreement, FUNDER may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. FUNDER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to FUNDER.

**Protection 8.** FUNDER may debit Merchant's depository accounts wherever situated in such amounts as determined by FUNDER in its sole discretion for purposes of collecting funds for application to the unrealized Purchased Amount and other amounts owed by Merchant to FUNDER by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to FUNDER.

**1.13 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor(s), in respect of himself or herself personally, authorizes FUNDER to disclose information concerning Merchant's and each Owner's and each Guarantor(s)'s credit standing (including credit bureau reports that FUNDER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor(s) hereby and each waives to the maximum extent permitted by law any claim for damages against FUNDER or any of its affiliates relating to any (i)investigation undertaken by or on behalf of FUNDER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.14 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by FUNDER, including this Agreement and any other FUNDER documents (collectively, "Confidential Information") are proprietary and confidential information of FUNDER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of FUNDER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles FUNDER to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.15 Publicity.** Merchant and each of Merchant's Owners and all Guarantor(s)s heretoall hereby authorizes FUNDER to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.16 D/B/A's.** Merchant hereby acknowledges and agrees that FUNDER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FUNDER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1**     **Financial Condition and Financial Information.** Merchant's and Guarantor(s)s' bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material adverse change in their financial condition, operation or ownership. FUNDER may request statements at any time during the performance of this Agreement and the Merchant and Guarantor(s)s shall provide them to FUNDER within five business days after request from FUNDER. Merchant's or Guarantor(s)s' failure to do so is a material breach of this Agreement.

**2.2**     **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3**     **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4**     **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5**     **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without FUNDER's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6**     **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and FUNDER, nor shall Merchant change any of its places of business without prior written consent by FUNDER.

**2.7**     **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

**2.8**     **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from FUNDER to Merchant, execute, acknowledge and deliver to FUNDER and/or to any other person, firm or corporation specified by FUNDER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9**     **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection pursuant to the United States Bankruptcy Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10**     **Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts and all collateral in which FUNDER has been granted a security interest under the Security Agreement, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever other than in favor of FUNDER or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of FUNDER.

**2.11**     **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or householdpurposes.

**2.12**     **Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13**     **Good Faith.** Merchant and Guarantor(s)s hereby affirm that Merchant is receiving the Purchase Price and selling FUNDER the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business

## EVENTS OF DEFAULT AND REMEDIES

**3.1**     **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default"hereunder:

(a)     Merchant or Guarantor(s) shall violate any term or covenant in this Agreement;

(b)     Any representation or warranty by Merchant or Guarantor(s) in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)     the sending of notice of termination by Merchant or verbally notifying FUNDER of its intent to breach this Agreement;

**4**

Initial: _____

(d)    the Merchant fails to give FUNDER 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(e)    Merchant fails to provide its bank statements, and/or month to date bank activity, and/or accounts receivable reports, and/or bank login information within two (2) business days of a request by FUNDER;

(f)    Merchant shall voluntarily transfer or sell all or substantially all of its assets;

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)    Merchant shall use multiple depository accounts without the prior written consent of FUNDER or takes any other action that intentionally interferes with or prevents FUNDER from receiving the Purchased Amount in accordance with the terms of this Agreement;

(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)    Merchant shall change its depositing account without the prior written consent of FUNDER; or

(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of FUNDER

(l)    Merchant's bank returns a code other than NSF cutting FUNDER from its collections

(m)    Merchant or any Owner/Guarantor(s), directly or indirectly, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, which operates a business similar to or competitive with that of Merchant.

(n)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with FUNDER.

**3.2    Limited Personal Guaranty** Upon the occurrence of an Event of Default, FUNDER will enforce its rights against the Guarantor(s)s of this transaction. Said Guarantor(s)s will be jointly and severally liable to FUNDER for all of FUNDER's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3    Remedies.** Upon the occurrence of an Event of Default occurs and is not waived pursuant to Section 4.4. hereof, FUNDER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of FUNDER in connection with this Agreement may be exercised at any time by FUNDER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4    Attorney's Fees**. Upon the occurrence of an Event of Default, and Funder retains an attorney or law firm to enforce this Agreement, Merchant and Guarantor(s) agree that a fee equal to 30% of the Remaining Balance (purchased amount less amount remitted by Merchant) ("Attorney's Fees") shall be immediately assessed Merchant and Guarantor(s) agree that the calculation for Attorney's Fees is reasonable.

**3.5    Costs.** Merchant shall pay to FUNDER all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of FUNDER's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.6    Required Notifications.** Merchant is required to give FUNDER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give FUNDER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

# 4    MISCELLANEOUS

**4.1    Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by FUNDER.

**4.2    Assignment.** FUNDER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3    Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to FUNDER shall become effective only upon receipt by FUNDER. Notices to Merchant shall become effective three days after mailing.

**4.4    Waiver Remedies.** No failure on the part of FUNDER to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law orequity.

**4.5    Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums attachments, exhibits, and other documents relating to this Agreement in any way, shall be binding upon and inure to the benefit of Merchant and Guarantor(s) on the one hand, and FUNDER and their respective successors and assigns, except that Merchant and Guarantor(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of FUNDER which consent may be withheld in FUNDER's sole discretion. FUNDER reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement, Security Agreement and Guaranty, Guaranty of Performance, and any and all addendums, attachments, exhibits, and other documents relating to this Agreement in any way, shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if FUNDER so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). All Parties to this Agreement, including but not limited to, Merchant, Guarantor(s), Corporate Guarantor(s) Merchant and Guarantor(s) that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.  Should such proceeding be initiated in any other forum, Merchant and Guarantor(s) waives any right to oppose any motion or application made by FUNDER to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor(s) hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by FUNDER by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

**4.6    Survival of Representation**, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7    Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto asdrafter.

