UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JASON LITTRELL, LITTCO, LLC,
AND WILLIAM L. FAVA, TRUSTEE
FOR LITTCO METALS, LLC                                      PLAINTIFFS

V.                                                Case No.: 25-cv-00025-GHD-DAS

TYLER BURGESS; TONIA ETOH;
INTERNATIONAL DEVELOPMENT
SERVICES, INC.; ET AL.                                     DEFENDANTS

## RICO STATEMENT

COME NOW, Plaintiffs Jason Littrell, Littco, LLC ("Littco"), and William L. Fava,

Trustee for Littco Metals, LLC ("Littco Metals"), and file this RICO Statement pursuant to

L.U.Civ.R. 83.8 based upon the information currently in the possession of Plaintiffs. Given

the fraudulent, deceptive, and secretive nature of Defendants' conduct, additional relevant

information may only become available through discovery. Accordingly, Plaintiffs reserve

the right to amend this RICO Statement after or during the course of discovery.

### (1) Whether the conduct is in violation of 18 U.S.C. §1962(a), (b), (c), and/or (d):

As set forth herein, and in Plaintiff's Second Amended Complaint ("SAC"), Plaintiffs

allege violations of 18 U.S.C. §1962(a), (b), (c), and (d). A pattern of racketeering activity is

at issue. Several Defendants have participated in this activity for years. To further this

enterprise, numerous persons and entities have joined forces and established an association-

in-fact enterprise. *See* 18 U.S.C. § 1961(4). The association-in-fact enterprise is driven by

mutual gain and held together by loan brokers who work with the "IDS Defendants,"[1] but

receive commissions ("kickbacks") from the Merchant Cash Advance ("MCA") Defendants.[2]

---

[1] The IDS Defendants are Tyler Burgess, Tonya Etoh, International Development Services,
Inc. ("IDS"), International Services, Inc. ("ISI"), TAVAS, LLC ("TAVAS"), Penhurst Capital, Inc.

The history of the racketeering activity at issue begins with John Burgess, the father of Tyler Burgess and Tonia Etoh. For many years, John Burgess operated International Profit Associates, Inc. ("IPA"), an entity that employed dishonest methods to convince potential clients to enter into worthless business consulting agreements. The methods employed by IPA included, trickery, deceit, chicanery, and/or overreaching in violation of 18 U.S.C. §1962(c). Litigation and reporting reveals IPA engaged in these illicit practices for years.[3]

Burgess and Etoh have followed in their father's footsteps, rebranding IPA and carrying out a similar pattern of racketeering activity. The rebranded IPA includes IDS and ISI, which now employ a substantially similar scheme as the one formerly used by IPA. The only apparent difference between the schemes is that Burgess and Etoh have incorporated a new element: MCA loans. The use of predatory and usurious MCA loans is now a core component of the racketeering activity engaged in by the IDS Defendants.

The scheme involves persons and entities conspiring to pressure target businesses to pay for worthless or non-existent services; convincing business owners that MCA loans will solve real or fabricated financial issues (when they are primarily used to pay fees to the IDS Defendants); and creating an opportunity for fraudulent conduct similar to churning.[4] Once the process begins, it is repeated again and again until the target business is bankrupted, taken over, has its assets diverted into a new IDS-controlled company, or is outright sold for

---

("Penhurst"), Tim Willits, Nathan Free, Jerrold Weissberg, Robert Legon, Bruce Bush, Dale Johnson, James Peters, certain John and Jane Does, and certain Doe Entities.

[2] The MCA Defendants are Byzfunder NY, LLC ("Byzfunder"), NewCo Capital Group IV, LLC ("NewCo"), Mehandi Vakil, Wise Venture, LLC ("Wise"), Steven Markowitz, Jr., Samson, MCA, LLC ("Samson"), Cloudfund, LLC ("Cloudfund"), Unique Funding Solutions, LLC ("Unique"), Yaakov Winograd, Prosperum Capital Partners, LLC ("Prosperum"), certain John and Jane Does, and certain Doe Entities.

[3] *See, e.g., Amari Co., Inc. v. Burgess*, 955 F.Supp.2d 868 (N.D. Ill. 2013). *See also* Joseph Rosenbloom, *I'm John Burgess. I'm Here to Help You.*, INC., June 1, 2000 (attached hereto as **Ex. A**).

[4] "Churning" is a deceptive practice that can lead to significant losses for investors. It occurs when a broker with control over an account engages in trading that is excessive in light of the client's investment objectives with the intent to defraud or with willful and reckless disregard for the client's interests. *See, e.g., Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523 (5th Cir. 1987).

whatever limited value remains, if any. In most cases, the individuals that originally owned the target businesses are left destitute with enormous debt.

The MCA Defendants are eager co-conspirators in this enterprise despite knowing, at the end of the churn, one of them may be left holding the proverbial bag. In this sense, the churn is not unlike a game of musical chairs wherein each MCA lender hopes to secure a seat in the circle (i.e., obtain full repayment with tremendous interest) before the needle is lifted off the record. By repeating this process many times with many different targets, the MCA Defendants increase the odds of winning more than they lose. The MCA Defendants are fully aware of the fraudulent nature of their enterprise, and the association-in-fact enterprise.

The separate enterprises engaged in by the IDS Defendants and the MCA Defendants, and their common association-in-fact enterprise, violate §1962(a), (b), (c), and (d). State and federal actions have been filed against at least some of the IDS Defendants for substantially similar acts. In addition, suits and countersuits for fraud and usury have been filed against at least some of the MCA Defendants. Entities like IDS and ISI which engage in fraudulent schemes, and MCA lenders which attempt to disguise predatory and usurious loans as purchases of receivables, can be RICO violators under the relevant law.[5]

**(2) The named defendants, alleged misconduct, and basis of liability of each defendant:**

<u>IDS DEFENDANTS</u>

The IDS Defendants may be divided into two categories, the "IDS Entities" and the "IDS Individuals." The IDS Entities include: IDS, ISI, TAVAS, Penhurst, and certain Entity Does. The IDS Individuals include: Burgess, Etoh, Willits, Free, Weissberg, Legon, Bush, Johnston, Peters, and certain John and Jane Does.

---

[5] *See, e.g., Amari Co. v. Burgess*, No. 07-C-1425, 2007 WL 4292885 (N.D. Ill. Dec. 4, 2007) (denying motion to dismiss brought by RICO defendants including John Burgess and Tyler Burgess) (attached hereto as **Ex. B**); *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp.3d 402 (S.D.N.Y. 2022).

IDS Entities

The IDS Entities are seemingly separate business enterprises that are actually all owned, operated, managed, or otherwise controlled by Burgess and Etoh. Burgess and Etoh use these enterprises (and the resulting association-in-fact enterprise) to carry on and conduct a pattern of racketeering activity. This activity begins by identifying and soliciting a target business, in this case the Littco Companies. Once identified, the actors fraudulently induce the target business and its owner (Littrell) to enter into a contract for services IDS has no intention of performing, no ability to reliably provide, and that are in fact worthless.

As the target business is bled for fees, the IDS Entities increase their profits by accepting undisclosed brokerage fees from MCA lenders. They misrepresent the financial status of the target business and its ability to obtain traditional funding; and manipulate its books through fraudulent and misleading Cash Management Reports ("CMRs") or otherwise. Their end goal is to bleed the target business until it is bankrupted, restructured, taken over, has its assets diverted into a new IDS-controlled company, or is liquidated.

The IDS Entities perpetrated at least the following acts of racketeering, which include the collection and reinvestment of fraudulently obtained fees and funds IDS derived from payments made by the Littco Companies to service predatory and usurious MCA loans:

- **IDS:** Burgess and Etoh are owners and officers of IDS. They, along with IDS, benefited from the pattern of racketeering activity at issue by receiving fees paid by the Littco Companies for worthless or non-existent services, as well as brokerage fees paid to them by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans. These fees were then reinvested in the unlawful enterprise(s) at issue.

- **ISI:** Burgess and Etoh are owners and officers of ISI. They, along with ISI, benefited from the pattern of racketeering activity at issue by receiving fees paid by the Littco

4

Companies for worthless or non-existent services, as well as brokerage fees paid to them by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans. These fees were then reinvested in the unlawful enterprise(s) at issue.

- **TAVAS:** Burgess and Etoh are managing members of TAVAS. TAVAS provides legal, accounting, tax and other advisory services. In addition to legitimate services, agents of TAVAS (e.g., Legon) conspire with Burgess, Etoh, IDS, ISI, and others to commit the scheme described in the SAC. Agents of TAVAS (e.g., Chris Ryan) draft the documents used by the IDS Defendants when creating new entities to control of the assets of a target business, or when attempting to takeover or restructure a target business, as occurred here. Burgess, Etoh, Legon, IDS, ISI, TAVAS and others benefited from the racketeering activity at issue by receiving fees for worthless or non-existent services, as well as brokerage fees paid by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans. These fees were then reinvested in the unlawful enterprise(s) at issue.