**4.8    Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected orimpaired.

**4.9    Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant Guarantor(s) and Corporate Guarantor(s)s and FUNDER and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10    JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11    CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12    Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

*JRL*

**5**

Initial: _____

### SECURITY AGREEMENT AND GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PEFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Merchant's LegalName: LITTCO METALS LLC

D/B/A: LITTCO LLC                                                                 Federal ID#: 83-0466275

Physical Address: 1216 E. INDUSTRIAL ACCESS ROAD          City: West Point          State: MS          Zip: 39773

### SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. To secure Merchant's obligations under the Revenue Purchase Agreement to make available or deliver Purchased Amount to FUNDER and FUNDER's right to realize the Purchased Amount, as and to the extent required by the terms of the Revenue Purchase Agreement, and performance of and compliance by Merchant with its other undertakings and agreements herein, Merchant and Guarantor(s)(s) grants to FUNDER a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s)(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s)(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to FUNDER under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to FUNDER upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover FUNDER's entitlements under this Agreement, FUNDER is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of FUNDER's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, FUNDER or an affiliate of FUNDER is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

In the event Merchant, any of its officers or directors or any Owner/Guarantor(s), during the term of the Revenue Purchase Agreement or while Merchant remains liable to FUNDER for any obligations under the Revenue Purchase Agreement, directly or indirectly, including acting by, through or in conjunction with any other person, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, whether corporate, partnership, limited liability company or otherwise, which operates a business similar to or competitive with that of Merchant, such entity shall be deemed to have expressly assumed the obligations due FUNDER under the Revenue Purchase Agreement. With respect to any such entity, FUNDER shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity as debtor, an initial UCC financing Statement and to have it filed with any and all appropriate UCC filing offices. FUNDER shall be held harmless by Merchant and each Owner/Guarantor(s) and be relieved of any liability as a result of any such authentication and filing of any such Financing Statement or the resulting perfection of its ownership rights or security interests in such entity's assets. FUNDER shall have the right to notify such entity's payors or account debtor (as defined by the UCC) of FUNDER's rights, including without limitation, FUNDER's right to collect all accounts, and to notify any payment card processor or creditor of such entity that FUNDER has such rights in such entity's assets. Merchant also agrees that, at the FUNDER's discretion, FUNDER may choose to amend any existing financing statement to include any such newly formed entity as debtor.

This security interest may be exercised by FUNDER without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. FUNDER shall have the right to notify account debtors at any time.  Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, FUNDER has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. FUNDER hereby represents and warrants that no other person or entity has a security interest in the Secured Assets.

With respect to such security interests and liens, FUNDER will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from FUNDER written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor(s) (s) agree(s) that this is a contract of recoupment and FUNDER is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s)(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by FUNDER. Merchant and Guarantor(s)(s) agree(s) to execute and deliver to FUNDER such instruments and documents FUNDER may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. FUNDER is authorized to execute all such instruments and documents in Merchant's and Guarantor(s)(s) name.

Merchant and Guarantor(s)(s) each acknowledge and agree that any security interest granted to FUNDER under any other agreement between Merchant or Guarantor(s)(s) and FUNDER (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s)(s) agrees to execute any documents or take any action in connection with this Agreement as FUNDER deems necessary to perfect or maintain FUNDER's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s)(s) each hereby authorizes FUNDER to file any financing statements deemed necessary by FUNDER to perfect or maintain FUNDER's security interest. Merchant and Guarantor(s)(s) shall be liable for, and FUNDER may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by FUNDER in protecting, preserving and enforcing FUNDER's security interest and rights.

**Negative Pledge**. Merchant and Guarantor(s)(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**. FUNDER shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, FUNDER may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that FUNDER may enter into an agreement with Merchant's landlord giving FUNDER the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**. Upon any Event of Default, FUNDER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to FUNDER, whether by acceleration or otherwise.

6                                                                                          Initial: _____

## GUARANTY OF PERFORMANCE

As an additional inducement for FUNDER to enter into the Revenue Purchase Agreement, the undersigned Guarantor(s)(s) hereby provides FUNDER with this Guaranty. Guarantor(s)(s) will not be personally liable for any amount due under the Revenue Purchase Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of the Revenue Purchase Agreement. Each Guarantor(s) shall be jointly and severally liable for all amounts owed to FUNDER in the Event of Default. Guarantor(s)(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement including the Merchant's full and timely delivery of the Purchased Amount pursuant to (and limited by) the Revenue Purchase Agreement, in each case as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor(s)'s obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor(s) Waivers**. In the event of a breach of the above, FUNDER may seek recovery from Guarantor(s)s for all of FUNDER's losses and damages by enforcement of FUNDER's rights under this Agreement without first seeking to obtain payment from Merchant, any other Guarantor(s), or any Collateral or Additional Collateral FUNDER may hold pursuant to this Agreement or any other guaranty. In addition, Section 4.5, 4.10 and 4.11 are expressly reiterated in the Security Agreement and Guaranty herein. FUNDER is not required to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) FUNDER's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to FUNDER. In addition, FUNDER may take any of the following actions without releasing Guarantor(s) from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to FUNDER; (ii) release Merchant from its obligations to FUNDER; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor(s) to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to FUNDER under the Merchant Agreement and this Agreement are paid in full, Guarantor(s) shall not seek reimbursement from Merchant or any other Guarantor(s) for any amounts paid by it under this Agreement. Guarantor(s) permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other Guarantor(s), or any collateral provided by Merchant or any other Guarantor(s), for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that FUNDER must return any amount paid by Merchant or any other Guarantor(s) of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor(s)'s obligations under this Agreement shall include that amount.

Guarantor(s) Acknowledgement. Guarantor(s) acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice and has decided not to avail himself/herself of that opportunity.

This Security Agreement and Guaranty and Guaranty of Performance shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Funder so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue.  Merchant, Guarantor and Corporate Guarantors agree that the Acceptable Forums are convenient to it, and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant, Guarantor and Corporate Guarantors waives any right to oppose any motion or application made by Funder to transfer such proceeding to an Acceptable Forum.