- **Penhurst:** Burgess and Etoh control Penhurst and represented on November 14, 2022 that Penhurst was making a $1,000,000 investment in Littco Metals when, in fact, Burgess, Etoh, Bush, Johnston, IDS, ISI, Penhurst, and others were attempting an unlawful takeover of Littco Metals and its assets through the use of converted funds. The converted funds were obtained from fees for worthless or non-existent services, as well as brokerage fees paid by the MCA Defendants from funds the Littco Companies received from the usurious MCA loans. These funds were then reinvested in the unlawful enterprise(s) at issue.

IDS Individuals

The IDS Individuals are officers, members, managers, employees, representatives, agents, or co-conspirators of the IDS Entities. The IDS Individuals work for or with the IDS Entities to carry on and conduct a pattern of racketeering activity. This activity begins by

identifying and soliciting a target business, in this case Littco Metals. Once identified, the actors fraudulently induce the target business and its owner to enter into a contract for services IDS has no intention of performing and no ability to reliably provide.

As the target business is bled for fees, the IDS Individuals increase their profits by accepting undisclosed brokerage fees from MCA lenders. They misrepresent the financial status of the target business and its ability to obtain traditional funding, and manipulate its books through fraudulent and misleading CMRs or otherwise. Their end goal is to bleed the target business until it is bankrupted, restructured, taken over, has its assets diverted into a new IDS-controlled company, or is liquidated.

The IDS Individuals perpetrated at least the following acts of racketeering, which include the collection and reinvestment of fraudulently obtained fees and funds derived from payments made by the Littco Companies to service predatory and usurious MCA loans:

- **Tyler Burgess:** On and before November 1, 2021, Burgess directed others, including Willits, Free, and Weissberg, to employ dishonest methods to obtain a contract with Littrell and the Littco Companies. These methods included trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). Among other things, Burgess directed Willits, Free, and Weissberg to provide a false money-back assurance to Littrell and the Littco Companies, and to misrepresent, if they followed all advice received from IDS, they would earn twice the cost of IDS's services or receive 100% of their money back. Burgess knew IDS had no intention of performing, and no ability to reliably provide the promised services.

On and before February 17, 2022, Burgess directed others including, Free, Weissberg, and Johnston to incorporate two entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by

agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On or about October 26, 2022, Burgess directed and oversaw the establishment of a new bank account for Littco Metals Management Co. The account was to serve as a depository for payroll, tax funds, and funds received via wire from MCA loans. The account was described as "security against a company sweeping the [Littco Metals] account of all monies," but its real purpose was to collect and reinvest fraudulently obtained fees (e.g., undisclosed brokerage fees paid by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans) by placing these funds in the account of an IDS-controlled entity.

On or about November 14, 2022, at a meeting in Arlington Heights, Illinois, Burgess misrepresented a $1,000,000 investment by Penhurst would be made in Littco Metals. Three days later, on November 17, 2022, at 2:02 p.m. EST, Burgess perpetrated wire fraud by use of an international wire transfer of $1,038,915.29 from ISI to the bank account of Littco Metals Management Co. The funds were not an investment in Littco Metals as represented and were kept from the control of Littrell as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **Tonia Etoh:** On and before November 1, 2021, Etoh directed others, including Willits, Free, and Weissberg, to employ dishonest methods to obtain a contract with Littrell and the Littco Companies. These methods included trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). Among other things, Etoh directed Willits, Free, and Weissberg to provide a false money-back assurance to Littrell and the Littco Companies, and to misrepresent, if they followed all advice received from IDS, they would earn twice the cost of IDS's services or receive 100% of their money back. Etoh knew IDS had no intention of performing, and no ability to reliably provide the promised services.

7

On and before February 17, 2022, Etoh directed others including, Free, Weissberg, and Johnston to incorporate two entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On or about October 26, 2022, Etoh directed and oversaw the establishment of a new bank account for Littco Metals Management Co. The account was to serve as a depository for payroll, tax funds, and funds received via wire from MCA loans. The account was described as "security against a company sweeping the [Littco Metals] account of all monies," but its real purpose was to collect and reinvest fraudulently obtained fees (e.g., undisclosed brokerage fees paid by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans) by placing these funds in the account of an IDS-controlled entity.

On or about November 14, 2022, at a meeting in Arlington Heights, Illinois, Etoh misrepresented a $1,000,000 investment by Penhurst would be made in Littco Metals. Three days later, on November 17, 2022, at 2:02 p.m. EST, Etoh perpetrated wire fraud by use of an international wire transfer of $1,038,915.29 from ISI to the bank account of Littco Metals Management Co. The funds were not an investment in Littco Metals as represented and were kept from the control of Littrell as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **Tim Willits:** On and before November 1, 2021, Willits employed dishonest methods to obtain a contract with Littrell and the Littco Companies. These methods included trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). Among other things, Willits provided a false money-back assurance to Littrell on and after November 1, 2021, and

repeatedly misrepresented, if he followed all advice received from IDS, he would earn twice the cost of IDS's services or receive 100% of his money back. Willits knew IDS had no intention of performing the contract, and no ability to reliably provide the promised services.

- **Nathan Free:** On and before November 1, 2021, Free employed dishonest methods to obtain a contract with Littrell and the Littco Companies. These methods included trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). Among other things, Free provided a false money-back assurance to Littrell on and after November 1, 2021, and repeatedly misrepresented, if he followed all advice received from IDS, he would earn twice the cost of IDS's services or receive 100% of his money back. Free knew IDS had no intention of performing, and no ability to reliably provide the promised services.

On and before February 17, 2022, Free participated in a scheme to establish two new entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On or about April 29, 2022, Free participated in the negotiation of an equipment lease with NSF Leasing, Inc. on behalf of Littco Metals. As part of this transaction, two predatory and usurious MCA loans were paid off and rolled into the lease, causing the effective interest rates for these loans to skyrocket. Free received commissions or kickbacks from these loans.

On or about October 26, 2022, Free participated in the establishment of a new bank account for Littco Metals Management Co. The account was to serve as a depository for payroll, tax funds, and funds received via wire from MCA loans. The account was described as "security against a company sweeping the [Littco Metals] account of all monies," but its real purpose was

to collect and reinvest fraudulently obtained fees (e.g., undisclosed brokerage fees paid by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans) by placing these funds in the account of an IDS-controlled entity.

- **Jerold Weissberg:** On and before November 1, 2021, Weissberg employed dishonest methods to obtain a contract with Littrell and the Littco Companies. These methods included trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). Among other things, Weissberg provided a false money-back assurance to Littrell on and after November 1, 2021, and repeatedly misrepresented that if he followed all advice received from IDS he would earn twice the cost of IDS's services or receive 100% of his money back. Weissberg knew IDS had no intention of performing, and no ability to reliably provide the promised services. What "services" were provided were in fact worthless.

On and before February 17, 2022, Weissberg participated in a scheme to establish two new entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On or about April 29, 2022, Weissberg participated in the negotiation of an equipment lease with NSF Leasing, Inc. on behalf of Littco Metals. As part of this transaction, two predatory and usurious MCA loans were paid off and rolled into the lease, causing the effective interest rates for these loans to skyrocket. Weissberg received commissions or kickbacks from these loans.

On or about October 26, 2022, Weissberg participated in the establishment of a new bank account for Littco Metals Management Co. The account was to serve as a depository for payroll,

tax funds, and funds received via wire from MCA loans. The account was described as "security against a company sweeping the [Littco Metals] account of all monies," but its real purpose was to collect and reinvest fraudulently obtained fees (e.g., undisclosed brokerage fees paid by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans) by placing these funds in the account of an IDS-controlled entity.

On and after November 17, 2022, Weissberg attempted to use Littco Metals Management Co. and its separate bank account as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **Robert Legon:** Following the execution of the initial engagement on November 1, 2021, Legon, an agent of TAVAS, falsely represented to Littrell that he would conduct an evaluation of the Quickbooks system utilized by the Littco Companies to determine whether it should be updated or modified, and actually complete any such updates or modifications. Legon either did not intend to complete this project or knew he was incapable of doing so.

On or about December 1, 2021, and again on December 8, 2021, Legon manipulated CMRs for the purpose of convincing Littrell and the Littco Companies that MCA loans were the only solution to problems supposedly identified by the manipulated CMRs. His supposed review of the Quickbooks system interminably continued with no apparent progress.

On or before January 12, 2022, Legon manually manipulated a balance sheet for the purpose of financing a new equipment purchase which occurred on or about January 28, 2022, and to make the Littco Companies appear more attractive to MCA lenders. Throughout February 2022, Legon manually manipulated the books of the Littco Companies and failed to complete his review of the Quickbooks system. On or about February 16, 2022, Legon was instrumental in the acquisition of an additional usurious MCA loan. Legon received commissions or kickbacks from these loans.

11

On or about April 29, 2022, Legon participated in the negotiation of an equipment lease with NSF Leasing, Inc. on behalf of Littco Metals. As part of this transaction, two predatory and usurious MCA loans were paid off and rolled into the lease, causing the effective interest rates for these loans to skyrocket. Legon received commissions or kickbacks from these loans.