**The Merchant Guarantor(s) and Corporate Guarantor(s) acknowledge that they have read Paragraph 4.5 of this Agreement in its entirety and understand that they are waiving their right to Service of Process by traditional manners and will accept process of any Summons and Complaint or other legal process by certified mail return receipt requested to the Mailing Address on Page 1 of this Agreement.**

Jason R. Littrell / President

**FOR ALL MERCHANT(S) (#1)**By:_____     *Jason R. Littrell*
                              (Print Name and Title)                                                  (Signature)

SSN#_____

**FOR ALL MERCHANT(S) (#2)** By:_____
                              (Print Name and Title)                                                  (Signature)

SSN#_____

Jason R. Littrell / President

**GUARANTOR(S) (#1)**By:_____     *Jason R. Littrell*
                          (Print Name and Title)                                                  (Signature)

SSN# _____

**GUARANTOR(S) (#2)**By:_____
                          (Print Name and Title)                                                  (Signature)

SSN#_____

7

Initial: _____

*J R L*

### APPENDIX A - THE FEE STRUCTURE:

A.  Underwriting Fee $19,500.00 to cover underwriting and related expenses.

B.  Origination Fee $19,500.00 to cover cost of Origination and ACH Setup

C.  NSF Fee (Standard) $35.00 (each)

D.  Rejected ACH / Blocked ACH / Default Fee $2,500.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E.  Bank Change Fee $50.00. When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F.  Wire Fee - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $25.00 for a bank ACH.

**FOR THE MERCHANT (#1)** By: Jason R. Littrell / President _____    _Jason R. Littrell_____

(Print Name and Title)                                      (Signature)

**FOR THE MERCHANT (#2)** By: _____    _____

(Print Name and Title)                                      (Signature)

**8**

Initial: _JRL_____

# AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

**Merchant:** **LITTCO METALS LLC dba LITTCO LLC**
(Merchant's Legal Name)

**Merchant Agreement:** Merchant Agreement between Funder and Merchant, dated as of June 9, 2022

Designated Checking Account:

**Bank Name:)**_____ **Branch:**_____

**Tax ID:** 83-0466275

**ABA: Routing:**_____ **DDA: Account:**_____

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS**. By signing below, Merchant authorizes Funder to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes Funder to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

In the amount of: $352,206.25

(Or) Percentage of each Banking Deposit: 25%

On the Following Days: Every consecutive Friday, NO holidays until paid in full.

If any payment date falls on a weekend or holiday, I understand and agree that the payment may be executed on the next business day, along with regular scheduled payments. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that Funder may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes Funder to initiate ACH entries to correct any erroneous payment transaction.

**MISCELLANEOUS**. Funder is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). This Authorization Agreement is to remain in full force and effect until Funder has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford Funder a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this    Authorization Agreement.

Merchant:  LITTCO METALS LLC dba LITTCO LLC_____    Date: 06/09/2022_____
(Merchant's Legal Name)                                        (Month) (Day) (Year)

President
Title:_____

X _Jason R. Littrell_____
(Signature)

Jason R. Littrell
Print Name:_____

**9**

Initial: _____

96

**DISBURSEMENT AUTHORIZATION**

SELLER: LITTCO METALS LLC                    DBA:    LITTCO LLC

**PURCHASE PRICE: $1,300,000.00**

DATE: 06/09/2022

The undersigned hereby authorizes Purchaser to make the following deductions from proceeds and/or draw
the following checks from the Purchase Price in accordance with the terms of the Purchase Agreement.

Deductions

| | |
|---|---|
| -$19,500.00 | Underwriting Fee |
| -$19,500.00 | Origination Fee |
| -$0.00 | Buyout Amount |
| -$908,718.75 | Payout to Wise Ventures |
| -$75.00 | Processing Fee |
| -$0.00 | Administrative Fee (applied on the initial day of funding and every 30 days to follow, until the specified amount is paid in full). **NOT INCLUDED IN TOTAL DEDUCTION BELOW** |

Disbursement Fee (**NOT INCLUDED IN TOTAL DEDUCTION BELOW**)

Deal Funded via Wire Transfer -$50.00

OR

Deal Funded via ACH Disbursement - $25.00

**\*Please specify how you would like the disbursement on your funding call.**

**Total Deductions: $947,793.75**

**Net Amount Deposited: $352,206.25**

 **IN WITNESS WHEREOF,** this Disbursement Authorization has been duly executed by the undersigned
 as of the day and year first above written.

(SELLER)

By: *Jason R. Littrell*

Name:  Jason R. Littrell

Title:  President

(SELLER)

By:

Name:

Title:

**11**

Initial:

97

# Samson MCA LLC

**SAMSON MCA LLC**

**17 State Street, Suite 630**

**New York, NY 10004**

## Payoff Authorization Form

June 9, 2022

Littco Metals LLC
Littco LLC
1216 E. Industrial Access Road
West Point, MS 39773

RE:  **Payoff Authorization –** Littco Metals LLC dba Littco LLC

To whom it may concern;

**Jason R. Littrell of Littco Metals LLC dba Littco LLC** consents Samson MCA LLC to pay of

the remaining balance of **$908,718.75** to **Wise Venture.**

Thank you,

X *Jason R. Littrell*

**Jason R. Littrell**

# Addendum to Payment Rights Purchase and Sale Agreement
# <u>REPURCHASE OPTION</u>

Because we understand that your cash flow needs may change, we offer the following Repurchase Option. Seller has the option to repurchase the receipts it sold to Samson MCA LLC at a discount pursuant to the following schedule:

| Early Delivery Period | REPURCHASE OPTION |
|---|---|
| Calendar Day 1-30 after the Funding Date | 1.13 |
| Calendar Day 31-60 after the Funding Date | 1.15 |
| Calendar Day 61-90 after the Funding Date | 1.17 |
| Calendar Day 91-120 after the Funding Date | 1.19 |
| Calendar Day 121-150 after the Funding Date | 1.22 |
| Calendar Day 151-180 after the Funding Date | 1.25 |

Any payment made pursuant to this Addendum must clear by 11:59 pm of the last date of the Early Delivery Window. If the payment is received from a third party, the full Receipts Purchased Amount set forth in the Agreement will remain due and owing.

The "Funding Date" is the date Samson MCA LLC remits the Purchase Price to Seller.

Seller is not eligible for this Repurchase Option if Seller violates any provision of the Agreement, including but not limited to Section 3.1 (Events of Default) of the Agreement. Except as provided in this Addendum, all terms and conditions of the Payment Rights Purchase and Sale Agreement shall remain in full force and effect.

Seller's Name: LITTCO METALS LLC dba LITTCO LLC

_____

Guarantor's Name: Jason R. Littrell

_____

Signature:

*Jason R. Littrell*

_____

Date:  06/09/2022

_____

## FINANCIAL DISCLOSURE

1.) ☐ YES | ☑ NO | Have you considered, sought advice or spoken with anyone such as your attorney accountant, partner, employees, vendors, customers, family members or anyone else about bankruptcy in the last 6 months?