- **Bruce Bush:** On and before February 17, 2022, Bush participated in a scheme to establish two new entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On and after November 17, 2022, Bush attempted to use Littco Metals Management Co. and its separate bank account as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **Dale Johnston:** On and before February 17, 2022, Johnston participated in a scheme to establish two new entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., to survive any prospective bankruptcy and provide a place to silo funds outside the reach of legitimate creditors. This was accomplished with documents prepared by agents of TAVAS, and was ultimately intended to provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete a takeover.

On and after November 14, 2022, Johnston attempted to use Littco Metals Management Co. and its separate bank account as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **James Peters:** On and before November 3, 2021, and for the following twelve months, Peters is believed to have located and brokered every usurious MCA loan identified in the SAC and herein. Peters received commissions or kickbacks from these loans. In addition, on November 17, 2022, at 2:02 p.m. EST, Peters perpetrated wire fraud by use of an international wire transfer of $1,038,915.29 from ISI to the bank account of Littco Metals Management Co. The funds were not an investment in Littco Metals as represented and were kept from the control of Littrell as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS, and ISI.

- **John and Jane Does:** Officers, members, managers, employees, representatives, agents, or co-conspirators of the IDS Defendants who are not currently known are identified in the SAC only as "John and Jane Does." Plaintiffs expect to obtain the identities of these persons in discovery and then be in a position to seek leave to name them as defendants in this case. Plaintiffs expect substantially similar allegations to be made against each of these persons as have been made against Willits, Free, Weissberg, Legon, Bush, Johnston, and Peters.

MCA DEFENDANTS

The MCA Defendants may be divided into two categories, the "MCA Entities" and the "MCA Individuals." The MCA Entities include: Byzfunder, NewCo, Wise, Samson, Cloudfund, Unique, Prosperum, and certain Entity Does. The MCA Individuals include: Vakil, Markowitz, Winograd, and certain John and Jane Does.

MCA Entities

The MCA Entities solicit, underwrite, fund, and collect predatory and usurious loans. Among other things, the loan agreements purport to provide the MCA Entities with an absolute entitlement to repayment, and indicate the principal sum advanced by each MCA Entity is repayable absolutely. These agreements also include default and escalation clauses

that purport to permit seizure of collateral in the event of default, as well as personal guaranty provisions which, if enforced, would effectively shield the MCA Entities from the risk of loss if the target business were forced into bankruptcy or liquidation.

In this case, the MCA Entities (a) located, solicited, and coordinated with undisclosed brokers among the IDS Defendants; (b) targeted Littrell and the Littco Companies; (c) offered funding to Littrell and the Littco Companies on unlawful and fraudulent terms; (d) provided predatory and usurious loans to Littrell and the Littco Companies; and (e) attempted to disguise their predatory and usurious loans as purchases of receivables, all in furtherance of their own enterprises and a common enterprise with the IDS Defendants.

The MCA Entities perpetrated at least the following acts of racketeering, which include the collection and reinvestment of payments made by the Littco Companies to service predatory and usurious MCA loans:

- Byzfunder offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about November 3, 2021, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Byzfunder paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Newco offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about December 17, 2021, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. NewCo paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Wise offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about February 16, 2022, funded it with a wire transfer, and thereafter took ACH

withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Wise paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Wise offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about April 25, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Wise paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Wise offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about May 3, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Wise paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Samson offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about June 9, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Samson paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Cloudfund offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about September 9, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Cloudfund paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Prosperum offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about October 3, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Prosperum paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

- Unique offered a predatory and usurious MCA loan to Littrell and the Littco Companies on or about October 3, 2022, funded it with a wire transfer, and thereafter took ACH withdrawals in satisfaction of this unlawful debt from the operating account of Littco Metals. Unique paid undisclosed brokerage fees to Burgess, Etoh, Peters, IDS, ISI, and/or other IDS Defendants as part of this transaction.

<u>MCA Individuals</u>

The MCA Individuals are officers, members, managers, employees, representatives, agents, or co-conspirators of the MCA Entities. They create, approve, and implement the policies, practices, and instrumentalities utilized by the MCA Entities they control to further the goals and purposes of their separate enterprises and their association-in-fact enterprise with the IDS Defendants by (a) manipulating contract forms to disguise predatory and usurious loans as purchases of receivables to avoid usury laws and conceal the collection of unlawful debts; (b) set the amount, repayment period, and terms of predatory and usurious loans; (c) establish the method of collecting payments via ACH withdrawals; and (d) establish new aliases and/or new entities to avoid legal liability for unlawful conduct. All such activities in this case were conducted for the purpose of making and collecting unlawful loans, and occurred on the dates and times identified in the SAC and herein.

The MCA Individuals perpetrated at least the following acts of racketeering, which include the collection and reinvestment of payments made by the Littco Companies to service predatory and usurious MCA loans:

- **Mehandi Vakil (aka Mehdi Vakil):** Vakil is responsible for the daily operations of Wise, and has the final say on all of its decisions including, which MCA loans it funds, how it funds them, and on what terms. Vakil, or others acting at his direction, sought to accomplish the goals and purposes of the Wise enterprise and its association-in-fact enterprise with the IDS Defendants by setting the terms of three MCA loans made to Littrell and the Littco Companies, transferring the funds associated with those loans by wire, and collecting the amounts due on those loans through ACH withdrawals. Vakil benefited from the Wise enterprise and its association-in-fact enterprise with the IDS Defendants through a salary, bonuses, profits, or other distributions from Wise.

- **Steven Markowitz, Jr.:** Markowitz is responsible for the daily operations of Samson, and has the final say on all of its decisions including, which MCA loans it funds, how it funds them, and on what terms. Markowitz, or others acting at his direction, sought to accomplish the goals and purposes of the Samson enterprise and its association-in-fact enterprise with the IDS Defendants by setting the terms of an MCA loan made to Littrell and the Littco Companies, transferring the funds associated with that loan by wire, and collecting the amounts due on that loan through ACH withdrawals. Markowitz benefited from the Samson enterprise and its association-in-fact enterprise with the IDS Defendants through a salary, bonuses, profits, or other distributions from Samson.

- **Yaakov Winograd (aka Jake Winograd):** Winograd is responsible for the daily operations of Unique, and has the final say on all of its decisions including, which MCA loans it funds, how it funds them, and on what terms. Winograd, or others acting at his

direction, sought to accomplish the goals and purposes of the Unique enterprise and its association-in-fact enterprise with the IDS Defendants by setting the terms of an MCA loan made to Littrell and the Littco Companies, transferring the funds associated with that loan by wire, and collecting the amounts due on that loan through ACH withdrawals. Winograd benefited from the Unique enterprise and its association-in-fact enterprise with the IDS Defendants through a salary, bonuses, profits, or other distributions from Unique.

- **John and Jane Does:** Officers, members, managers, employees, representatives, agents, or co-conspirators of the MCA Defendants who are not currently known are identified in the SAC only as "John and Jane Does." Plaintiffs expect to obtain the identities of these persons in discovery and then be in a position to seek leave to name them as defendants in this case. Plaintiffs expect substantially similar allegations to be made against each of these persons as have been made against Vakil, Markowitz, and Winograd

**(3) All alleged wrongdoers, other than the defendants listed above, and the alleged misconduct of each such wrongdoer:**

Due to the fraudulent, deceptive, and secretive nature of Defendants' conduct, Plaintiffs may be unable to reliably identify all wrongdoers at this time. However, in addition to the defendants named in the SAC, Plaintiffs were contacted by an IDS employee, agent, or representative named "Terry" in late-October 2021. Terry flew in from Illinois to describe the services IDS could supposedly provide, and to assist Willits, Free, and Weissberg in their efforts to fraudulently induce Littrell and the Littco Companies into contracting for services IDS had no intention of performing and no ability to reliably provide.

In addition, Plaintiffs would state that Johnston appears to be the owner of a business called Ascend Special Services; however, it is currently unknown whether he was acting on behalf of this entity at any relevant time. Likewise, it is currently unclear whether SMS-NA,

LLC, another entity controlled by Burgess and Etoh, which is located at the same Arlington Heights, Illinois address as ISI and TAVAS, had any involvement in the underlying events.

Finally, Plaintiffs would state that they are currently unable to identify the principals of Byzfunder, NewCo, Cloudfund, and Prosperum, despite reasonable diligence. Plaintiffs expect to receive this information in discovery and intend to thereafter seek leave to amend to add these persons as individual defendants in this action.