If Yes, please provide a brief explanation:

2.) ☐ YES | ☑ NO | Are you anticipating filing for bankruptcy whether personal or business in the next six months?

3.) Please list all payables that are more than 30 days past due:
(Please check below if there are no payables that are more than 30 days past due.)

☑ **None.** I do not have any payments due that are late by more than 30 days.

| | Due to | Amount owed | Last Payment date | Contact person Phone |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

4.) ☐ YES | ☑ NO | Has anyone threatened to file a lien or a judgment against you or any of your businesses in the last 6 months?

If Yes, please provide details:

5.) Please list all liens and judgements filed against you personally or any business in which you are an owner or part owner.
☑ **None.**

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

By signing this document, I/We certify that all the information is truthful. I/We understand that knowingly submitting false information may constitute fraud.

X *Jason R. Littrell*
_____
As Business Owner

X *Jason R. Littrell*
_____
Individually

9

Case 24-01024-CMG-Doc-8-3 Filed 02/24/25 Entered 02/24/25 18:46:35 Desc
Case 1-25-cv-00026-GMG-DJS Doc#-2 Filed 02/25/25 Pg 42 of 118 PageID #: 101
Exhibit C- Samson MCA Proof of Claim    Page 19 of 20




## Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | LITTCO METALS LLC |
| **Document created:** | 06/09/2022 19:50:03 |
| **Document pages:** | 14 |
| **Document ID:** | a04fc179159549839c84a297aa6d98d40976e668 |
| **Document Sent:** | 06/09/2022 19:59:06 UTC |
| **Document Status:** | Signed |
| | 06/09/2022 20:05:04UTC |

---

| | |
|---|---|
| **Sender:** | michael@samsonfunding.com |
| **Signers:** | jason@littcometalbuildings.com |
| **CC:** | contracts@samsonfunding.com, steven@samsonfunding.com, michael@samsonfunding.com, jmaltz@byzloans.com |

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | michael@samsonfunding.com | 06/09/2022 19:50:03 pm UTC | 06/09/2022 19:53:46 pm UTC | 173.54.158.68 |
| SignNow Web Application | Viewed the Document | michael@samsonfunding.com | 06/09/2022 19:50:08 pm UTC | 06/09/2022 19:53:55 pm UTC | 173.54.158.68 |
| SignNow Web Application | Document Saved | michael@samsonfunding.com | 06/09/2022 19:51:34 pm UTC | 06/09/2022 19:55:20 pm UTC | 173.54.158.68 |
| SignNow Web Application | Invite Sent to: jason@littcometalbuilding.com | michael@samsonfunding.com | 06/09/2022 19:52:04 pm UTC | 06/09/2022 19:55:50 pm UTC | 173.54.158.68 |
| SignNow Web Application | Invite Canceled for: jason@littcometalbuildings.com | michael@samsonfunding.com | 06/09/2022 19:59:06 pm UTC | 06/09/2022 19:59:04 pm UTC | 208.59.112.10 |
| SignNow Web Application | Invite Sent to: jason@littcometalbuildings.com | michael@samsonfunding.com | 06/09/2022 19:59:07 pm UTC | 06/09/2022 19:59:04 pm UTC | 208.59.112.10 |
| SignNow Web Application | Viewed the Document | jason@littcometalbuildings.com | 06/09/2022 19:59:27 pm UTC | 06/09/2022 19:59:27 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:03 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Signed the Document | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Checkbox | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Checkbox | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Checkbox | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Checkbox | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |

Case 1:20-cv-00026-GPC-DDL Doc #: 24 Filed: 02/25/25 Page 38 of 102 Page ID #: 102
Case 1:20-cv-00026-GPC-DDL Doc #: 24 Filed: 02/25/25 Page 38 of 102 Page ID #: 102
Exhibit C- Samson MCA Proof of Claim   Page 20 of 20

| SignNow Web Application | | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
|---|---|---|---|---|---|
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Added a Text | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |
| SignNow Web Application | Document Saved | jason@littcometalbuildings.com | 06/09/2022 20:05:04 pm UTC | 06/09/2022 20:05:02 pm UTC | 50.86.173.194 |

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1   LITTCO Metals, LLC | |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court   **Northern District of Mississippi** | |
| Case number:  **23−10069** | |

**FILED**

**U.S. Bankruptcy Court**
**Northern District of Mississippi**

4/19/2023

**Shallanda J. Clay, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | International Services, Inc. |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No  ☐ Yes. From whom? |
| 3. **Where should notices and payments to the creditor be sent?**  Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**  International Services, Inc.  Name  3850 N. Wilke Road  Arlington Heights, IL 60004  Contact phone  3124941000  Contact email  mpc@rfclaw.com  Uniform claim identifier for electronic payments in chapter 13 (if you use one): |
| | **Where should payments to the creditor be sent?** (if different)  Name  Contact phone  Contact email |
| 4. **Does this claim amend one already filed?** | ☑ No  ☐ Yes. Claim number on court claims registry (if known)  Filed on  MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No  ☐ Yes. Who made the earlier filing? |

Official Form 410                         Proof of Claim                         page 1

Ex. D

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ 1038915.29    **Does this amount include interest or other charges?** ☑ No ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as healthcare information. |
| | Money loaned |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No ☐ Yes. The claim is secured by a lien on property. |
| | **Nature of property:** |
| | ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim.* |
| | ☐ Motor vehicle |
| | ☐ Other. Describe: _____ |
| | **Basis for perfection:** _____ |
| | Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) |
| | **Value of property:** $ _____ |
| | **Amount of the claim that is secured:** $ _____ |
| | **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.) |
| | **Amount necessary to cure any default as of the date of the petition:** $ _____ |
| | **Annual Interest Rate** (when case was filed) _____ % |
| | ☐ Fixed ☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No ☐ Yes. Identify the property: _____ |

Official Form 410        Proof of Claim        page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
| | | ☐ Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | | $ _____ |
| | | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    4/19/2023

MM / DD / YYYY

/s/  Matthew P. Connelly

Signature

Print the name of the person who is completing and signing this claim:

Name    Matthew P. Connelly

First name    Middle name    Last name

Title    Attorney

Company    Rock Fusco & Connelly, LLC

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    333 W. Wacker Drive, 19th Floor

Number   Street

Chicago, IL 60606

City   State   ZIP Code

Contact phone    312–494–1000    Email    mpc@rfclaw.com

Case 24-01024-SDM Doc 89-4 Filed 02/24/25 Entered 02/24/25 18:46:35 Desc
Case: 1:23-cv-00025-GHD-DAS Doc #: 1 Filed: 02/25/23 106 of 118 PageID #: 106
Exhibit D - International Services Inc. Proof of Claim Page 4 of 5

# Promissory Note

1. **Terms**: For value received, International Services, Inc., ("Lender") an Illinois Corporation with its principal place of business at 3850 N. Wilke Rd, Arlington Heights, IL 60004, has tendered to the order of Littco Metals, LLC ("Borrower"), a Mississippi Corporation, whose principal address is 6593 Hwy 45 Alternate South, West Point, MS 39773, the order ONE MILLION THIRTY-EIGHT THOUSAND NINE HUNDRED FIFTEEN DOLLARS AND TWENTY-NINE CENTS ($1,038,915.29). Interest shall accrue on the outstanding note at the rate of 15% per annum.

2. **Repayment**: By agreement of the parties, the Borrower hereby agrees to repay the amounts due under the "Note" within twenty-four months of January 1, 2023. Interest shall accrue on the outstanding note at the rate of 15% per annum, with all interest and principal due and payable no later than maturity.

3. **AMOUNT:** The signer of this note also agrees that this note shall be paid in twenty-four (24) monthly installments beginning on January 1, 2023. Installments shall consist of principal and interest payments in the amount of FIFTY THOUSAND THREE HUNDRED SEVENTY-THREE DOLLARS AND FIFTY-TWO CENTS ($50,373.52) due on the first day of each month, until such time as this principal is paid in full.

4. **PREPAYMENT:** The Borrower may prepay all or any part of the balance of the outstanding note hereunder at any time without penalty.

5. **SECURITY:** This note is secured.

6. **Default**: If Borrower fails to pay the amount due or causes any amount due not to be paid, the Borrower shall have thirty days thereafter to pay said amount. ("Cure or Cure Period"). If after the thirty days the Borrower has not caused Lender to be paid, then the Borrower is in Default ("Default").

7. **Acceleration**: If Borrower fails to cure the Default, then the entire remaining balance of the Note Amount shall become immediately due and owing, less any payments received by Lender prior to Default. Interest shall start to accrue on the remaining balance of the note at the rate of fifteen percent (15%) per annum on the outstanding principal balance. Said acceleration is at the option of the Lender, and may be imposed without prior notice to the signer(s) of this note. Borrower shall have the right to enforce the Security Instruments given to guarantee this Note in order to satisfy the remaining principal balance on the Note.

8. **ATTORNEY'S FEES**. If Borrower should Default for any reason and/or is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Borrower shall pay Lender all costs of collection and enforcement, including reasonable attorney's fees and court costs in addition to other amounts due.

9. **SEVERABILITY**. If any provision of this Note or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Note nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

Case 24-01924-SDM Doc 89-4 Filed 02/24/25 Entered 02/24/25 18:46:35 Desc
Exhibit D - International Services Inc. Proof of Claim Page 5 of 5
Case: 1:25-cv-00025-GHD-DAS Doc #: 1 Filed: 02/25/25 107 of 118 PageID #: 107

10. **BINDING EFFECT**. The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

11. **DESCRIPTIVE HEADINGS**. The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations under this Note.

12. **CONSTRUCTION**. The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

13. **GOVERNING LAW**. This Note shall be governed, construed and interpreted by, through and under the laws of the State of Illinois.

Borrower is responsible for all obligations represented by this Note and has had the opportunity to have the contents of this note reviewed by legal counsel of his choice.

11/17/22
Date

West Point, MS
Location (city or county)

Signature of Borrower

6593 Hwy 45 Alt. S.
Address

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF MISSISSIPPI

In Re:  LITTCO Metals, LLC                             Case No.:  23-10069-SDM
       Debtor(s)                              Chapter 7
                                          Adversary Proceeding No.: 24-01024-SDM

_____

JASON LITTRELL AND WILLIAM L.
FAVA, TRUSTEE FOR LITTCO METALS,
LLC d/b/a LITTCO, LLC, LITTCO METALS
EQUIPMENT LEASING, INC., AND
LITTCO METALS MANAGEMENT CO.                              PLAINTIFFS

V.

TYLER BURGESS; TONIA ETOH;
INTERNATIONAL DEVELOPMENT
SERVICES, INC.; INTERNATIONAL
SERVICES, INC.; TAVAS, LLC;
PENHURST CAPITAL, INC.; TIM WILLITS;
NATHAN FREE; JEROLD WEISSBERG;
ROBERT LEGON; BRUCE BUSH; DALE
JOHNSTON; JAMES PETERS; BYZFUNDER
NY, LLC; NEWCO CAPITAL GROUP IV, LLC;
MEHANDI VAKIL; WISE VENTURE, LLC;
STEVEN MARKOWITZ, JR.; SAMSON, MCA,
LLC; CLOUDFUND, LLC D/B/A SAMSON
GROUP; UNIQUE FUNDING SOLUTIONS,
LLC; YAAKOV WINOGRAD; PROSPERUM
CAPITAL PARTNERS, LLC D/B/A ARSENAL
FUNDING; JOHN AND JANE DOES 1-10;
AND ENTITIY DOES 1-5                                      DEFENDANTS

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' RESPONSE TO MOTION TO WITHDRAW REFERENCE**

COME NOW, Plaintiffs, by and through counsel, and file this Memorandum of

Authorities in Support of their Response to Motion to Withdraw Reference, stating unto the

Court as follows:

## I. INTRODUCTION

The debtor, Littco Metals, LLC ("Littco Metals"), and the non-debtor plaintiffs have filed a First Amended Complaint ("FAC") in this adversary proceeding which alleges the defendants, including the self-styled "IDS Defendants" that filed the instant Motion to Withdraw Reference,[1] have engaged in egregious acts of fraud, misrepresentation, usury, racketeering and more (commonly referred to as a "debt trap" in predatory lending parlance), which directly and proximately bankrupted Littco Metals and caused the non-debtor plaintiffs, including Jason Littrell, to suffer significant damages as well.