**(4) The alleged victims and how each was allegedly injured:**

Littrell, Littco, and Littco Metals are all victims that suffered injuries. The injuries were in the nature of conversion and loss of money, property, company shares, and profit from future business dealings, along with damage to credit, emotional distress, and other damages to be shown at trial. In addition, the business clients and legitimate creditors of Littrell, Littco, and Littco Metals are victims that suffered injuries as reflected in the claims they filed in the underlying bankruptcies of Littrell and/or Littco Metals.[6]

**(5) The pattern of racketeering activities or collection of unlawful debt alleged for each RICO claim:**

(A) <u>The alleged predicate acts and specific statutes that were allegedly violated</u>:

As described and discussed in the SAC, Burgess, Etoh, IDS, ISI, and TAVAS orchestrated a business consulting scheme with a debt trap component from their headquarters in Arlington Heights, Illinois. Acts in furtherance of this scheme are identified in the SAC and herein, and include interstate travel from Illinois to Mississippi by agents or employees of Burgess, Etoh, IDS, ISI, and TAVAS as part of the subject scheme to defraud.

The racketeering activities of the IDS Defendants include, without limitation, scheming to deprive Littrell and the Littco Companies of the right to honest services, and to

---

[6] The bankruptcy filed by Littco Metals, LLC in the U.S. Bankruptcy Court for the Northern District of Mississippi is Case No. 23-100069-SDM; and the bankruptcy filed by Jason Littrell in the U.S. Bankruptcy Court for the Northern District of Mississippi is Case No. 23-10094-SDM.

be free from extortionate credit transactions and mail fraud under and pursuant to 18 U.S.C. §1341; to be free from wire fraud under and pursuant to 18 U.S.C. §1343; and to be free from unlawful debt collection, usury, an attempted takeover facilitated by proceeds obtained from fraudulent fees and payments on predatory and usurious MCA loans, racketeering activity, and the aiding and abetting of racketeering activity as defined by 18 U.S.C. §1961(1). The violated statutes include: 18 U.S.C. §1962 (a), (b), (c), and (d); 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §2314; N.Y. Penal Law §190.40; and Miss. Code §§75-17-1, *et seq.*

(B) <u>The dates of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act</u>:

The MCA Defendants routinely provide predatory and usurious MCA loans and attempt to disguise them as purchases of receivables. They routinely violate §1962(a) and (c) as the business model of the entities is designed and intended to facilitate the issuance and collection of predatory and usurious loans. The MCA Defendants also conspired with the IDS Defendants in violation of §1962(d), for the purpose of conducting racketeering activity and collecting unlawful debts in violation of §1962(a), (c), and (d). The MCA Defendants and IDS Defendants constitute an association-in-fact enterprise for purposes of RICO. The separate enterprises conducted by these defendants and their association-in-fact enterprise are headquartered in states other than Mississippi and, at least with regard to the IDS Defendants, involved interstate travel from Illinois to Mississippi as part of a scheme to defraud.

The following acts of predicate acts were committed by the identified participants:

- **On or about October 26, 2021:** Burgess, Etoh, and Willits committed a predicate act under §1962(a) on or about October 26, 2021 when Willits placed a "cold call" (at Burgess and Etoh's direction) to Littrell by telephone and falsely described the sorts of business

20

management and consulting services IDS was allegedly prepared to provide. Willits knew IDS had no intention of performing these services, and no ability to reliably provide them.

- **On or about October 27, 2021:** Willits committed a predicate act under §2314 when (at Burgess and Etoh's direction) he traveled from Illinois to the West Point, Mississippi offices of Littrell and the Littco Companies where he continued to falsely tout the sorts of business management and consulting services IDS could purportedly provide. Willits knew IDS had no intention of performing these services, and no ability to reliably provide them.

- **On or about October 28, 2021:** "Terry" committed a predicate act under §2314 when (at Burgess and Etoh's direction) he traveled from Illinois to the West Point, Mississippi offices of Littrell and the Littco Companies. As part of scheme to defraud Littrell and the Littco Companies, "Terry" falsely claimed IDS could improve their business operations. After a quick review of the books, he claimed Littrell was "running a ten-million-dollar company that was acting like a one-million-dollar company."

- **On or about October 29, 2021:** Free and Weissberg committed a predicate act under §2314 when (at Burgess and Etoh's direction) they traveled from Illinois to the West Point, Mississippi offices of Littrell and the Littco Companies. As part of scheme to defraud Littrell and the Littco Companies, Free and Weissberg offered Littrell a false assurance: If he retained IDS and followed all of its advice, the Littco Companies would make twice the amount IDS charged for its services or receive a full refund.

- **November 1, 2021:** Burgess, Etoh, Willits, Free, Weissberg, IDS, and ISI committed a predicate act under §1962(a) on November 1, 2021 when they fraudulently induced Littrell and the Littco Companies to enter into a contract for services IDS had no intention of performing, and no ability to reliably provide. Funds to pay for this engagement were obtained from a predatory and usurious MCA loan from Byzfunder, which was obtained by

Littrell and the Littco Companies at the direction of the IDS Defendants. Byzfunder wired the funds to Littco Metals on or shortly after November 3, 2021, and a portion of the funds were then wired to IDS. Relevant communications were by wire, mail, and/or email.

- **November 2, 2021:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, and TAVAS committed a predicate act under §1962(a) and (d) beginning on or about November 2, 2021, and continuing until at least November 14, 2021. They did so by providing inaccurate, unreliable, and ultimately fraudulent CMRs and Value Enhancement Reports ("VERs") to create the appearance that Littrell and the Littco Companies needed to take out predatory and usurious MCA loans to solve purported cash flow issues. Relevant communications were by wire, mail, and/or email.

- **November 2, 2021:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, and TAVAS committed a predicate act under §1962(a) and (d) beginning on or about November 2, 2021, and continuing until at least November 14, 2022. They did so by fraudulently recommending and facilitating each of the predatory and usurious MCA loans at issue. One or more IDS Defendants received undisclosed and fraudulent brokerage fees as a result of these transactions. Relevant communications were by wire, mail, and/or email.

- **November 3, 2021:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, and Byzfunder committed a predicate act under §1962(a) and (d) on or about November 3, 2021, when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Byzfunder. Byzfunder wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **December 17, 2021:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, NewCo, and Vakil committed a predicate act under §1962(a) and (d) on or about December 17, 2021, when they fraudulently induced Littrell and the Littco Companies to

enter into a predatory and usurious MCA loan with NewCo. NewCo and Vakil wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **January 12, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, and TAVAS committed a predicate act under §1962(a) and (d) on or about January 12, 2022, when they fraudulently induced Littrell and the Littco Companies to make capital investments in machinery which were designed to defraud Littrell and the Littco Companies by increasing debt service obligations to the point where additional MCA loans would be required. Funds associated with this transaction were transferred by wire. Relevant communications were by wire, mail, and/or email.

- **February 1, 2022:** Burgess, Etoh, Free, Weissberg, IDS, and ISI committed a predicate act under §1962(a) on or about February 1, 2022 when they fraudulently induced Littrell and the Littco Companies into extending the initial engagement with IDS. Funds to pay for this extension were obtained from an MCA loan from Wise. Wise wired the funds to Littco Metals on or shortly after February 16, 2022, and a portion of the funds were then wired to IDS. Relevant communications were by wire, mail, and/or email.

- **February 16, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, Wise, and Markowitz committed a predicate act under §1962(a) on or about February 16, 2022 when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Wise. Wise and Markowitz wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **February 17, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, and TAVAS committed a predicate act under §1962(b) on February 17, 2022 when using fees paid by the Littco Companies for worthless or non-existent services, as well as brokerage fees paid to the IDS Defendants by the MCA Defendants from funds the Littco Companies

23

used to service usurious MCA loans, to form two new entities, Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co., and place them under the control of IDS. Relevant communications were by wire, mail, and/or email.

- **March 1, 2022:** Burgess, Etoh, Free, Weissberg, IDS, and ISI committed a predicate act under §1962(a) on or about March 1, 2022 when they fraudulently induced Littrell and the Littco Companies into extending the initial engagement with IDS. Funds to pay for this extension were obtained from the previous MCA loan from Wise. Wise wired the funds to Littco Metals on or shortly after February 16, 2022, and a portion of the funds were then wired to IDS. Relevant communications were by wire, mail, and/or email.

- **April 1, 2022:** Burgess, Etoh, Free, Weissberg, IDS, and ISI committed a predicate act under §1962(a) on or about April 1, 2022 when they fraudulently induced Littrell and the Littco Companies into extending their initial engagement with IDS. Funds to pay for this extension were obtained from a second MCA loan from Wise. Wise wired the funds to the account of Littco Metals on or shortly after April 25, 2022, and a portion of the funds were then wired to IDS. Relevant communications were by wire, mail, and/or email.

- **April 25, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, Wise, and Markowitz committed a predicate act under §1962(a) on or about April 25, 2022 when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Wise. Wise and Markowitz wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **April 29, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, and TAVAS committed a predicate act under §1962(a) and (d) on or about April 29, 2022, when they fraudulently induced Littrell and the Littco Companies to enter into an equipment lease with NSF Leasing, Inc. As part of this transaction, two MCA loans were paid off and rolled

into the lease, causing the effective interest rates for these loans to skyrocket. Associated funds were transferred by wire. Relevant communications were by wire, mail, and/or email.