In what may be one of the more remarkable omissions of fact yet seen in a legal pleading, one of the movants herein, International Services, Inc. ("ISI"), failed to mention it filed a proof of claim in the underlying bankruptcy proceeding seeking in excess of $1,000,000 from Littco Metals—a debt that is absolutely central to the causes of action asserted by Littco Metals in this adversary proceeding, and which is indicative of the conduct that drove Littco Metals into bankruptcy in the first place. Suffice to say, Littco Metals contends this alleged debt is not owed, was procured through fraud, and is usurious, illegal, and/or void as a matter of law. Nonetheless, the IDS Defendants contend the issues raised in this adversary proceeding do not "invoke a substantive right provided under Title 11 or arise only in the context of bankruptcy." *See* Memorandum in Support of Motion to Withdraw Reference [24-01024-SDM] [Doc. 48], p. 10.

It is well-settled that adversary proceedings centered on proofs of claim by creditors are characterized as "in the nature of" counterclaims and form part of the bankruptcy court's core jurisdiction. Here, one of the IDS Defendants filed a substantial proof of claim against the debtor. Should the district court withdraw the reference to the bankruptcy court even though this

---

[1] The IDS Defendants are Tyler Burgess, Tonya Etoh, International Development Services, Inc. ("IDS"), International Services, Inc. ("ISI"), TAVAS, LLC, Penhurst Capital, Inc., Tim Willits, Nathan Free, Jerrold Weissburg, Robert Legon, Bruce Bush, Dale Johnson, and James Peters.

2

is a core proceeding? The answer, for all of the reasons set forth herein below, is no. This matter is properly before the bankruptcy court and should remain there until concluded.

## II. FACTS and PROCEDURAL POSTURE

Littco Metals instituted a voluntary chapter 11 bankruptcy proceeding on January 10, 2023. *See* Petition [23-10069-SDM] [Doc. 1] attached to Response as Exhibit A. On January 18, 2023, one of the defendants named in this adversary proceeding, Samson MCA, LLC ("Samson"), filed a proof of claim in the amount of $1,312,963.60. *See* Proof of Claim [23-10069-SDM] [Doc. 3-1], attached to Response as Exhibit B. Later that same day, a second defendant in this adversary proceeding, Byzfunder NY, LLC ("Byzfunder"), filed a proof of claim in the amount of $214,574.37. *See* Proof of Claim [23-10069-SDM] [Doc. 4-1], attached to Response as Exhibit C.

On February 8, 2023, Notices of Appearance were filed by three attorneys for ISI and IDS: Cory D. Anderson, Matthew P. Connelly, and Timothy P. Maroder, all of the Chicago, Illinois law firm of Rock Fusco & Connelly, LLC. *See* Notices of Appearance [23-10069-SDM] [Doc. 45] [Doc. 46] [Doc. 47]. On that same date, a telephonic Meeting of Creditors was held. *See* Meeting of Creditors Held with Proceeding Memo [23-10069-SDM] [Doc. 51]. The meeting was attended by attorney Maelene Torres on behalf of ISI and attorney Timothy Maroder on behalf of IDS. *Id.* The Minutes note, among other things: "Debtor to provide subchapter V trustee with copy of reports by consulting firm IDS along with employment agreement and amd [amend] schedules to include claim vs. IDS." *Id.*

On April 19, 2023, ISI filed a proof of claim in the amount of $1,038,915.29. *See* Proof of Claim [23-10069-SDM] [Doc. 30-1], attached to Response as Exhibit C. ISI's proof of claim was signed by attorney Michael P. Connelly of Rock Fusco & Connelly, LLC. *Id.*

The chapter 11 proceeding was converted "pretty quickly" to a chapter 7 case on May 2, 2023. *See* Order [23-10069-SDM] [Doc. 75]. This adversary proceeding was thereafter filed on July 18, 2024 against various defendants, including, among others, the IDS Defendants, Byzfunder, and Samson. *See* Complaint [23-10069-SDM] [Doc. 158]; [24-01024-SDM] [Doc. 1]. A First Amended Complaint ("FAC") was filed in this adversary proceeding on September 9, 2024, to correct the misnaming of one individual defendant. *See* FAC [23-10069-SDM] [Doc. 159]; [24-01024-SDM] [Doc. 9]. The FAC alleges claims arising out of numerous acts of wrongdoing, including but not limited to, ISI's procurement of the same Promissory Note which serves as the basis for its proof of claim. *Id.*, ¶¶129(g), 133-35. Likewise, the FAC alleges claims related to the same loans which serve as the basis for the proofs of claim filed by Byzfunder and Samson. *Id.*, ¶¶64-68, 97, 104-08, 110-113, 155, 165.

On October 30, 2024, a Motion for Admission Pro Hac Vice was filed in this Adversary Proceeding by Edward F. Kuester, IV, of Rock Fusco & Connelly, LLC. *See* Motion [24-01024-SDM] [Doc 27]. Pursuant to the motion, Mr. Kuester sought admission to represent the IDS Defendants, including ISI. *Id.* On December 11, 2024, three additional Motions for Admission Pro Hac Vice were filed in this adversary proceeding by Cory D. Anderson, Michael P. Connelly, and Sagar P. Thakkar, all of the Chicago, Illinois law firm of Rock Fusco & Connelly, LLC. *See* Motions [24-01024-SDM] [Doc. 36] [Doc. 37] [Doc. 38]. These attorneys sought admission to represent the same IDS Defendants as Mr. Kuester. *Id.*

On January 10, 2025, the IDS Defendants filed both a Motion to Withdraw Reference and, separately, a Motion to Dismiss. *See* Motions [24-01024-SDM] [Doc. 47] [Doc. 49]. The signature blocks on these motions include Mr. Anderson, Mr. Connelly, and Mr. Thakkar. *Id.* On February 24, 2025, the plaintiffs filed a Motion for Leave to File a Second Amended Complaint

4

("SAC"). Among other things, the proposed SAC addresses the alleged pleading deficiencies identified by the defendants, incorporates more specific allegations against some individuals, and expands upon the fraud and RICO claims set forth in the FAC.