- **May 1, 2022:** Burgess, Etoh, Free, Weissberg, IDS, and ISI committed a predicate act under §1962(a) on or about May 1, 2022 when they fraudulently induced Littrell and the Littco Companies into extending their initial engagement with IDS. Funds to pay for this extension were obtained from a third MCA loan provided by Wise. Wise wired the funds to Littco Metals on or shortly after May 3, 2022. Littrell and the Littco Companies then wired a portion of the funds to IDS. Relevant communications were by wire, mail, and/or email.

- **May 3, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, Wise, and Markowitz committed a predicate act under §1962(a) on or about May 3, 2022 when they fraudulently arranged to pay off and "refinance" the first two MCA loans provided by Wise with funds received from a third predatory and usurious MCA loan provided by Wise. Wise transferred the funds, less the payoff amount, to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **June 9, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, and Samson committed a predicate act under §1962(a) on or about June 9, 2022, when they fraudulently arranged to pay off and "refinance" the equipment lease with NSF Leasing, Inc. with a predatory and usurious MCA loan provided by Samson. Samson wired the funds, less the payoff amount, to Littco Metals. Relevant communications were by mail and/or email.

- **July 25, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, and Byzfunder committed a predicate act under §1962(a) on or about July 25, 2022 when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Byzfunder. Byzfunder wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **September 9, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, and Cloudfund committed a predicate act under §1962(a) on or about September 9, 2022 when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Cloudfund. Cloudfund wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **October 3, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, and Prosperum committed a predicate act under §1962(a) on or about October 3, 2022, when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Prosperum. Prosperum wired the funds to Littco Metals. Relevant communications were by wire, mail, and/or email.

- **October 3, 2022:** Burgess, Etoh, Free, Weissberg, Legon, Peters, IDS, ISI, TAVAS, Unique, and Winograd committed a predicate act under §1962(a) on or about October 3, 2022, when they fraudulently induced Littrell and the Littco Companies to enter into a predatory and usurious MCA loan with Unique. Unique wired the funds Littco Metals. Relevant communications were by wire, mail, and/or email.

- **November 17, 2022:** Burgess, Etoh, Weissberg, Legon, Peters, Bush, Johnston, IDS, ISI, TAVAS, and Penhurst committed a predicate act under §1962(b) on November 17, 2022 when wiring proceeds obtained from fees paid by the Littco Companies for worthless or non-existent services, as well as brokerage fees paid to the IDS Defendants by the MCA Defendants from funds the Littco Companies used to service usurious MCA loans, into the account of Littco Metals Management Co. as part of a scheme to push Littrell out, and convert the assets and shares of Littco Metals for the benefit of Burgess, Etoh, IDS and ISI.

- **November 30, 2022:** Unique and Winograd committed a predicate act under §1962(c) on or about November 30, 2022 when Unique filed suit against Littrell and Littco Metals in New York in an attempt to collect a predatory and usurious MCA loan.

- **January 4, 2023:** Burgess, Etoh, and ISI committed a predicate act under §1962(c) on or about January 4, 2023 when ISI issued a Notice of Cure Default to Littrell and Littco Metals in an attempt to collect a predatory and usurious debt.

- **January 9, 2023:** Byzfunder committed a predicate act under §1962(c) on or about January 9, 2023 when it filed suit against Littrell, Littco, and Littco Metals in New York in an attempt to collect a predatory and usurious MCA loan.

- **January 18, 2023:** Byzfunder committed a predicate act under §1962(c) on January 18, 2023 when it filed a fraudulent proof of claim in the Littco Metals bankruptcy.

- **January 18, 2023:** Samson committed a predicate act under §1962(c) on January 18, 2023 when it filed a fraudulent proof of claim in the Littco Metals bankruptcy.

- **April 19, 2023:** Burgess, Etoh, and ISI committed a predicate act under §1962(c) on April 19, 2023 when ISI filed a fraudulent proof of claim in the Littco Metals bankruptcy.

(C) <u>The particular circumstances constituting fraud or mistake for RICO claims based on the predicate offenses of wire fraud and mail fraud including, the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made</u>:

The activities, representations, and dates identified in the SAC and herein fully satisfy the specificity requirements of Fed. R. Civ. P. (9)(b). Wires and mailings associated with the pattern of racketeering activity at issue occurred as follows:

- **On or about October 26, 2021:** At the direction of Burgess and Etoh, Willits placed a "cold call" to Littrell by telephone and falsely described the sorts of business management and consulting services IDS was allegedly prepared to provide, including that there was a

money-back guarantee should the IDS Defendants not double his income. IDS had no intention of performing the described services, and no ability to reliably provide them.

- **On or about October 27, 2021:** At the direction of Burgess and Etoh, Willits traveled to the offices of Littrell and the Littco Companies where he continued to falsely tout the services IDS could purportedly provide. Willits knew IDS had no intention of performing these services, and no ability to reliably provide them.

- **On or about October 28, 2021:** At the direction of Burgess and Etoh, "Terry" traveled to the offices of Littrell and the Littco Companies, and as part of scheme to defraud them falsely claimed IDS could improve their business operations. He claimed Littrell was "running a ten-million-dollar company that was acting like a one-million-dollar company."

- **On or about October 29, 2021:** At the direction of Burgess and Etoh, Free and Weissberg traveled to the offices of Littrell and the Littco Companies, and as part of scheme to defraud them offered a false assurance: If Littrell retained IDS and followed its advice, the Littco Companies would make twice the amount IDS charged or receive a full refund.

- **November 1, 2021:** At the direction of Burgess and Etoh, Free, and Weissberg fraudulently induced Littrell to enter into a contract for services IDS had no intention of performing, and no ability to reliably provide.

At the direction of Burgess and Etoh, Free, and Weissberg again provided a false money-back assurance to Littrell, and misrepresented, if he followed all advice received from IDS, he would earn twice the cost of IDS's services or receive 100% of his money back.

At the direction of Burgess and Etoh, Willits, Free, and Weissberg falsely represented to Littrell that his businesses would never qualify for financing from a traditional lender, and that an MCA loan would be the best means of paying for IDS's proposed services.

Associated MCA funds were wired to Littco Metals then to IDS.

28

- **November 2, 2021:** At the direction of Burgess and Etoh, Legon, an agent of TAVAS, falsely represented to Littrell that he would conduct an evaluation of the Quickbooks system utilized by the Littco Companies to determine whether it should be updated or modified, and actually complete any such updates or modifications. Legon either did not intend to complete this project or knew he was incapable of doing so.

- **November 3, 2021:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, and an unidentified agent of Byzfunder fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from an MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

An unidentified agent of Byzfunder falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Byzfunder were wired to Littco Metals.

- **December 17, 2021:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, Vakil, and an unidentified agent of NewCo fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

At the direction of Vakil, an unidentified agent of NewCo falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by NewCo were wired to Littco Metals.

- **January 12, 2022:** At the direction of Burgess and Etoh, Legon manually manipulated a balance sheet for the purpose of financing a new equipment purchase, and to make the Littco Companies appear more attractive to MCA lenders.

Funds associated with the purchase were wired to a dealer in Burt, Michigan on or about January 28, 2022.

- **February 1, 2022:** At the direction of Burgess and Etoh, Free and Weissberg fraudulently induced Littrell into extending the initial engagement with IDS.

At the direction of Burgess and Etoh, Free and Weissberg placed pressure on Littrell by claiming the money-back assurance he received would not apply unless he renewed the initial engagement and continued to follow all advice received from IDS.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

Associated MCA funds were wired to Littco Metals then to IDS.

- **February 16, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, Markowitz, and an unidentified agent of Wise fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

At the direction of Markowitz, an unidentified agent of Wise falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Wise were wired to Littco Metals.

- **March 1, 2022:** At the direction of Burgess and Etoh, Free and Weissberg fraudulently induced Littrell into extending the initial engagement with IDS.

At the direction of Burgess and Etoh, Free and Weissberg placed pressure on Littrell by claiming the money-back assurance he received would not apply unless he renewed the initial engagement and continued to follow all advice received from IDS.

Associated MCA funds were wired to Littco Metals then to IDS.

- **April 1, 2022:** At the direction of Burgess and Etoh, Free and Weissberg fraudulently induced Littrell into extending the initial engagement with IDS.

At the direction of Burgess and Etoh, Free and Weissberg placed pressure on Littrell by claiming the money-back assurance he received would not apply unless he renewed the initial engagement and continued to follow all advice received from IDS.

Associated MCA funds were wired to Littco Metals then to IDS.

- **April 25, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, Markowitz, and an unidentified agent of Wise fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

    At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

    At the direction of Markowitz, an unidentified agent of Wise falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

    The funds provided by Wise were wired to Littco Metals.

- **April 29, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that an equipment lease would enable the Littco Companies to overcome any temporary cash flow issues existing at the time.

    As part of this transaction, two predatory and usurious MCA loans were paid off and rolled into the lease, causing the effective interest rates for these loans to skyrocket.

    The funds provided by NSF Leasing, Inc. were wired to Littco Metals.