### III. STANDARD

**A.     Burden of persuasion.**

As the movants herein, the IDS Defendants bear the burden of persuasion regarding their request for a withdrawal of the reference. *Matter of Vicars Ins. Agency, Inc.,* 96 F.3d 949, 955 (7th Cir. 1996). It is not a given that this relief should be granted because Congress did not intend for district courts to preside over and resolve most bankruptcy cases and proceedings. *See* 28 U.S.C. § 157(a) (empowering district courts to refer any or all proceedings arising in, under, or related to a bankruptcy proceeding to the bankruptcy judges for the district). That being said, the district court may, in its sole discretion, withdraw a reference to the bankruptcy judges for the district for cause shown, and is required to withdraw such a reference when it "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

**B.     Discretionary withdrawal.**

Discretionary or "for cause" withdrawal "must be based on a sound, articulated foundation." *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985). When deciding whether discretionary withdrawal is warranted, the first question is whether the proceeding is core or non-core. *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115-16 (N.D. Tex. 2006). An adversary proceeding, which is a civil proceeding, "arises under" the Bankruptcy Code, if it involves a cause of action created by title 11. *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). Proceedings "arising in" a bankruptcy case "are those that are not based on any right

expressly created by title 11, but nevertheless, would have no existence outside of the

bankruptcy." *Id.* at 97. Together, proceedings that "arise under" title 11and proceedings that

"arise in" a bankruptcy case constitute the bankruptcy court's "core" jurisdiction. *See* 28 U.S.C.

§ 157(b); *In re Wood*, 825 F.2d at 96–97.

      Even if a claim is non-core, a bankruptcy court still has jurisdiction over it provided that

it is "related to" a bankruptcy case. "The usual articulation of the test for determining whether a

civil proceeding is related to bankruptcy is whether the outcome of that proceeding could

conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.*,

938 F.2d 1467, 1475 (1st Cir.1991) (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

While a bankruptcy judge may hear non-core but "related-to" matters, absent the consent of all

parties, they must "submit proposed findings of fact and conclusions of law to the district court,

and any final order or judgment shall be entered by the district judge after considering the

bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters

to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).[2]

**C.    Mandatory withdrawal.**

      In this circuit, "[m]andatory withdrawal is to be applied narrowly and to prevent 157(d)

from becoming an 'escape hatch.' Unsubstantiated assertions that nonbankruptcy ... issues are

substantial and material to an adversary proceeding are insufficient to warrant mandatory

withdrawal." *In re Highland Capital Management L.P.*, 2021 WL 2850562, at *4 (Bankr. N.D.

Tex. Jul. 7, 2021). Though the standard for mandatory withdrawal of a reference takes into

consideration both title 11 and other laws of the United States affecting interstate commerce, the

true consideration is whether adjudication of the proceeding would require the bankruptcy court

---

[2] Though the IDS Defendants concede this adversary proceeding is at least "related" to a case brought under title 11, they do not consent to the bankruptcy judge hearing this matter.

to interpret a novel, significant, or first-impression issue under these laws rather than merely

applying existing law to the facts. *Matter of Vicars*, 96 F.3d at 954.

IV. DISCUSSION

**A.     There is no basis for discretionary withdrawal because this is a core proceeding.**

Though the list contained in § 157(b)(2) is not exhaustive, by statute, counterclaims by

the bankrupt estate against persons filing claims against the debtor are core claims. 28 U.S.C. §

157(b)(2)(C). Federal courts broadly interpret this provision to include claims that are "in the

nature of counterclaims," though not specifically brought as a counterclaim. Thus, federal courts

have interpreted this provision to mean that once a creditor files a proof of claim against the

bankrupt estate, claims asserted by the debtor in possession against the creditor are typically core

proceedings even though the claims in the case were not interposed as counterclaims.[3] *See In re*

*Gorilla Companies, LLC*, 429 B.R. 308, 314-15 (Bankr. D. Ariz. 2010) (since creditor filed proof

of claim, adversary proceeding against creditor arising out of that transaction was a core claim);

*In re Enron*, 349 B.R. 108, 111-112 (Bankr. S.D. N.Y. 2006) (state law claims in adversary

proceeding against bank that conspired to commit fraud with debtor's officers were "in the

nature of counterclaims" to the bank's proof of claim and, thus, core claims); *In re Marketing*

*Resources Intern. Corp.*, 43 B.R. 71 (Bankr. E.D. Pa. 1984) (deeming an adversary proceeding

against a creditor that had filed a proof of claim to be a counterclaim and, thus, a core claim).

Littco Metals acknowledges *Stern v. Marshall*, 564 U.S. 462 (2011)[4] holds a

counterclaim that is a core claim cannot be heard by a bankruptcy court for jurisdictional (Article

---

[3] Indeed, in some jurisdictions, filing of a proof of claim is deemed a straight waiver of the right to move to withdraw consent. *See In re TPI Int'l Airways*, 222 B.R. 663, 669 (S.D. Ga. 1998) (stating "in a case where the party moving for withdrawal has made claims in the bankruptcy court, withdrawal is not appropriate"). The Court should find the same here.

[4] The appellant in that case was the estate of the Vickie Lynn Marshall, better known to the public as Anna Nicole Smith. The parties were engaged in a *Jarndyce*-like litigation over the estate of her

III) reasons when it (1) arises under state common law and is between two private parties, (2) does not flow from a federal statutory scheme and is not a matter of public right, and (3) will not necessarily be resolved by ruling on the proof of claim in the bankruptcy proceeding, i.e., when the merits of the proof of claim are independent of the counterclaim. Counterclaims which fall within 28 U.S.C. § 157(b) but cannot be heard by a bankruptcy court for jurisdictional reasons are now commonly called "*Stern* claims." *Stern* does not apply here however, because Littco Metals' claims are not exclusively under state common law (e.g., there is a federal question under RICO). *See In re AIH Acquisitions, LLC*, 2011 WL 4000894, at *3 (N.D. Tex. Sept. 7, 2011) (applying *Stern* narrowly to instances where the debtor's state law claims do not arise out of the proof of claim).

Further, the validity of the debts that are the subjects of the proofs of claim filed by ISI, Byzfunder, and Samson are inextricably intertwined with this adversary proceeding. The Trustee will have to know how to address these alleged debts—and the outcome of this adversary proceeding will certainly provide the Trustee with relevant guidance.