- **May 1, 2022:** At the direction of Burgess and Etoh, Free and Weissberg fraudulently induced Littrell into extending the initial engagement with IDS.

    At the direction of Burgess and Etoh, Free and Weissberg placed pressure on Littrell by claiming the money-back assurance he received would not apply unless he renewed the initial engagement and continued to follow all advice received from IDS.

32

Associated MCA funds were wired to Littco Metals then to IDS.

- **May 3, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, Markowitz and an unidentified agent of Wise fraudulently arranged to pay off and "refinance" two Wise MCA loans with funds received from a third Wise MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

At the direction of Markowitz, an unidentified agent of Wise falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Wise were wired to Littco Metals.

- **June 9, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, and an unidentified agent of Samson fraudulently arranged to pay off and refinance the equipment lease with NSF Leasing, Inc. with a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

An unidentified agent of Samson falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco

Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Samson were wired to Littco Metals.

- **July 25, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, and an unidentified agent of Byzfunder fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

An unidentified agent of Byzfunder falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Byzfunder were wired to Littco Metals.

- **September 9, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, and an unidentified agent of Cloudfund fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

An unidentified agent of Cloudfund falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that

the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Cloudfund were wired to Littco Metals.

- **October 3, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, and an unidentified agent of Prosperum fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

An unidentified agent of Prosperum falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Prosperum were wired to Littco Metals.

- **October 3, 2022:** At the direction of Burgess and Etoh, Free, Weissberg, Legon, Peters, Winograd, and an unidentified agent of Unique fraudulently induced Littrell to enter into a predatory and usurious MCA loan.

At the direction of Burgess and Etoh, Free, Weissberg, Legon, and Peters falsely represented to Littrell that funds from another MCA loan would enable the Littco Companies to overcome any temporary cash flow issues existing at that time.

At the direction of Winograd, an unidentified agent of Unique falsely represented to Littrell that the subject transaction was a purchase of receivables rather than a loan with a usurious interest rate; that the ACH withdrawals to be taken from Littco Metals' account were a good faith estimate of future receivables; that fixed payments were for the convenience of Littrell and the Littco Companies; and that fees charged for the underwriting, processing, or originating the loan were reasonable and necessary.

The funds provided by Unique were wired to Littco Metals.

- **November 17, 2022:** At the direction of Burgess and Etoh, Weissberg, Legon, Peters, Bush, Johnston, an unidentified agent of Penhurst, and an unidentified agent of ISI deposited proceeds derived from the collection of illegal debts (e.g., brokerage fees paid by the MCA Defendants to the IDS Defendants from funds the Littco Companies used to service usurious MCA loans) into the account of Littco Metals Management Co. as part of a fraudulent scheme to push Littrell out, and convert the assets and shares of Littco Metals. The deposit was made by means of an international wire transfer on November 17, 2022, at 2:02 p.m. EST.

(D)    Whether there was a criminal conviction for violation of any predicate act: Unknown.

(E)    Whether litigation resulted in a judgment with regard to any predicate act: Unknown.

(F)    How the predicate acts form a "pattern of racketeering activity":

The IDS Defendants are acutely aware of the danger, confusion, and expense associated with their consulting scheme and the predatory and usurious MCA loans they broker for clients. They encourage serial MCA loans not because they are in the best interests of their clients, but because they severely impact client cash flow, result in impossible debt cycles, and generate undisclosed brokerage fees for the IDS Defendants. They manipulate the

books of their clients and prepare false or misleading CMRs to make it appear as though the services they offer are required when, in fact, these services are worthless or non-existent.

The scheme is to generate fees directly from the target business and through undisclosed brokerage commissions[7] until debt service obligations to MCA lenders reach such a level that bankruptcy, reorganization, or liquidation of the target business is required. Alternatively, the IDS Defendants may attempt a takeover of the target business with the assistance of TAVAS, whose agents or employees prepare the required documents.

These acts are both closed- and open-ended. The open-ended scheme is one that Burgess, Etoh, IDS, ISI, and at least certain employees of TAVAS have conducted many times. In doing so, they are following in the footsteps of John Burgess. These racketeering actions are related and amount to a threat of continued criminal activity both as to the Littco Companies and as to other companies against whom the IDS Defendants have committed similar acts. Illegal acts associated with the procurement of predatory and usurious MCA loans are an intentional aspect of this conduct, which is utilized to continue the debt trap and generate more undisclosed brokerage fees and other monetary gains for the IDS Defendants.

As discussed in detail in the SAC, the scheme at issue begins by identifying a business in some level of financial distress, whether through an examination of Uniform Commercial Code ("UCC") filings or by other means. A cold call to the business leads to a cadre of IDS agents arriving in ones and twos to deliver a layered sales pitch. The vulnerable condition of the target business is confirmed by a quick audit of its books. These acts were performed in this case by Willits, Free, Weissberg, and "Terry." Management and business consulting services were then promised along with what amounts to a money-back guarantee.

---

[7] The IDS Defendants serve as loan brokers, facilitating transactions with MCA lenders in exchange for commissions or kickbacks. They do not disclose this conflict of interest to their clients. Instead, they purposefully lead financially vulnerable business owners, including Littrell, to believe that they are acting as unbiased agents of the target business.

At this point, employees or agents of TAVAS or another associated enterprise are brought in, purportedly to provide legal, accounting, tax, financial, or other specialized advice. In this case, these activities were conducted by Willits, Free, Weissberg, Legon, and Peters, primarily. Later, they were conducted by Bush and Johnston. Delays and disruptions caused by these actors ensured the initial engagement entered into between Littrell, the Littco Companies, and IDS would exceed the number of hours anticipated by IDS's initial engagement and lead to fee-generating extensions or even an entirely new engagement.

The predatory and usurious MCA loans arranged for by these actors are primarily used to pay the exorbitant fees and expenses IDS charges and to pay debt service on the loans themselves. The MCA loans at issue in this case were brokered primarily by Peters, with the assistance of Free, Weissberg, and others. Each such loan required a personal assurance from Littrell. As debt and financial distress increased for Littrell and the Littco Companies, Littrell was repeatedly told to trust the process and follow all advice given by the IDS Defendants. The debt from these predatory and usurious MCA loans became the pressure these actors required to convince Littrell that further services and additional MCA loans were required.

Once Littrell and the Littco Companies were hopelessly in debt, the IDS Defendants were in a position to abandon the businesses to bankruptcy, take the businesses over, or restructure the businesses into one or more new IDS-controlled companies. In this case, the IDS Defendants began taking steps to transfer or liquidate the assets of the Littco Companies as a means of shielding them from legitimate and illegitimate creditors alike and/or from a prospective bankruptcy proceeding pursuant to the provisions of 11 U.S.C. §§ 1181-1195 ("Chapter 11–Subchapter V"). Burgess, Etoh, IDS and ISI brought in Johnston and Bush for this purpose on or about November 14, 2022, and on other dates to be identified in discovery.

The predatory and usurious MCA loans Burgess, Etoh, IDS, ISI, TAVAS, and their associated enterprises arranged are typically described as Revenue Purchase Agreements, but this implies a buy/sell arrangement that does not actually exist. In truth, these transactions are MCAs. Unlike traditional small business loans, essential terms such as the repayment period, interest rate, and annual percentage rate on an MCA are never fully disclosed. This lack of transparency arises from unconscionable contracts and "factor rates" that are added to the astronomical fees charged by the MCA lenders but not clearly identified in the terms of their agreements. MCA loans are repaid weekly, or even daily, with ACH withdrawals that sweep the borrower's account for a fixed sum (or, if unavailable, a percentage of each deposit). As a result, they impact cash flow and trap borrowers like Littrell and the Littco Companies in debt cycles—traditional lending becomes unattainable as debt service obligations increase, and MCA after MCA must be used to keep the business afloat.

MCA loans are fraudulently structured to look like legitimate commercial transactions. MCA lenders do this by claiming to pay a lump sum to purchase a percentage of receivables at a discount in exchange for a fixed repayment obligation. MCA lenders structure their loans in this way to avoid direct federal regulation, subject only to the UCC of each state. As a result, MCA loans provide fertile ground for predatory companies. The MCA Defendants all attempt to circumvent usury laws through unconscionable contract provisions that require borrowers to declare loans are purchases and purport to waive substantive legal rights. At least some of the MCA Defendants routinely conspire with the IDS Defendants in violation of 18 U.S.C. §1962(d), for the purpose of conducting racketeering activity and collecting unlawful debts in violation of 18 U.S.C. §1962(a), (b), (c), and (d).

RICO claims based on the collection of unlawful debts do not necessarily require proof of predicate acts, nor do they require proof of any criminal acts. One act of unlawful

collection is sufficient to support a RICO claim. However, the MCAs identified in the SAC and herein are, in fact, criminally usurious under New York law. Regardless, the unlawful debt collections and pattern of racketeering activity at issue is based upon the same unlawful predicate acts described above, which include offering and collecting predatory and usurious loans through various acts of wire fraud, in violation of 18 U.S.C. §1343.