Finally, the IDS Defendants float the idea that they might have a right to a jury trial "if they so choose"—the latter phrase carefully, but conspicuously, appended to their argument. The plaintiffs herein doubt very seriously that the IDS Defendants actually want a jury to decide the types of claims asserted in this case. Moreover, they have missed their opportunity to demand a jury pursuant to Fed. R. Civ. P. 38. Plus, if this is a core proceeding, they have no right to a jury trial, and if it is a "related" proceeding, the parties can agree to allow the bankruptcy court conduct the jury trial. *In re Mauldin*, 52 B.R. 838, 841 (Bankr. N.D. Miss. 1985).

---

deceased husband, J. Howard Marshall. He was 89 and she was 26 when they married for 14 months until his death. The son of Marshall filed a proof of claim in Smith's bankruptcy case asserting damages for defamation, and Smith filed her own counterclaim for defamation before she tragically died of a drug overdose at a casino in Florida at the age of 39.

**B.      There is no basis for mandatory withdrawal.**

The IDS Defendants agree that mandatory withdrawal is not required when resolution of

non-bankruptcy federal law claims require an application of well-settled law to fact and do not

require the bankruptcy court to "undertake analysis of significant open and unresolved issues

regarding the non-title 11 law." *Matter of Vicars*, 96 F.3d at 953-54. The IDS Defendants lose

their way, however, when they suggest that in this particular case, RICO is not well-settled. After

all, Congress enacted RICO in 1970, and courts have been settling the law for half a century.

The argument that RICO's roots in criminal law make the district court better qualified to

handle this matter than a bankruptcy judge is particularly ill-founded. RICO specifically defines

"racketeering activity" to include any offense involving fraud connected with a bankruptcy case.

18 U.S.C. § 1961(1)(D). And district courts commonly maintain the reference of RICO cases to

bankruptcy courts.[5] *In re Adelphi Institute, Inc.*, 112 B.R. 534 (S.D. N.Y. 1990); *Alix v.*

*McKinsey & Co., Inc.*, 24 F.4th 196 (2d Cir. 2022); *In re Laventhol & Horwath*, 139 B.R. 109,

115 (S.D. N.Y. 1992); *In re Auto Specialties Mfg. Co.*, 134 B.R. 227, 228-29 (W.D. Mich. 1990).

Suffice to say, the bankruptcy court in which this adversary proceeding is pending is plenty

capable of handling a RICO case, and any suggestion to the contrary is specious and impertinent.

Finally, in what might be characterized as rather granular analysis, the IDS Defendants

assert that they cannot find "a single case" where a purported "Revenue Purchase Agreement"

---

[5] The IDS Defendants accuse the plaintiffs of attempting to "evade" the RICO pleading requirements of L.U. Civ. R. 83.8(a) and suggest, in conclusory and general terms, that this has left them in some sort of nebulous "disadvantage" in this litigation. To be clear, the FAC in this case is fully compliant with Fed. R. Bankr. P. 7009, which incorporates Fed. R. Civ. P. 9 (which requires fraud to be pled with particularity) and Fed. R. Bankr. P. 7008, which incorporates Fed. R. Civ. P. 8 and which provides that a complaint is sufficiently detailed if it provides a short and simple description of the factual basis supporting an allegation of fraud. Bankruptcy courts also afford greater pleading liberality in RICO actions. *See In re Ahead by a Length, Inc.*, 100 B.R. 157, 166 (Bankr. S.D. N.Y. 1989) (stating in a RICO adversary proceeding that "[a] strict interpretation of Rule 9(b) in circumstances where the details of the scheme are peculiarly within the knowledge of the defendants would be inappropriate.").

Case 4:01-cv-00025-DMB-JMV Doc #: 90 Filed: 02/24/25 1 of 11 PageID #: 117
Case 4:01-cv-00025-DMB-JMV Doc #: 90 Filed: 02/24/25 Page 10 of 11 Desc Main
Document    Page 10 of 11

was characterized as a loan and/or as a predicate act for a RICO action; thus, they claim these

issues present a matter of first-impression and are not "well-settled." Attention is directed to

*Hermes Hialeah Warehouse, LLC v. GFE NY, LLC*, 2023 WL 2230842 (S.D. Miss. February 24,

2023) where the Southern District of Mississippi considered a motion to dismiss a complaint

alleging RICO violations arising out of Merchant Agreements similar to those at issue here. (The

defendants' motion to dismiss was denied.) However, bankruptcy courts have also handled these

issues. *See In re Shoot the Moon*, 2019WL 342577 at *6 (Bankr. E.D. N.C. January 25, 2019)

(finding Merchant Cash Advance creditor, *which filed a proof of claim exactly like ISI,*

*Byzfunder, and Samson all did herein*, was judicially estopped from claiming that no antecedent

debt or claim exists in a fraud-based adversary proceeding centered on the same transaction).

WHEREFORE, PREMISES CONSIDERED, the plaintiffs respectfully request that the

Court deny the IDS Defendants' Motion to Withdraw Reference, and grant the plaintiffs any

further relief the Court may find warranted in the premises, whether general or specific.

Respectfully submitted,

JASON LITTRELL AND WILLIAM L. FAVA,
TRUSTEE FOR LITTCO METALS, LLC d/b/a LITTCO,
LLC, LITTCO METALS EQUIPMENT LEASING, INC.,
AND LITTCO METALS MANAGEMENT CO.

*/s/ Goodloe T. Lewis*
GOODLOE T. LEWIS, MSB #9889
LAWRENCE J. TUCKER, JR., MSB #100869
BRIAN A. CLARK, MSB #100736
Hickman, Goza & Spragins, PLLC
P.O. Drawer 668
Oxford, MS 38655
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
glewis@hickmanlaw.com
ltucker@hickmanlaw.com
bclark@hickmanlaw.com

**CERTIFICATE OF SERVICE**

I, Goodloe T. Lewis of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do

hereby certify that I have, this date, filed the above with the Court and delivered a copy to all

parties requesting notice by using the ECF filing system.

DATE: February 24, 2025

/s/ Goodloe T. Lewis
GOODLOE T. LEWIS