(G) Whether the alleged predicate acts relate to each other as part of a common plan; if so, the alleged relationship and common plan in detail:

Yes. The common plan is for the undisclosed loan brokers (in this case, primarily Peters) who work for or with IDS to contact MCA lenders to arrange predatory and usurious loans. While the MCA Defendants know they run the risk of being last in line and ending up holding the proverbial bag when the target business finally goes bankrupt, is restructured, or is sold for less than the value of their loan, they continue to make predatory and usurious loans available to the brokers because the upside is so profitable. The MCA Defendants know full well that the IDS Defendants are using these loans as a debt trap.

**(6) A detailed description of the alleged "enterprise" for each RICO claim:**

(A) The names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise:

The overarching enterprise is an association-in-fact enterprise consisting of the IDS Defendants and the MCA Defendants.[8] These parties conspire together to illegally profit from the downfall of target businesses such as Littco Metals, and target business owners such as Littrell. In sum, the IDS Defendants conspire with the MCA Defendants to commit the predicate acts identified and described in the SAC and herein.

For the most part, it appears the IDS Defendants operate collectively as one enterprise helmed by Burgess and Etoh. In this sense, all of the IDS Defendants may be viewed as a

---

[8] The identification of each person and entity falling within these two categories of defendants may be found in n.1 and n.2 *supra.*

single common enterprise operating for the purpose of committing the aforementioned predicate acts. However, the IDS Entities and related IDS Individuals may also be viewed as a series of separate but related enterprises as follows: (1) ISI, Burgess, and Etoh; (2) IDS, Burgess, and Etoh; (3) TAVAS, Burgess, and Etoh; and (4) Penhurst, Burgess, and Etoh.

Unlike the IDS Defendants, the MCA Entities may commonly operate as separate enterprises which each function independently for the purpose of offering, underwriting, and collecting unlawful debts. Viewed in this manner, the separate MCA enterprises are as follows: (1) Byzfunder and an unidentified individual; (2) NewCo and Vakil; (3) Wise and Markowitz; (4) Samson and an unidentified individual; (5) Cloudfund and an unidentified individual; (6) Unique and Winograd; and (7) Prosperum and an unidentified individual. (Discovery is required to obtain the identities of unidentified individuals.)

(B) The structure, purpose, function, and conduct of the enterprise:

The overarching enterprise is an association-in-fact enterprise consisting of the IDS Defendants and the MCA Defendants, who conspire together to illegally profit from target businesses. The purpose and function of this association-in-fact enterprise is to commit a scheme to defraud by providing worthless services and collecting unlawful debts. While some of the IDS Defendants may also be involved in legitimate enterprises (TAVAS, for example), the business model of the MCA Defendants is designed around the collection of unlawful debts. The business consulting scheme employed by the IDS Defendants makes a fine marriage with the scheme of the MCA Defendants because pressure is at the core of what the IDS Defendants conspire to create. Likewise, the MCA Defendants are willful participants in the schemes of the IDS Defendants because the loan brokers who work with or for the IDS Defendants drive business to the MCA Defendants.

(C) Whether any defendant is an employee, officer, or director of the alleged enterprise:

41

Yes. Burgess and Etoh are officers or directors of the collective enterprise engaged in by all of the IDS Defendants, and officers or directors of the separate enterprises engaged in by each of the IDS Entities. Willits, Free, Weissberg, Peters, Bush, and Johnston are believed to be IDS or ISI employees, while Legon is believed to be a TAVAS employee. Vakil is the managing member of Wise, Markowitz is the managing member of Samson, and Winograd is the managing member of Unique, which likely places them in the category of officers or directors of the separate enterprises operated by these MCA Entities.

(D) <u>Whether any defendants are associated with the alleged enterprise</u>:

Yes. All Defendants are associated with the association-in-fact enterprise and one or more of the separate enterprises identified above.

(E) <u>Whether the plaintiffs allege that the defendants are individuals or entities separate from the alleged enterprise, or that any defendants are the enterprise itself, or are members of the enterprise</u>:

Yes. As discussed above, the IDS Defendants may be divided into two categories, the "IDS Entities" and the "IDS Individuals." The IDS Entities include: IDS, ISI, TAVAS, Penhurst, and certain Entity Does. The IDS Individuals include: Burgess, Etoh, Willits, Free, Weissberg, Legon, Bush, Johnston, Peters, and certain John and Jane Does. Likewise, the MCA Defendants may be divided into two categories, the "MCA Entities" and the "MCA Individuals." The MCA Entities include: Byzfunder, NewCo, Wise, Samson, Cloudfund, Unique, Prosperum, and certain Entity Does. The MCA Individuals include: Vakil, Markowitz, Winograd, and certain John and Jane Does.

The IDS Defendants and the MCA Defendants are operating as an association-in-fact enterprise which consists of alleged business consultants and advisors as well as predatory lenders who are all engaged in a pattern of racketeering activity that is directed at target

businesses across the nation. The IDS Defendants operate this national scheme from their headquarters in Illinois, while the MCA Defendants (mostly) operate out of New York.

For the reasons identified above, Plaintiffs believe collective and separate enterprises exist. While the collective and separate enterprises conducted by the IDS Defendants would not exist without Burgess and Etoh at their helm, it is unclear whether either of these siblings could be characterized as an enterprise unto themselves. At this time, there does not appear to be any MCA Defendant who could be so characterized.

(F) If any defendants are alleged to be either the enterprise itself or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity:

The IDS Defendants and the MCA Defendants are all active perpetrating members in the overarching association-in-fact enterprise. In addition, they are active perpetrating members in the various separate enterprises identified above. None of the IDS Defendants or MCA Defendants is believed to be a passive instrument or victim. Littco and Littco Metals are passive instruments to the extent, and at all times when, they were under the control or influence of the IDS Defendants. Littrell, Littco, and Littco Metals are victims. Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co. are passive instruments which were, at all relevant times, under the control or influence of the IDS Defendants.

**(7) Whether the plaintiffs are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity:**

Plaintiffs allege the pattern of racketeering activity and the separate enterprises identified above have all merged into one association-in-fact enterprise at least as it may relate to certain predicate acts and causes of action, but recognize the IDS Defendants and MCA Defendants may remain separate enterprises and entities as to other predicate acts and causes of action. Discovery will be helpful in clarifying this issue for the Court.

**(8) The alleged relationship between the activities of the enterprise and the pattern of racketeering activity; and how the racketeering activity differs from the usual daily activities of the enterprise, if at all:**

The IDS Defendants (with the exception of TAVAS) are regularly involved in the practice of employing dishonest methods of achieving a sale such as trickery, deceit, chicanery, and/or overreaching in violation of §1962(c). They routinely force target businesses into bankruptcy, restructuring, and liquidation, and attempt takeovers of some entities. The daily activities of these defendants differ from those of the overarching association-in-fact enterprise only to the extent that the IDS Defendants are not in the business of offering or directly collecting predatory and usurious loans.

TAVAS is an exception among the IDS Defendants because it appears to provide legitimate legal, accounting, tax and other advisory services. However, in addition to legitimate services, agents of TAVAS (e.g., Legon) will conspire with Burgess, Etoh, IDS, ISI, and others to commit the scheme described in the SAC. When agents of TAVAS, at the direction of Burgess and Etoh, provide material assistance in furtherance of the pattern of racketeering activity at issue, this differs from the usual daily activities of TAVAS.

The MCA Defendants routinely engage in the collection of unlawful debts in violation of §1962(c). The daily activities of the MCA Defendants do not differ when they conspire with the IDS Defendants as part of their association-in-fact enterprise because the MCA Defendants are predatory lenders who offer and collect usurious loans from target businesses regardless. When these defendants conspire with other companies, such as the IDS Defendants, their usual racketeering activity simply continues.

**(9) What benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering:**

The separate enterprises and the association-in-fact enterprise identified above benefit from the alleged pattern of racketeering activity by, among other things, (1) collecting funds paid to service usurious loans (the IDS Defendants collect brokerage commissions or kickbacks, while the MCA Defendants collect usurious interest), (2) paying themselves fees (the IDS Defendants charge fees for worthless or non-existent services, while the MCA Defendants charge underwriting, processing, origination fees and the like for usurious loans), and (3) the taking of assets, shares, and/or control of target businesses.

**(10) The effect of the activities of the enterprise on interstate commerce:**

The separate enterprises and the association-in-fact enterprise identified above are all engaged in interstate commerce and use the instrumentalities of interstate commerce both in their daily business activities and in furtherance of a scheme to defraud target businesses. Members of these enterprises maintain offices in New York, Illinois, Arizona, and California.

The IDS Defendants use personnel in their offices in Illinois (or states other than Mississippi) to draft the documents they use when creating new entities to control of the assets of a target business, or when attempting to takeover or restructure a target business in another state, as occurred here. The MCA Defendants use personnel in their offices in New York (or states other than Mississippi) to originate, underwrite, fund, service, and collect upon predatory and usurious loans provided to target businesses in other states.

Communications between the members of the separate enterprises and association-in-fact enterprise identified above are made via telephone, interstate mail, and email, while wire transfers (including one international wire) and ACH withdrawals are used to send and receive illicit funds across state lines. In addition, the IDS Individuals with (the exception of Burgess and Etoh) engaged in interstate travel from Illinois (or states other than Mississippi) to Mississippi as part of a scheme to defraud Littrell and the Littco Companies.

45

**(11) If the complaint alleges a violation of 18 U.S.C. §1962(a):**

(A) <u>Who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt</u>:

The separate enterprises and the association-in-fact enterprise identified above all received income derived from the pattern of racketeering activity or through the collection of unlawful debt by, among other things, (1) collecting funds paid to service usurious MCA loans (the IDS Defendants collect brokerage commissions or kickbacks, while the MCA Defendants collect usurious interest), (2) paying themselves fees (the IDS Defendants charge fees for worthless or non-existent services, while the MCA Defendants charge underwriting, processing, origination fees and the like for usurious loans), and (3) the taking of assets, shares, and/or control of target businesses such as the Littco Companies.

(B) <u>Describe the use or investment of such income</u>

Littco Metals Equipment Leasing, Inc. and Littco Metals Management Co. were formed by the IDS Defendants to survive any prospective bankruptcy and ensure the only creditors to receive full payment would be those MCA Defendants that had on-going relationships with the IDS Defendants and to whom assurances of repayment were given. These entities were formed to facilitate a scheme to defraud, and ultimately provide a means by which the IDS Defendants could convert the assets and shares of Littco Metals and complete its takeover. A material step in furtherance of this scheme was taken on November 17, 2022 when ISI used an international wire transfer to move $1,038,915.29 into the bank account of Littco Metals Management Co. The funds were not an investment in Littco Metals as represented, and were kept from the control of Littrell as part of a scheme to push him out and convert the assets and shares of Littco Metals.

**(12) If the complaint alleges a violation of 18 U.S.C. §1962(b); the acquisition or maintenance of any interest in or control of the alleged enterprise:**

46

IDS, ISI, and TAVAS engaged in a common effort to take control of Littco Metals. Just prior to the filing of Littco Metals' bankruptcy, Bush was appointed president, the shares of Littco Metals were pledged to IDS or ISI, the books and bank accounts of Littco Mettals were controlled by IDS or ISI, and Bush and Johnston were scheming to push Littrell out. Penhurst was at least complicit in this activity. A bank account for Littco Metals Management Co. was established for the purpose of receiving the proceeds of usurious loans, as well as funds later received from ISI and Penhurst, which were purposefully kept from the control of Littrell.

**(13) If the complaint alleges a violation of 18 U.S.C. §1962(c):**

(A) Who is employed by or associated with the alleged enterprise:

The IDS Defendants and the MCA Defendants are all active perpetrating members of an association-in-fact enterprise; however, the IDS Entities and MCA Entities also operate separately from this collective enterprise. The IDS Individuals and MCA Individuals are persons who are employed by or associated with IDS Entities and MCA Entities.

(B) Whether one entity is the liable "person" and "enterprise" under §1962(c):

No, based on currently available information. While the collective and separate enterprises conducted by the IDS Defendants would not exist without Burgess and Etoh at the helm, these individuals appear to have been operating with others at all relevant times.

**(14) If the complaint alleges a violation of 18 U.S.C. §1962(d), the facts showing the existence of the alleged conspiracy:**

Given the fraudulent, deceptive, and secretive nature of Defendants' conduct, much of the proof in support of the alleged conspiracy may only be made available through discovery. Accordingly, Plaintiffs reserve the right to amend this statement. That being said, the facts set forth in the SAC and herein, including those set forth in sections 2 and 5 *infra*, demonstrate that the Defendants agreed to join the conspiracy to issue a series of predatory

47

and usurious loans for their mutual benefit, agreed to commit predicate acts, knew that those acts were part of a pattern of racketeering activity and/or that the Defendants intended to facilitate a scheme that, if completed, would satisfy RICO's elements.

The Defendants unlawfully, knowingly, and willfully, combined, conspired, confederated, and agreed together to violate 18 U.S.C. §1962 (a), (b), and (c) as described above, and in violation of 18 U.S.C. § 1962(d). Specifically, in this case, when the Defendants conspired together regarding predatory and usurious loans with the knowledge they would lead to additional loans (even from other lenders) and the ultimate demise of the Littco Companies. The loan brokers served as agents connecting the conspirators together.

By and through each of the Defendants' business relationships with one another, their close coordination with one another in the affairs of their association-in-fact enterprise, and frequent telephone and email communications among the Defendants concerning the underwriting, funding, servicing, and collection of unlawful loans, each Defendant knew the nature of the enterprise, and each Defendant knew the enterprise extended beyond each Defendant's individual role. Moreover, through the same connections and coordination, each Defendant knew, at a minimum, the other Defendants were all engaged in a conspiracy to collect unlawful debts in violation of 18 U.S.C. §1962(c).

Each named Defendant agreed to facilitate, conduct, and participate in the conduct, management, or operation of the association-in-fact enterprise's affairs in order to collect unlawful debts in violation of 18 U.S.C. §1962(c). In particular, each Defendant was a knowing, willing, and active participant in the association-in-fact enterprise and its affairs, and shared a common purpose, namely, the orchestration, planning, preparation, and execution of the scheme to solicit, underwrite, fund and collect upon unlawful debts, including the MCA agreement(s) executed by Littrell and the Littco Companies.

Each Defendant conspired to facilitate, conduct, and participate in the conduct, management, or operation of the association-in-fact enterprise's affairs in order to commit wire and mail fraud through a pattern of racketeering activity in violation of 18 U.S.C. §1962(a), (b), and (c). The participation and agreement of each of the Defendants was integral in the execution of this scheme.

**(15) The direct causal relationship between the alleged injury and the violation of the RICO statute:**

The Defendants' violation of RICO was the proximate cause of Plaintiffs' injuries to their business and property, as the Defendants' pattern of racketeering activity is a substantial factor in causing the injury, and the injury was reasonably foreseeable and a natural consequence of the complained of acts. Simply stated, the purpose of the violations of RICO was to profit by driving Littrell and the Littco Companies into financial ruin.

**(16) The actual damages for which defendants are allegedly liable:**

As a result of the conduct set forth in the SAC and herein, Littrell and the Littco Companies were left with no money, no means of making money, insurmountable debt and tax liability, ruined reputations, and no credit. The Littco Companies have closed their doors and laid off their entire staff. Littrell lost everything when he and Littco Metals each went bankrupt in early 2023. He has struggled since that time in many ways including, an inability to obtain credit, lost relationships with banks and vendors, frozen bank accounts, two lawsuits for substantial sums, unemployment, diminished income, emotional distress, etc.

Littco Metals remains in bankruptcy where it faces approximately $5.8 million in claims, a terrible and unforeseen situation for a company that had realized tens of millions of dollars in gross revenue from 2020 through the first month of 2023, and which lost in excess of $6 million in reasonably anticipated and calculable future profits when it went into

bankruptcy and was thereafter forced to close its doors. Littrell and the Littco Companies have also incurred tens of thousands of dollars in bankruptcy attorney's fees.

While the exact "actual" amount of the damages incurred by Littrell and the Littco Companies is not known at this time, it is reasonably believed that this sum is in excess of $30 million, even before a final future lost profits model is prepared. Additional damages are also due, whether as treble damages under RICO, punitive damages, or otherwise.

**(17) All other federal causes of action, if any, and the relevant statute numbers:**

Not applicable.

**(18) All pendent state claims, if any:**

There are no known pendent state claims that are duplicative of these causes of action.

**(19) A brief outline of any additional information that would be helpful to the Court in processing the RICO claim:**

None.

Respectfully submitted,

JASON LITTRELL, LITTCO, LLC,
AND WILLIAM L. FAVA, TRUSTEE
FOR LITTCO METALS, LLC

*/s/ Lawrence J. Tucker, Jr.*
GOODLOE T. LEWIS, MSB #9889
LAWRENCE J. TUCKER, JR., MSB #100869
BRIAN A. CLARK, MSB #100736
Hickman, Goza & Spragins, PLLC
P.O. Drawer 668
Oxford, MS 38655
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
glewis@hickmanlaw.com
ltucker@hickmanlaw.com
bclark@hickmanlaw.com

## CERTIFICATE OF SERVICE

I, LAWRENCE J. TUCKER, JR., of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do hereby certify that I have, this date, filed the above with the Court and delivered a copy to all parties requesting notice by using the ECF filing system.

In addition, a copy of this document has been sent to the following defendants via certified mail:

Mehandi Vakil
5319 University Dr. #10026
Irvine, CA 92612

Wise Venture, LLC
Attn.: Registered Agent for
Service of Process
5319 University Dr. #10026
Irvine, CA 92612

DATE: June 27, 2025

/s/ Lawrence J. Tucker, Jr.
LAWRENCE J. TUCKER, JR.